JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
ANGELA CHUANG, Bar No. 313445
SAMANTHA JAFFE, Bar No. 324739
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Angela_Chuang@fd.org


Counsel for Defendant RANNEY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CALEB RANNEY,<br><br>Defendant. | **Case No.:** CR 25–416 TSH<br><br>**DEFENDANT'S MOTIONS IN LIMINE**<br><br>**Court:**         Courtroom E, 15th  Floor<br>**Hearing Date:**   July 9, 2026<br>**Hearing Time:**   10:00 a.m. |

TO:    UNITED STATES OF AMERICA, PLAINTIFF; CRAIG H. MISSAKIAN, UNITED STATES ATTORNEY; E. WISTAR WILSON AND ELI COHEN, ASSISTANT UNITED STATES ATTORNEYS:

PLEASE TAKE NOTICE that on July 9, 2026, or as soon thereafter as counsel may be heard, Defendant Caleb Alexander Ranney, by and through undersigned counsel, will move the Court to enter the below-requested Orders before trial. These motions are based upon the United States Constitution, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the attached memorandum of points and authorities, all other applicable statutes and case law, and any further authority and evidence as may be adduced at the pretrial conference.

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES .......................................................................................................ii

INTRODUCTION ........................................................................................................................1

ARGUMENT................................................................................................................................1

    I.      Motion In Limine #1: The Court should exclude witnesses from all trial proceedings (Fed. R. Evid. 615)................................................................................................................1

    II.     Motion In Limine #2: No more than one "case agent" may be designated as the government's representative (Fed. R. Evid. 615(a)(2)) .............................................................2

    III.    Motion In Limine #3: The court should exempt the defense investigator from witness exclusion orders (Fed. R. Evid. 615(a)(3)) ........................................................................3

    IV.    Motion In Limine #4: The Court should designate all government witnesses as under defense subpoena unless released ........................................................................................3

    V.     Motion In Limine #5: The Court should exclude unnoticed and irrelevant "other acts" evidence, including any reference to claims that Mr. Ranney possessed brass knuckles or pushed a different officer (Fed. R. Evid. 404(b)) ...........................................................4

        A.     Evidence of other bad acts is disfavored under Rule 404(b) and subject to notice requirements.........................................................................................................5

        B.     The government has not provided any notice of its intent to offer "other acts" evidence .............................................................................................................5

        C.     The Court should exclude any reference to Mr. Ranney allegedly possessing brass knuckles, pushing or grabbing a different ICE officer, or committing any other bad act that is not charged in the Information ...........................................7

    VI.    Motion In Limine #6: The Court should dismiss the Information, or alternatively exclude evidence and testimony about physical evidence that the government lost or destroyed, and allow the defense to question witnesses about their incorrect/false statements about searching and seizing Mr. Ranney's property...................................10

CONCLUSION.........................................................................................................................18

# TABLE OF AUTHORITIES

**Federal Cases**

*Arizona v. Youngblood*,
488 U.S. 51 (1988) ............................................................................................................. 12

*California v. Trombetta*,
467 U.S. 479 (1984) ..................................................................................... 11, 11-12, 12

*Geders v. United States*,
425 U.S. 80 (1976) ......................................................................................................... 1, 2

*Huddleston v. United States*,
485 U.S. 681 (1988) ........................................................................................................... 7

*Link v. Wabash*,
370 U.S. 626 (1962) ........................................................................................................... 4

*Lloyd v McKendree*,
749 F.2d 705 (11th Cir. 1985) ......................................................................................... 4

*Oliver B. Cannon and Son v. Fidelity and Cas. Co.*,
519 F. Supp 668 (D. Del. 1981) ...................................................................................... 3

*Pennsylvania v. Ritchie*,
480 U.S. 39 (1987) ........................................................................................................... 12

*Taylor v. United States*,
388 F.2d 786 (9th Cir. 1967) ........................................................................................... 1

*United States v. Barker*,
553 F.2d 1013 (6th Cir. 1997) ......................................................................................... 4

*United States v. Brewer*,
947 F.2d 404 (9th Cir. 1991) ........................................................................................... 1

*United States v. Brooke*,
4 F.3d 1480 (9th Cir. 1993) ............................................................................................. 6

*United States v. Causey*,
609 F.2d 777 (5th Cir. 1980) ....................................................................................... 2-3

*United States v. Cooper*,
983 F.2d 928 (9th Cir. 1993) ......................................................................................... 12

*United States v. Curtin*,
489 F.3d 935 (9th Cir. 2007) ........................................................................................... 8

*United States v. Ell*,
718 F.2d 291 (9th Cir. 1983) ........................................................................................... 1

*United States v. Farnham*,
791 F.2d 331 (4th Cir. 1986) ........................................................................................ 2

*United States v. Flyer*,
633 F.3d 911 (9th Cir. 2011) ...................................................................................... 12

*United States v. Hill*,
953 F.2d 452 (9th Cir. 1991) ........................................................................................ 5

*United States v. Juarez*,
573 F.2d 267 (5th Cir. 1978) ........................................................................................ 1

*United States v. Loud Hawk*,
628 F.2d 1139 (9th Cir. 1979) .................................................................................... 12

*United States v. Luna*,
21 F.3d 874 (9th Cir. 1994) .......................................................................................... 7

*United States v. Mayans*,
17 F.3d 1174 (9th Cir. 1994) .................................................................................... 5, 7

*United States v. Mehrmanesh*,
689 F.2d 822 (9th Cir. 1982) .................................................................................... 6, 7

*United States v. Morley*,
199 F.3d 129 (3rd Cir. 1999) .................................................................................... 6, 7

*United States v. Ortiz*,
10 F. Supp. 2d 1058 (N.D. Iowa, 1998) ........................................................................ 3

*United States v. Pulley*,
922 F.2d 1283 (6th Cir. 1991) ...................................................................................... 2

*United States v. Sepulveda*,
15 F.3d 1161 (1st Cir. 1993) ...................................................................................... 1-2

*United States v. Sivilla*,
714 F.3d 1168 (9th Cir. 2013) ................................................................................ 12, 13

*United States v. Spinner*,
152 F.3d 950 (D.C. Cir. 1998) ...................................................................................... 6

*United States v. Stever*,
603 F.3d 747 (9th Cir. 2010) .................................................................................. 11, 12

*United States v. Thomas*,
835 F.2d 219 (9th Cir. 1987) ........................................................................................ 2

*United States v. Valenzuela-Bernal*,
458 U.S. 858 (1982) .................................................................................................... 11

*United States v. Vega*,
188 F.3d 1150 (9th Cir. 1999) .................................................................................... 5, 6

*United States v. Vizcarra-Martinez,*
66 F.3d 1006 (9th Cir. 1995) ........................................................................................ 8

*United States v. Zaragoza-Moreira,*
780 F.3d 971 (9th Cir. 2015) ........................................................................ 12, 14, 17

**Federal Rules and Statutes**

18 U.S.C. § 111 .................................................................................................................. 1
18 U.S.C. § 1361 ................................................................................................................ 1
Fed. R. Crim. P. 16 ................................................................................................... 4, 5, 6
Fed. R. Crim. P. 17 ...................................................................................................... 4
Fed. R. Evid. 401 ....................................................................................................... 7, 8
Fed. R. Evid. 403 ................................................................................................. *passim*
Fed. R. Evid. 404 ................................................................................................. *passim*
Fed. R. Evid. 615 .................................................................................................... 1, 2, 3

**INTRODUCTION**

Caleb Alexander Ranney files the following motions in limine in accordance with the Court's pretrial scheduling order, issued on May 20, 2026. Dkt. No. 21 (Pretrial Deadlines Order). Mr. Ranney is charged with the following offenses: (1) Assault on a Federal Officer—to wit, an Immigration and Customs Enforcement ("ICE") Deportation Officer—in violation of 18 U.S.C. § 111(a)(1); and (2) Destruction of Government Property—to wit, a sallyport at 630 Sansome Street—in violation of 18 U.S.C. § 1361. Dkt. No. 1 (Information).

**ARGUMENT**

I.   **Motion In Limine #1: The Court should exclude witnesses from all trial proceedings (Fed. R. Evid. 615)**

Federal Rule of Evidence 615 provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615(a). Rule 615 is intended to ensure a fair trial by preventing collusion of witnesses and fabrication of testimony, and by helping reveal instances where such fabrication or collusion actually occurs. *See Geders v. United States*, 425 U.S. 80, 87 (1976) (observing that the rule "exercises a restraint of witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid*"); see also Taylor v. United States*, 388 F.2d 786, 788 (9th Cir. 1967) (stating that exclusion is designed to "prevent the shaping of testimony by hearing what other witnesses say").

Witnesses should be excluded during motion hearings, opening statements and closing arguments, as well as during witness testimony. *United States v. Brewer*, 947 F.2d 404, 407–11 (9th Cir. 1991) (holding that witness exclusion under Rule 615 applies during evidentiary hearings, such as those in a motion to suppress*); United States v. Juarez*, 573 F.2d 267, 281 (5th Cir. 1978) (affirming trial court's decision to exclude defendant's witnesses from closing arguments, "[b]ecause closing arguments of counsel often restate witness testimony… thus jeopardizing the fairness of a second trial should one be necessary"). Rule 615 requires that non-exempt witnesses be excluded from the courtroom during all witness testimony; that is, that they should remain excluded even after testifying. Fed. R. Evid. 615; *United States v. Ell*, 718 F.2d 291, 293 (9th Cir. 1983) (holding that trial court erred by not excluding prosecution witness who had already testified); *United States v.*

*Sepulveda*, 15 F.3d 1161, 1175–77 (1st Cir. 1993) (holding that in addition to the power to exclude under Rule 615 a district court retains inherent power to, "make whatever provisions it deems necessary to manage trials,… including the sequestration of witnesses *before, during and after* their testimony" (citing *Geders*, 425 U.S. at 87)) (emphasis added).

Therefore, Mr. Ranney requests that Court exclude non-exempt witnesses from the courtroom.

II.     **Motion In Limine #2: No more than one "case agent" may be designated as the government's representative (Fed. R. Evid. 615(a)(2))**

A federal agent, or a local law enforcement officer working with federal agents, qualifies under Rule 615(2) for exemption from an exclusion order. *See* Fed. R. Evid. 615(2); *see also United States v. Thomas*, 835 F.2d 219, 222–23 (9th Cir. 1987) (trial court did not err in allowing FBI agent who also testified to sit at counsel table throughout trial, since agent qualified as officer representing the government). The plain language of Federal Rule of Evidence 615(2), however, as well as the notes of the Advisory Committee, indicate that only one agent can be exempted under this provision.

The rule speaks of an officer or employee of a party who is not a natural person being designated as, "its representative." Fed. R. Evid. 615(2). The drafters chose the singular, rather than the plural — the rule does not speak of an entity's right to designate "its representatives." In fact, the Advisory Committee stated that, "[a]s the equivalent of the right of a natural-person party, a party which is not a natural person is entitled to have a representative present." Fed. R. Evid. 615 Advisory Committee's note (emphasis added). As the Sixth Circuit has observed, "'[a]' representative, like 'a' natural person, . . . and 'an' officer or employee, is singular. . . we can discern no reason to convert the singular into the plural." *United States v. Pulley*, 922 F.2d 1283, 1286 (6th Cir. 1991). The Advisory Committee's note, as well as the analysis of this note, supports a literal reading of the rule.

Significantly, the majority of Circuit Courts that have addressed the issue of multiple witness-representatives have concluded that only one agent, officer or employee should be designated under Rule 615(2). *See id.*; *United States v. Farnham*, 791 F.2d 331, 334–35 (4th Cir. 1986) (holding as error trial court's decision to allow two government agent-witnesses to remain in courtroom throughout trial); *see also United States v. Causey*, 609 F.2d 777, 777–78 (5th Cir. 1980) (not reaching the issue, but stating in dicta, "from its language it would reasonably be argued that [Rule

615(2)] does not grant counsel for a party the right to designate more than one representative."); *Oliver B. Cannon and Son v. Fidelity and Cas. Co.*, 519 F. Supp 668, 679 (D. Del. 1981) (exception codified in Rule 615(2) held to be singular, thus plaintiff was unable to appoint more than one person as representative).

Accordingly, the Court should permit no more than one "case agent" to be designated as the government's representative under Rule 615(a)(2).

**III.    Motion In Limine #3: The court should exempt the defense investigator from witness exclusion orders (Fed. R. Evid. 615(a)(3))**

The presence of Federal Public Defender investigator Catherine Goulet at trial is essential to the defense and she should be exempt from any witness exclusion order. She is in essence the defense's "case agent." Rule 615 includes an exception to witness exclusion for "a person whose presence a party shows to be essential to present the party's claim or defense." Fed. R. Evid. 615(c). This exception has been applied to permit defense investigators to be present at trial, even when it is anticipated that they may testify. *See United States v. Ortiz*, 10 F. Supp. 2d 1058 (N.D. Iowa, 1998). As the *Ortiz* court noted, exempting an essential defense investigator from a witness exclusion order is both authorized by statute and required by considerations of fairness:

> Even one case agent available to the government has access to almost unlimited law enforcement investigative resources—federal, state, and local—to perform the necessary footwork if unanticipated issues come up during trial. Against this full panoply of resources available to the government, a criminal defendant can reasonably show the presence of one investigator in the courtroom, who must also then perform the footwork of necessary investigations and testify upon the results of his or her investigations, is "essential" within the meaning of the Rule 615(3) exemption.

*Id*. at 1066.

Ms. Goulet has been assigned to this case since its inception and is familiar with the facts and witnesses. It is critical to the defense that she be permitted to remain in the courtroom so she can respond to witness testimony with prompt investigation and assist defense counsel. Consequently, she should be designated as essential and exempt from witness exclusion orders under Rule 615.

**IV.    Motion In Limine #4: The Court should designate all government witnesses as under defense subpoena unless released**

Government witnesses noticed for trial occasionally are released by the government without

informing the defense, and thereafter become unavailable. In order for Mr. Ranney to retain access to these witnesses, he requests this Court to order that any released government witnesses be considered under defense subpoena.

Indigent defendants such as Mr. Ranney are provided the opportunity to have the government subpoena witnesses on their behalf by the Sixth Amendment and by Fed. R. Crim. P. 17(b). *United States v. Barker*, 553 F.2d 1013, 1019 (6th Cir. 1997). In addition, this Court has the inherent power to subpoena witnesses on behalf of indigent individuals. *See Lloyd v McKendree*, 749 F.2d 705, 706–07 (11th Cir. 1985); *Link v. Wabash*, 370 U.S. 626, 630 (1962) ("The inherent powers of the federal courts are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). To safeguard against the loss of vital witness testimony and to ensure that this indigent defendant is provided all Fifth and Sixth Amendment rights, Mr. Ranney requests that the Court exercise its inherent power to order that any released government witnesses be considered under defense subpoena for the duration of the trial.

**V.    Motion In Limine #5: The Court should exclude unnoticed and irrelevant "other acts" evidence, including any reference to claims that Mr. Ranney possessed brass knuckles or pushed a different officer (Fed. R. Evid. 404(b))**

Mr. Ranney moves under Federal Rules of Evidence 404(b) and 403, as well as Federal Rule of Criminal Procedure 16 and Local Rule 16-1, to exclude all "other acts" evidence from trial. The Ninth Circuit has made clear that such evidence is generally disfavored, especially in criminal cases, and that the government must give explicit notice of its intent to introduce such evidence at trial. Here, the government has not provided the requisite procedural notice of intent to offer such evidence. *See* Declaration of Angela Chuang in Support of Defendant's Motions in Limine ("Chuang Decl.") ¶ 2. Additionally, the government informed the defense that they do not intend to introduce any 404(b) evidence at trial. *Id.* ¶ 3. In any event, the government has not met its substantive burden of demonstrating the admissibility of such evidence under the criteria of Rules 404(b) and 403. Accordingly, Mr. Ranney respectfully submits that the Court should exclude any and all "other acts" evidence from trial.

### A. Evidence of other bad acts is disfavored under Rule 404(b) and subject to notice requirements

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The rule goes on to state that such evidence:

> may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, **provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial**, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

*Id.* (emphasis added). The Ninth Circuit has repeatedly explained that the limitations in Rule 404(b) are "designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." *United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991) (citations and internal quotation marks omitted); *see also United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (noting that the reluctance to sanction the use of other acts evidence "stems from the underlying premise of our criminal system, that the defendant must be tried for what he did, not for who he is"). Moreover, even if admissible under Rule 404(b), such evidence still may be excluded as unfairly prejudicial, confusing, misleading, cumulative, delaying or a waste of time under Rule 403. *See* Fed. R. Evid. 403.

### B. The government has not provided any notice of its intent to offer "other acts" evidence

Under the terms of Rule 404(b), the government must affirmatively and specifically provide reasonable notice in advance of trial its intention to introduce any particular evidence of "other crimes, wrongs, or acts." *See* Fed. R. Crim. P. 404(b)(2); *see also, e.g., United States v. Vega*, 188 F.3d 1150, 1152-53 (9th Cir. 1999) (quoting Rule 404(b)(2)). Similarly, Northern District Criminal Local Rule 16-1(c)(3) requires the government to disclose "a summary of any evidence of other crimes, wrongs or acts which the government intends to offer under Fed. R. Evid. 404(b), and which is supported by documentary evidence or witness statements in sufficient detail that the Court may rule on the admissibility of the proffered evidence." Crim. L.R. 16-1(c)(3); *see also Mayans*, 17 F.3d

at 1183 (explaining that, without pretrial notice, the trial court cannot "make the focused determination of relevance mandated" by Rule 404(b)).

Failure to provide adequate notice, or obtain an excuse from the presiding court, categorically "renders the other acts evidence inadmissible, whether the evidence is used in the prosecution's case-in-chief or for impeachment." *Vega*, 188 F.3d at 1153. This categorical exclusion even applies to evidence intended "for possible rebuttal." *Id*. at 1154. The categorical nature of the exclusion is further explained in the rule's advisory committee notes: "Because the notice requirement serves as **condition precedent** to admissibility of 404(b) evidence, the offered evidence is **inadmissible** if the court decides that the notice requirement has not been met." Fed .R. Evid. 404(b) (adv. comm. notes–1991 amend.) (emphasis added).

Moreover, merely "providing such evidence to the defense in discovery is not enough to satisfy the notice requirements of Rule 404(b), which requires the government specifically to disclose 'the general nature of any such evidence it intends to introduce at trial.'" *United States v. Spinner*, 152 F.3d 950, 961 (D.C. Cir. 1998). Indeed, the Ninth Circuit has repeatedly held that the Government must not only provide notice, but must also identify how the noticed "other acts" evidence "is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982) (citations omitted) (emphasis added); *see also United States v. Brooke,* 4 F.3d 1480, 1483 (9th Cir. 1993) (quoting *Mehrmanesh*). Courts have emphasized that the "incantation of the proper uses of such evidence under the rules does not magically transform inadmissible evidence into admissible evidence." *United States v. Morley*, 199 F.3d 129, 133 (3rd Cir. 1999).

Here, the Court set an agreed-upon discovery cut-off date of June 10, 2026, including for materials covered by Rule 16 and notice of 404(b) evidence. *See* Dkt. No. 21 at 2. To date, the government has not provided any 404(b) notice regarding any evidence of other crimes, wrongs, or acts committed by Mr. Ranney that it might seek to introduce at trial. During a phone call on June 16, 2026, government counsel confirmed to the defense that the government is not seeking to introduce any 404(b) evidence. Chuang Decl. ¶ 3. As a result, all "other acts" evidence is categorically

inadmissible as a procedural matter pursuant to the authority cited above.

This procedural bar is not a mere technicality. The Court has the duty to "make a focused determination of relevance mandated by" the Federal Rules of Evidence, as well as the local criminal rules, before any "other acts" evidence may be admitted. *Mayans*, 17 F.3d at 1183; *see also* Crim. L.R. 16-1(c)(3). The Court cannot, however, make such a determination in this case, because the government has not complied with its requirement of timely notice nor met its burden of proving that any such evidence is admissible in this case. Accordingly, the Court should preclude the government as a procedural matter from introducing at trial any "other acts" evidence.

### C. The Court should exclude any reference to Mr. Ranney allegedly possessing brass knuckles, pushing or grabbing a different ICE officer, or committing any other bad act that is not charged in the Information

Even where a defendant's alleged prior "other acts" are not as here procedurally barred by inadequate notice, the government still must then meet its substantive burden of demonstrating that such evidence is admissible under Rules 404(b), 401, and 403. Prior acts that are untethered to a legitimate Rule 404(b) purpose are inadmissible at trial because they raise the forbidden inference that "the defendant is guilty because he committed another [] crime." *United States v. Luna*, 21 F.3d 874, 882 (9th Cir. 1994).

Specifically, to admit prior acts under this rule, the government must clearly demonstrate why the proffered "bad" acts evidence "is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *Mehrmanesh*, 689 F.2d at 830 (emphasis added); *see also Huddleston v. United States*, 485 U.S. 681, 689 (1988) (stating that relevance is not an inherent characteristic, and that prior bad acts are not intrinsically relevant to motive, opportunity, intent, or absence of mistake); *Mayans*, 17 F.3d at 1181 (stating that reluctance to sanction use of other bad acts evidence stems from the principle that "guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing") (emphasis added); *see also Morley*, 199 F.3d at 133 (stating that "[e]vidence that is not relevant, by definition, cannot be offered for a proper purpose, and evidence that may be relevant for some purposes may be irrelevant for the purpose for which it is offered").

In addition, the government, as the proponent of the proffered "other acts" evidence, must demonstrate on the merits that each incident meets the requirements of a four-part test developed by the Ninth Circuit for evaluating that admissibility of such other acts evidence under Rule 404(b). Specifically, the government must show as to each proffered other act: 1) that the evidence is sufficient to support a finding that the defendant committed the other act; 2) that introduction of the other act tends to prove a material point at the trial on the charged offense; 3) that the other act is not too remote in time; and 4) that, in cases where knowledge and intent are at issue, the other act is similar to the charged offense. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995); *see also United States v. Curtin*, 489 F.3d 935, 958 (9th Cir. 2007) (en banc) (emphasizing that the government has the burden of proving the materiality of the element for which the other acts evidence is offered).

Moreover, even if the Court were to determine that the government had met its procedural disclosure obligations and that it had substantively demonstrated admissibility under Rule 404(b) and relevance under Rule 401, the Court still must exclude such evidence under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, or other pertinent considerations such as wasting time. *See, e.g., Curtin*, 489 F.3d at 958 ("Because evidence of other crimes, wrongs, or acts carries with it the inherent potential to see the defendant simply as a bad person . . . a trial court must take appropriate care to see that this does not happen.").

Here, at least one incident report written by DHS Officer Stephen Glumasz describes an unidentified "Subject" protester who allegedly was wearing bulky gloves with "knuckle parts display[ing] affixed silver-colored glitter." Chuang Decl., Ex. A (Glumasz Report), at 390.[1] Officer Glumasz speculates in his report that he "suspected the Subject's gloves to be brass knuckles in violation of" California law. *Id.* He further claims that the Subject at one point "appeared to have grabbed or pushed DC Hall." *Id.* at 391. Though it is unclear whether the referenced Subject is Mr. Ranney or another person, in an abundance of caution, Mr. Ranney moves to preclude the government from eliciting any testimony and/or presenting any evidence that he possessed brass

---

[1] Any citation to exhibits that are Bates-stamped will be referred to only by the Bates number excluding the prefix for ease of reference.

DEF'S MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

knuckles or pushed an officer other than the officer who is the alleged victim in this case (who is **not** DC Hall).

Such "other acts" evidence fails the Ninth Circuit's four-part test. First, there is insufficient evidence that Mr. Ranney committed these other acts—the government is not in possession of any purported gloves with brass knuckles[2] and there does not appear to be any video footage of any protester pushing or grabbing DC Hall. Furthermore, as already noted, it is unclear whether the Subject referred to in the report is even Mr. Ranney or a different person altogether. Second, there is no material point related to the offenses actually charged that introduction of these "other acts" would tend to prove. The charges involve allegations that Mr. Ranney damaged a sallyport door by kicking it and assaulted a different ICE officer by shoving him. Whether he possessed brass knuckles or pushed another officer is not material to either of those charges. Third, the "other acts" are not remote in time but this would be the only factor in favor of admission. Fourth, though pushing is similar to one charged count, it is difficult to see how possession of brass knuckles and pushing one person would bear at all on knowledge and intent as to unrelated property damage and assaulting a different person.

The danger of allowing admission of this "other acts" evidence is clear. Introduction of such claims would be unduly prejudicial and confuse the jury, and would have little if any probative value as to the charged offenses. Mr. Ranney is not alleged to have used any type of weapon, including supposed brass knuckles, in relation to the assault charged in Count One; rather, he is alleged to have pushed a specific ICE officer. And Count Two alleges property damage only via kicking, for which possession of brass knuckles and/or pushing a different person clearly holds no probative value. On the other side of the Rule 403 balancing test, the danger of unfair prejudice and confusion is substantial and readily apparent. Allowing such evidence would paint Mr. Ranney as a "bad" or "violent" person with a propensity for possessing illegal weapons and engaging in assaultive behavior, and could easily invite the jury to convict Mr. Ranney based on uncharged acts rather than

---

[2] As will be discussed in more detail *infra* in Motion in Limine #6, government agents seized a pair of motorcycle gloves from Mr. Ranney after he was arrested. The government then lost or destroyed those gloves prior to the defense having any opportunity to examine them, and there does not appear to be any written record or paperwork about their seizure and subsequent disappearance.

DEF'S MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

what is actually charged in the case. That is precisely what Rule 404(b) seeks to prevent. Additionally, the jury would likely be confused in particular with regard to the "other act" of pushing or grabbing a different officer, by mixing up who Mr. Ranney is actually charged with assaulting. Finally, it would waste time because the defense would be forced to refute these uncharged claims.

Accordingly, the Court should hold the government to its word that it will not seek to introduce any 404(b) evidence, and should exclude any reference to claims that Mr. Ranney committed any other bad acts, including possession of brass knuckles or pushing/grabbing a different officer.

**VI.    Motion In Limine #6: The Court should dismiss the Information, or alternatively exclude evidence and testimony about physical evidence that the government lost or destroyed, and allow the defense to question witnesses about their incorrect/false statements about searching and seizing Mr. Ranney's property**

Mr. Ranney moves the Court to dismiss the information based on the government's spoliation of physical evidence that it seized from Mr. Ranney that government agents subsequently lied about. Should the Court find that dismissal is not warranted, it should at the very least exclude evidence and testimony from the government about items of physical evidence that were seized from Mr. Ranney following his arrest,[3] and that the government subsequently lost and/or destroyed. Such physical evidence includes a pair of motorcycle gloves, a gas mask, canisters of paint, and tools.

Government agents seized these items from Mr. Ranney's person and backpack while he was in custody. *See* Chuang Decl., Ex. B (ERO Report) at 187 ("Within the backpack belonging to Caleb Ranney, was a gas mask, cans of spray paint and tools. These items were seized by FPS as evidence."); Ex. E (Processing Surveillance Footage 2) at 21:14–27:27. After the defense inquired about the whereabouts of Mr. Ranney's property,[4] the government asked all the agents involved about any search and seizure of such property. The responses uniformly declared ignorance of any search being conducted and any property being seized. *See* Chuang Decl., Ex. C (Combined Property Emails). Such responses are demonstrably false. One of the government's own reports explicitly references seizing "a gas mask, cans of spray paint and tools." Chuang Decl., Ex. B (ERO Report) at

---

[3] Mr. Ranney also seeks suppression of evidence from his backpack based on Fourth Amendment grounds in a concurrently-filed Motion to Suppress.
[4] The defense first inquired about the property on December 19, 2025—the very same day as Mr. Ranney's initial appearance on this matter. *See* Chuang Decl., Ex. C (Combined Property Emails) at 227.

187. And surveillance footage from the holding area of the building where Mr. Ranney was detained

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████ Agents also took photographs of Mr. Ranney's property, including the items that they seized. Chuang Decl., Ex. F (Property Photos). The government then presumably lost and/or destroyed Mr. Ranney's seized property[5] before the defense had an opportunity to examine it, and no property receipts/vouchers or evidence processing paperwork were completed in relation to these items. Chuang Decl., ¶¶ 14–15.

Under the Due Process Clause of the Fifth Amendment, "criminal defendants [must] be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) ("Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth Amendment guarantee of due process, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal quotations omitted). "To safeguard that right," the Supreme Court has "developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *Trombetta*, 467 U.S. at 485 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). This access requires, at a minimum, the "deliver[y] [of] exculpatory evidence into the hands of the accused," *Trombetta*, 467 U.S. at 485, and "'the right to

---

[5] It appears that the government does not know what exactly happened to the property that they had seized, but it has essentially disappeared.

DEF'S MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

11

put before a jury evidence that might influence the determination of guilt.'" *Stever*, 603 F.3d at 755 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)).

The government's destruction of "potentially useful evidence"—such as the gloves, gas mask, paints, and tools—rises to the level of a constitutional violation when a defendant can make two showings: (1) "the government acted in bad faith," *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (quoting *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993)); and (2) "the missing evidence is 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Id.* (quoting *Trombetta*, 467 U.S. at 489). In *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977–82 (9th Cir. 2015), the Ninth Circuit clarified that the critical question regarding the bad faith inquiry was whether the government had "knowledge of the potentially exculpatory value of the [evidence] before it was destroyed." *Id.* at 979. In other words, in the destruction of evidence context, bad faith is not a matter of malicious intent, but of knowledge. *See id.* If the government knew the potential usefulness of the evidence at issue but either destroyed or failed to preserve it anyway, that would establish bad faith. *See id.* The court in *Zaragoza-Moreira* determined the government had knowledge of the potential usefulness of the evidence. *Id.* at 979. Thus, the failure to preserve the video was "sufficient to establish bad faith[.]" *Id.* at 981.

Where the government fails to preserve exculpatory evidence in bad faith, it violates a defendant's Due Process rights and dismissal is required. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Even in the absence of bad faith, lesser spoliation sanctions such as suppression of secondary evidence may be appropriate. *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011). Judge Kennedy's concurrence in *United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979), directs a court to balance "the quality of the Government's conduct" against "the degree of prejudice to the accused," where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice. 628 F.2d at 1152 (Kennedy, J., concurring).[6] Quoting the Kennedy concurrence in *Loud Hawk*, *Sivilla* listed some of the factors for a court to consider to evaluate the quality of the government's conduct, including "whether the evidence was lost or destroyed while in

---

[6] In *Sivilla*, the Ninth Circuit specifically clarified that Judge Kennedy's concurring opinion in *Loud Hawk* "clearly controls this issue." 714 F.3d at 1173.

DEF'S MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

its custody, whether the Government acted in disregard for the interests of the accused, whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification . . . ." 714 F.3d at 1173. As for the prejudice analysis, the list of non-exhaustive factors includes "the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probably weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; the probable effect on the jury from absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about the missing evidence." *Id.* at 1173–74.

Here, Mr. Ranney cannot recover the lost or destroyed items of physical evidence at all. They have all but disappeared without a trace once in the government's custody, and no paperwork or other records exist to shed light on the issue. Presumably, the government will argue that the few photos that were taken of the property suffice as an adequate substitute. But that is wrong. In *Sivilla*, the Ninth Circuit rejected a similar argument, finding that photographs were not an adequate substitute for destruction of the car at issue. *See Sivilla*, 714 F.3d at 1174. In this matter, no photograph can stand in for the defense's and/or the jury's ability to examine the physical items themselves in order to discern whether anything showed signs of recent usage or whether they are consistent with what the government asserts them to be. Most glaringly, with regard to the gloves, if they were still available, the jury would be able to see that they are motorcycle gloves that are widely sold and used to protect against physical injury. Significantly, a photograph does not allow the defense or the jury to determine whether the knuckles were made of metal or an innocuous material.[7] The sole photograph of the gloves does not make clear what materials they are made of, and accordingly hold little probative value. *See* Chuang Decl., Ex. F (Property Photos) at 201.

---

[7] This distinction is crucial, as possession of metal knuckles is criminalized under CPC § 21810 and would constitute "other bad act" evidence, which Mr. Ranney has separately moved to preclude. *See supra*, Motion in Limine #5.

If government agents who handled the gloves were to testify that they were made of metal, Mr. Ranney would be severely prejudiced by being unable to show the actual gloves to the jury to refute such claims. And it would be plainly insufficient for the government to suggest that Mr. Ranney himself could testify about the gloves, as that would essentially force him to testify even though **the government erred** by losing/destroying the gloves. And, just like the photographs, such testimony would not substitute for the jury's ability to examine the gloves themselves. The court in *Zaragoza-Moreira* rejected this exact argument, and this Court should do the same. *See Zaragoza-Moreira*, 780 F.3d at 981–82 ("The government's argument that in lieu of the destroyed video footage Zaragoza could testify at trial concerning her conduct in the Port of Entry line, runs afoul of Zaragoza's Fifth Amendment right against self-incrimination, by essentially forcing her to testify in her own defense. Notwithstanding the obvious Fifth Amendment implications triggered by the government's argument, Zaragoza's self-serving testimony . . . would not be comparable to video footage that recorded her actions while in the pedestrian line."). What it boils down to is the common-sense premise that the government should not benefit from exploiting its own unjustifiable failure to preserve evidence. To permit them to capitalize on their error would unfairly disadvantage the defense and would violate Mr. Ranney's constitutional right to a fair trial.

Regarding the government's knowledge of the potential usefulness of the evidence at issue, it is clear that agents thought Mr. Ranney's property was important enough to seize and subsequent emails confirm that the government views the paints and gloves as "key items in this trial." Chuang Decl., Ex. C (Combined Property Emails) at 736. The defense anticipates that government witnesses will testify that the gloves qualify as or looked like brass knuckles, unless prohibited from so testifying. The potentially exculpatory value of the gloves themselves is obvious, and likely was obvious, to the government agents who lost and/or destroyed them. As the photo shows, the knuckles are not metal-colored and certainly are not affixed with "silver-colored glitter," as Officer Glumasz claims in his description of the Subject who allegedly possessed brass knuckles. *See* Chuang Decl., Ex. A (Glumasz Report), at 390.

The agents' lack of candor and the complete lack of documentation regarding the search and the seized property are extremely concerning as well. The proper handling, receipt, and storage of

physical evidence is a routine function of law enforcement and it is a basic expectation that agents will accurately record such events for various purposes, including authentication of trial exhibits and to establish chain of custody. The fact that no such documentation exists in this matter, in addition to the government's loss and/or destruction of the items, tends to show an intentional disregard for proper procedures and Mr. Ranney's interests. As the submitted videos show, ████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████ And as is laid out in more detail in a concurrently-filed Motion to Suppress, all of this occurred in the context of agents conducting an unlawful search and seizure in blatant violation of Mr. Ranney's Fourth Amendment rights. This goes far beyond mere negligence or recklessness. Frankly speaking, this case stands out as one of the worst instances of mishandling of physical evidence that undersigned counsel has ever encountered. Not only that, but various agents' demonstrably false claims that no search and seizure of Mr. Ranney's property occurred, despite video footage explicitly showing the opposite, are beyond the pale and are strong evidence of bad faith. To cite a few examples:

- DC Hall stated in an email, "I was not in possession of [Mr. Ranney's] property, nor do I remember seeing his property." Chuang Decl., Ex. C (Combined Property Emails) at 178.
    - Video footage shows ████████████████████

        ███████████████████████████████████

        ███████████████████████████████████

        ███████████████████████████████████

        ███████████████████████████████████

        ████████████████████████████████████

        ████████████████████████████████████

        ██████████████████████

DEF'S MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

15

- FPS Officer Orchard stated in an email, "I did not search or inventory the subjects or their belongings." Chuang Decl., Ex. C (Combined Property Emails) at 183. He stated in another email, "Per our discussion, I do not know what happened with the items." Case agent Benavente also reported that, "I spoke with FPS Inspector Orchard, and he stated that he did not take RANNEY's property. He said they just cited and released him then created the report." *Id.* at 188. In another email, Agent Benavente similarly stated, "The inspector who cited Ranney[8] said that he did not seize any of his property." *Id.* at 225.

  o Video footage shows ████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ███████████████████

- Agent Benavente stated in an email that he "spoke to all the FPS personnel that were at the ICE facility that day and they all stated that they did not search Ranney's property." Chuang Decl., Ex. C (Combined Property Emails) at 496.

  o Video footage shows ████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████.

- HSI ASAC Soper, who "oversees the investigating agents for this case," Chuang Decl., Ex. C (Combined Property Emails) at 221, responded to an inquiry about any items kept as evidence by saying, "I can check again but when I asked at the beginning of the month, the

---

[8] Officer Orchard is the inspector who cited Mr. Ranney.

agents didn't recall taking any property," *Id.* at 236. In another email, ASAC Soper stated, "[T]he agent told me she thought he took all his property with him." *Id.* at 235.

   o   Video footage shows ████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Altogether, this sequence of events amounts to an alarming pattern of egregious misconduct—including an unconstitutional search and seizure, intentionally throwing out items taken from Mr. Ranney, mishandling physical evidence, disregarding basic policies about documentation of seizures of property/evidence, and lying about what happened—that warrants dismissal of the information. Lesser sanctions, such as exclusion of secondary evidence and an adverse inference, to which Mr. Ranney clearly would be entitled, would be woefully insufficient under these circumstances.[10] In *Zaragoza-Moreira*, the failure to preserve evidence led to dismissal of the indictment. *Zaragoza-Moreira*, 780 F.3d at 982. The same result should obtain here.

In the alternative, if the Court finds that dismissal is not warranted, it should at the least exclude any testimony or other evidence (i.e., photos, videos) from government witnesses about such lost/destroyed evidence at trial, including by specifically prohibiting any testimony about whether the gloves were or appeared to be brass/hardened knuckles.[11]

Additionally, the involved agents' subsequent false claims that they did not search or seize Mr. Ranney's property clearly bear on their credibility and ability to remember the circumstances surrounding his arrest, which will be at issue in the trial where several of them are expected to testify. Accordingly, Mr. Ranney requests that the Court permit him to question government witnesses about

---

[9] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████

[10] The Ninth Circuit Model Criminal Jury Instructions state: "If you find that the government intentionally [destroyed] [failed to preserve]" evidence "that the government knew or should have known would be evidence in this case, you may infer, but are not required to infer, that this evidence was unfavorable to the government." Ninth Cir. Model Crim. Jury Instr. 3.19, Lost or Destroyed Evidence.

[11] It is Mr. Ranney's position that at most, the government should only be permitted to reference that Mr. Ranney was wearing gloves and nothing beyond that.

their search, seizure, and loss/destruction of his property—as well as their incorrect and/or false statements about such—without being considered to have "opened the door" to the government introducing evidence of what those items were.[12]

## CONCLUSION

For the foregoing reasons, Mr. Ranney respectfully requests that the Court grant his Motions in Limine as set forth above.

Dated:    June 24, 2026                          Respectfully submitted,

                                                 JODI LINKER
                                                 Federal Public Defender
                                                 Northern District of California

                                                 _____/S_____
                                                 ANGELA CHUANG
                                                 SAMANTHA JAFFE
                                                 Assistant Federal Public Defenders

---

[12] Mr. Ranney intends to question agents generically about searching, seizing, and losing/destroying Mr. Ranney's property without eliciting specific details about what those things were.

DEF'S MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

18