CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

E. WISTAR WILSON (CABN 324705)
ELI J. COHEN (NYBN 5539226)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Wistar.Wilson@usdoj.gov
    Eli.Cohen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-CR-00416-TSH |
| Plaintiff, | UNITED STATES' MOTIONS *IN LIMINE* |
| v. | Pretrial Conference Date: July 9, 2026 |
| CALEB ALEXANDER RANNEY, | Time: 10:00 a.m. |
| Defendant. | Court: Hon. Thomas S. Hixson |

UNITED STATES' MOTS. *IN LIMINE*
3:25-CR-00416-TSH

# CONTENTS

**INTRODUCTION**..................................................................................................................1

**FACTUAL BACKGROUND**...............................................................................................1

**MOTIONS *IN LIMINE***......................................................................................................2

I.      MOTION *IN LIMINE* NO. 1: The Defense Should Not Be Permitted to Reference Punishment or Collateral Consequences in Front of the Jury.................................................2

II.     MOTION *IN LIMINE* NO. 2: The Defense Should Not Be Permitted to Elicit Jury Sympathy or Nullification...............................................................................................................4

III.    MOTION *IN LIMINE* NO. 3: All Fact Witnesses Except the Case Agent Should be Excluded from the Courtroom and Trial Testimony Access Should be Restricted....................................6

IV.   MOTION *IN LIMINE* NO. 4: The Court Should Require the Defense to Proffer Notice and a Good-Faith Basis Before Any *Henthorn* Inquiry ........................................................6

V.    MOTION *IN LIMINE* NO. 5: Defense Counsel May Not Vouch or Express Personal Opinions.............................................................................................................................7

VI.   MOTION *IN LIMINE* NO. 6: The Defense Should Not Be Permitted to Reference Other Incidents Involving ICE Officers and Civilians, or Federal Immigration Enforcement Policies and Methods ...............................................................................................................7

VII.  MOTION *IN LIMINE* NO. 7: The Defense Should Not Be Permitted to Present the Defenses of Necessity, Justification, Self-Defense, or Defense-of-Others .................................8

VIII.  MOTION *IN LIMINE* NO. 8: The Court Should Admit Evidence of Property Seized from the Defendant Incident to His Arrest but Otherwise Preclude Evidence or Testimony Regarding Events Following the Offense Conduct ..................................................................12

IX.   MOTION *IN LIMINE* NO. 9: The Court Should Preclude Testimony or Other Evidence Regarding the Assaultive Conduct of the Other Individual Arrested on August 8, 2025, in Connection with the Same Incident, or Regarding Charging or Resolution of That Individual's Case ........................................................................................................................13

X.    MOTION *IN LIMINE* NO. 10: The Defense May Not Claim That the Defendant is Being "Unfairly Singled Out" or "Persecuted" or That Other Individuals Should Have Been Charged ................................................................................................................................14

TABLE OF AUTHORITIES

Cases

*Chandler v. Florida*, 449 U.S. 560 (1981)..................................................................................... 4

*Merced v. McGrath*, 426 F.3d 1076 (9th Cir. 2005)........................................................................ 4

*Pope v. United States*, 298 F.2d 507 (5th Cir. 1962) ....................................................................... 3

*Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007) ........................................................................... 9

*Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) ........................... 14

*Shannon v. United States*, 512 U.S. 573 (1994) .............................................................................. 3

*Wayte v. United States*, 470 U.S. 598 (1985) ................................................................................ 14

*Zal v. Steppe*, 968 F.2d 924 (9th Cir. 1992)................................................................................... 4

*United States v. Armstrong*, 517 U.S. 456 (1996) ........................................................................ 15

*United States v. Barnes*, 895 F.3d 1194 (9th Cir. 2018) ................................................................ 9

*United States v. Blixt*, 548 F.3d 882 (9th Cir. 2008)....................................................................... 5

*United States v. Choate*, 619 F.2d 21 (9th Cir. 1980)................................................................... 15

*United States v. Cruz-Alvarez*, No. 24-CR-00449 VC (N.D. Cal., Apr. 28, 2026)………………………6

*United States v. Dorrell*, 758 F.2d 427 (9th Cir. 1985) .................................................................. 9

*United States v. Farley*, No. 15-CR-00092 TEH (N.D. Cal., Nov. 9, 2015)…………………………………...7

*United States v. Feola*, 420 U.S. 671 (1975) ............................................................................... 10

*United States v. Frank*, 956 F.2d 872 (9th Cir. 1991) ............................................................... 2, 3

*United States v. Funches*, 135 F.3d 1405 (11th Cir. 1998)........................................................... 4

*United States v. Gomez*, 92 F.3d 770 (9th Cir. 1996) .................................................................. 10

*United States v. Heard,* 2022 WL 2662882 (9th Cir. July 11, 2022)……………………………………………7

*United States v. Houston*, 2011 WL 13143710 (C.D. Cal. July 15, 2011).................................... 9

*United States v. Jose*, No. 06-CR-00467 SOM, 2007 WL 1669861 (D. Haw., June 4, 2007)................ 12

*United States v. Jimenez Quezadas*, No. 25-cr-0319 NC (N.D. Cal. November 11, 2025)………………..9

*United States v. Lemon*, 824 F.2d 763 (9th Cir. 1987) .................................................................. 9

*United States v. Luis-Amazar*, 2026 WL 1613935 (D. Ariz. June 4, 2026) ...................................... 10, 11

*United States v. Mendoza*, No. 16-cr-0150-BLF 2021 WL 1238314 (N.D. Cal. Apr. 2, 2021)................. 5

*United States v. Morton*, 999 F.2d 435 (9th Cir. 1993) ................................................................... 9

*United States v. Murphy*, 17 Fed. Appx. 545 (9th Cir. 2001)........................................................... 9

*United States v. Ornelas*, 906 F.3d 1138 (9th Cir. 2018) ........................................................... 11

*United States v. Perez*, 86 F.3d 735 (7th Cir. 1996) .................................................................. 5

*United States v. Powell*, 955 F.2d 1206 (9th Cir. 1991) ............................................................. 4

*United States v. Powers*, 129 F.4th 617 (9th Cir. 2025) ............................................................. 9

*United States v. Sanchez-Lima*, 161 F.3d 545 (9th Cir. 1998) ................................................... 10

*United States v. Scarmazzo*, 554 F. Supp. 2d 1102 (E.D. Cal. 2008)............................................ 5

*United States v. Shapiro*, 669 F.2d 593 (9th Cir. 1982) ............................................................ 9

*United States v. Span*, 75 F.3d 1383 (9th Cir. 1996) ............................................................... 11

*United States v. Span*, 970 F.2d 573 (9th Cir. 1992) ........................................................... 10, 11

*United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991) ......................................................... 7

*United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997)............................................................... 5

*United States v. Williams,* 2017 WL 4310712, (N.D. Cal. Sept. 28, 2017)………………………….7

*United States v. Wilson*, 639 F.2d 500 (9th Cir. 1981) ............................................................. 14

*United States v. Young*, 470 U.S. 1 (1984) ............................................................................ 7

Statutes

18 U.S.C. § 111(a)(1)................................................................................................ 2, 10

18 U.S.C. § 1361.................................................................................................... 2, 12

Rules

Fed. R. Crim. P. 12(b)(3)(A)(iv)................................................................................... 15

Fed. R. Evid. 103(d)................................................................................................... 6

Fed. R. Evid. 401 ............................................................................................ 12, 14, 15

Fed. R. Evid. 402 ........................................................................................ 12, 13, 14, 15

Fed. R. Evid. 403 ..................................................................................... 3, 7, 12, 13, 15

UNITED STATES MOTS. *IN LIMINE*
3:25-CR-00416-TSH                                    iii

Fed. R. Evid. 615(a) & (b) ................................................................................................. 6

Other Authorities

Ninth Circuit Model Crim. Jury Instruction No. 5.8 ....................................................... 9

Ninth Circuit Model Crim. Jury Instruction No. 5.8 ..................................................... 10

Ninth Circuit Model Crim. Jury Instruction No. 6.22 ..................................................... 3

Ninth Circuit Model Crim. Jury Instruction No. 6.1 ....................................................... 5

**INTRODUCTION**

The United States submits the following TEN motions *in limine* for the Court's consideration.

**FACTUAL BACKGROUND**

This case concerns an assault on an Immigration and Customs Enforcement ("ICE") officer and the willful damaging of the garage door of a government building.  On August 8, 2025, a group of people demonstrated against ICE for several hours outside the United States Appraisers Building at 630 Sansome Street, San Francisco, California (the "Appraisers Building"), where ICE San Francisco has a field office.  Around 3:00 p.m., demonstrators attempted to obstruct the movement of vans transporting immigration detainees as they were exiting the building and driving on Jackson Street and as various personnel from ICE and the Federal Protective Service ("FPS") exited the building to help allow the vans to pass.  After the vans had successfully departed, the ICE and FPS personnel retreated into the building's Jackson Street sally port/garage as demonstrators shouted invective at them.  Shortly after the rolling door to the garage was lowered, several demonstrators, including defendant Caleb Alexander Ranney ("Ranney or the "defendant") began shoving and kicking the door, ultimately causing it to come off its rolling track, partially collapse inward, and create a sizable gap between the door and the track.

At trial, the United States will introduce evidence from law enforcement officers, other government personnel, and government contractor(s), as well as photos and surveillance video, proving that shortly after 3:00 p.m. on August 8, 2025, Ranney repeatedly shoved and kicked a garage door at the Appraisers Building, causing the door to come off its guiding track and necessitating repair.  All of this was captured on surveillance video.  Several ICE officers, who were in a sally port directly behind the door, promptly exited the building to respond.

The evidence will further prove that Ranney initially retreated from the Appraisers Building after shoving and kicking the garage door.  After the ICE officers had returned to the street, Ranney, who was wearing dark clothing, a black balaclava-style mask, boots, hard-knuckled gloves, and a backpack, suddenly returned and charged at one of the officers—who was clearly identified as a federal law enforcement officer by markings on his protective vest—as the officer stood still.  Ranney shoved the officer, pushing him backwards.  This too was captured on surveillance video.  The defendant then resisted arrest as ICE officers attempted to handcuff him.

While officers were attempting to secure Ranney in handcuffs, a woman ("Individual 1") attempted to interfere with his arrest, including by striking a different ICE officer.  ICE officers then arrested that woman.  Officers took both Ranney and Individual 1 inside the Appraisers Building to a detention area.

During a search incident to Ranney's arrest, officers found various items in the backpack Ranney wore, including spray paint, a gas mask, and wire cutters.  His black balaclava-style mask and hard-knuckled gloves were removed during the search.

On December 5, 2025, the United States Attorney's Office filed an Information charging Ranney with one count of misdemeanor Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a)(1), and one count of misdemeanor Destruction of Government Property, in violation of 18 U.S.C. § 1361. Ranney's trial is set for July 27, 2026.

## MOTIONS *IN LIMINE*

I.     **<u>MOTION *IN LIMINE* NO. 1</u>: The Defense Should Not Be Permitted to Reference Punishment or Collateral Consequences in Front of the Jury**

The government moves to preclude, as irrelevant and unfairly prejudicial, any reference by the defense to the defendant's potential sentence or punishment, including any reference to the potential collateral consequences of conviction, during all phases of the trial, including jury selection, opening statements, examination of witnesses (including the defendant, if he elects to testify), and summation. The government is specifically concerned about two interrelated topics that, if raised, will be unfairly prejudicial, are not probative, and should be excluded: any mention of or allusions to (1) any penalty that may be imposed should the defendant be found guilty of one or both charges; and (2) any potential collateral consequences a conviction or convictions may have on the defendant's future professional or educational prospects.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991).  This bar has been imposed because informing the jury about potential sentences, or "other matters relating to [the] disposition of the defendant," tends to "draw the attention of the jury away from their chief function as

sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided." *Id.* (quoting *Pope v. United States*, 298 F.2d 507, 508 (5th Cir. 1962)). "[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion." *Shannon v. United States*, 512 U.S. 573, 579 (1994); *see* Ninth Circuit Model Crim. Jury Instruction No. 6.22 ("The punishment provided by law for this crime is for the court to decide. You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.").

Because information about punishment is "irrelevant to the jury's task," *Shannon*, 512 U.S. at 579, the Court should preclude defense counsel from referencing punishment in statements, questions, or argument during trial. Such reference could be as overt as "Mr. Ranney faces the possibility of a jail sentence," or more subtle." The government moves the Court for a pretrial order on this issue because, were the jury to hear about punishment, the harm would be done. The Court cannot "un-ring the bell" or neutralize the damage with a curative instruction.

This bar should also apply to any collateral consequence Ranney may suffer by virtue of conviction. These considerations are likewise irrelevant to whether the government has proven its case against the defendant beyond a reasonable doubt. Ranney is twenty years old and likely intends to seek educational and professional opportunities in the future. Any mention of punishment or potential collateral consequences—including a reference such as "your decision will have a significant impact on Mr. Ranney's ability to further his education or seek gainful employment in the future"—should be excluded as irrelevant and unfairly prejudicial as it would draw the attention of the jury away from its chief function as the trier-of-fact. Fed. R. Evid. 403 (providing that a court can exclude relevant evidence if "its probative value is substantially outweighed by the danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). There is only one reason why a defendant would want the jury to hear information about those topics: to convince the jurors to render a verdict based on those potential consequences rather than the evidence adduced a trial. That would be improper. The Court should therefore prohibit the defense from referring to punishment or any collateral consequences—including

UNITED STATES' MOTS. *IN LIMINE*
3:25-CR-00416-TSH                                          3

the effect any conviction may have on Ranney's educational and professional prospects—in the presence of the jury at any point in these proceedings.

## II.  MOTION *IN LIMINE* NO. 2: The Defense Should Not Be Permitted to Elicit Jury Sympathy or Nullification

For similar reasons, the Court should preclude defense counsel from encouraging jury sympathy or nullification in any form.  This trial is about whether the defendant assaulted a federal officer and willfully caused damage to government property.  The defense may attempt to present to the jury evidence or argument about the defendant's age, hopes for the future, or educational and professional aspirations, or may attempt to appeal to negative sentiments regarding the current administration's immigration enforcement policies and ICE's role in enacting them.  Such evidence and argument are not appropriate for trial in this case.  This trial is not the forum to litigate the propriety of federal immigration enforcement.  Neither a defendant nor his attorney has a right to present evidence or argument that is irrelevant to an element of or a legal defense to the crimes charged.  Verdicts must be based on the law and evidence, not on jury nullification.  *See Merced v. McGrath*, 426 F.3d 1076, 1079 (9th Cir. 2005) (affirming the district court's dismissal for cause of a juror who expressed a belief in exercising the power of jury nullification and noting that, "while jurors have the power to nullify a verdict, they have no right to do so"); *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1991) (affirming the district court's refusal to give an instruction on jury nullification); *Zal v. Steppe*, 968 F.2d 924, 931 (9th Cir. 1992) (Trott, J. concurring) (citing *Chandler v. Florida*, 449 U.S. 560, 574 (1981)) (concluding that defendants have "no right to jury nullification"); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) (noting that "the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury").

Attempts at nullification can take many forms.  Just as defense counsel should be precluded from arguing, for example, that a conviction "will have serious consequences for this defendant," so too should defense counsel be precluded from improperly arguing or suggesting that the jury should not convict because of, for example: the defendant's personal circumstances; a belief that the victim of an assault deserved it by virtue of the agency by which he is employed; a belief that this case is a waste of time or resources, or an improper or misguided use of the prosecutorial power; or a belief that the

UNITED STATES' MOTS. *IN LIMINE*
3:25-CR-00416-TSH                                        4

defendant is a "good person" who is "on the right side of history." Whether these comments evoke concepts of punishment or encourage jury sympathy or nullification, or both, they are improper under the law and may unduly sway the jury. They are irrelevant to this proceeding as they have no bearing on the conduct the defendant is charged with committing. In addition, they are unfairly prejudicial because they are likely to confuse the jury or may invite the jury to nullify a verdict supported by the evidence based on sympathy for the defendant or antipathy to the victim, the agency by whom the victim is employed, or the administration that directs the activities of that agency. They would present irrelevant and plainly unfairly prejudicial facts to the jury, and would cause the jury to focus, impermissibly, on things other than the factual question of Ranney's guilt or innocence and holding the government to its burden of proof. It is improper for a defendant to suggest in any way that the jury should acquit a defendant even if it finds that the government has met its burden of proof. *See United States v. Scarmazzo*, 554 F. Supp. 2d 1102, 1108 (E.D. Cal. 2008); *see also United States v. Blixt*, 548 F.3d 882, 890 (9th Cir. 2008); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996); *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) ("jurors have no right to nullify"). Ranney's personal circumstances, and the jurors' opinions of the administration's immigration enforcement policies and methods, are irrelevant to the only question the jury must decide: whether the defendant committed the charged offenses on August 8, 2025. Any argument or evidence touching on personal circumstances or larger political questions would amount to an appeal to juror sympathy or nullification that would distract jurors from their fact-finding duties and should be precluded.

The Ninth Circuit's Model Criminal Jury Instructions are clear: jurors are "not … to be influenced by … personal likes or dislikes, sympathy . . . public opinion, or biases[.]" Model Crim. Jury Instr. 6.1. Courts regularly preclude criminal defendants from seeking to elicit jurors' sympathy because the means by which defendants do so are often irrelevant. *See, e.g.*, *United States v. Mendoza*, No. 16-cr-0150-BLF, 2021 WL 1238314, at *3 (N.D. Cal. Apr. 2, 2021) (granting government's motion *in limine* to preclude defense attempts to elicit jury sympathy). The Court should thus bar the defense from referring to Ranney's personal circumstances or topics designed to elicit jurors' sympathy or encourage nullification because such topics do not bear on the defendant's guilt or innocence of the charged crimes. This prohibition should extend to opening statements and summation; to any colloquy that

UNITED STATES' MOTS. *IN LIMINE*
3:25-CR-00416-TSH                                      5

occurs in the jury's presence; and to the questioning of any witnesses, including the defendant, should he testify.

### III.    MOTION *IN LIMINE* NO. 3: All Fact Witnesses Except the Case Agent Should be Excluded from the Courtroom and Trial Testimony Access Should be Restricted

Federal Rule of Evidence 615(a) permits the government to designate as a party representative an agent who might otherwise be subject to sequestration and have that person sit at counsel table during the trial.  The government designates FPS Senior Special Agent Timothy Rivero as its party representative and requests that he be permitted to sit with government counsel throughout the trial.  All other fact witnesses (except the defendant) should be excluded from the courtroom under Rule 615(a).  Additionally, the government requests that the court prohibit, pursuant to Rule 615(b), disclosure of trial testimony to, or access to trial testimony by, witnesses excluded under Rule 615(a).

### IV.    MOTION *IN LIMINE* NO. 4: The Court Should Require the Defense to Proffer Notice and a Good-Faith Basis Before Any *Henthorn* Inquiry

The government requests that the defense be required to make an offer of proof and offer of relevance regarding any alleged prior misconduct by law enforcement officers—including allegations based on citizen complaints or news reports—outside the presence of the jury before inquiring about such alleged misconduct in front of the jury.  Such a proffer is especially needed where the area of proposed inquiry relates to alleged officer misconduct that is unrelated to credibility and is based on unsubstantiated allegations.  This procedure is appropriate because improper questions about alleged law enforcement misconduct are highly inflammatory and should not be presented casually to the jury.  *See* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.").  The government should not be placed in the position of constantly having to object, and then having to rehabilitate officers, based upon irrelevant and unsupported lines of questioning.

Consistent with prior decisions in this District, the government therefore moves that the Court decide the admissibility of *Henthorn*-type questioning of witnesses prior to such questioning and outside the presence of the jury.  *See, e.g.*, *United States v. Cruz-Alvarez*, No. 24-CR-00449 VC (ECF No. 127 at 1) (N.D. Cal., Apr. 28, 2026) (granting as unopposed the government's motion to require the defense

to proffer notice and a good-faith basis before any *Henthorn* inquiry); *United States v. Williams,* No. 3:13-CR-00764-WHO-1, 2017 WL 4310712, at *3 (N.D. Cal. Sept. 28, 2017)*, aff'd sub nom. United States v. Heard,* No. 18-10218, 2022 WL 2662882 (9th Cir. July 11, 2022) (requiring use of *Henthorn* material be vetted with the court prior to questioning and outside the presence of the jury except where the questioning concerns an express, sustained finding of untruthfulness, false statement, or false report); *United States v. Farley*, No. 15-CR-00092 TEH (ECF No. 62 at 17) (N.D. Cal., Nov. 9, 2015) (order establishing procedure for proffer outside the presence of the jury after government completes direct examination of law enforcement witnesses).

## V.    **MOTION *IN LIMINE* NO. 5: Defense Counsel May Not Vouch or Express Personal Opinions**

Counsel's personal beliefs and opinions are irrelevant and improper for the jury to consider. Vouching by counsel is prohibited. "Defense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case." *United States v. Young*, 470 U.S. 1, 8-9 (1984); *see also United States v. Swanson*, 943 F.2d 1070, 1078 (9th Cir. 1991) (concurring opinion) ([D]efense counsel is not to inform the jury of his or her opinion of the guilt or innocence of the defendant.). The United States therefore respectfully requests that the Court prohibit counsel from vouching or expressing personal opinions to the jury.

## VI.    **MOTION *IN LIMINE* NO. 6: The Defense Should Not Be Permitted to Reference Other Incidents Involving ICE Officers and Civilians, or Federal Immigration Enforcement Policies and Methods**

The Court should preclude the defense from offering evidence of, or making reference to, other incidents that have occurred between ICE or other immigration officers and civilians, or federal immigration enforcement policies and methods. Any probative value such topics may have is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Fed. R. Evid. 403. They would instead mislead the jury or invite it to unduly sympathize with the defendant or nullify its verdict.

It is common knowledge that the current administration's immigration enforcement policies and methods have engendered widespread opposition and protest, that ICE is one of the primary agencies tasked with effecting these policies, and that this has resulted in various highly publicized confrontations

between ICE, other federal immigration authorities, and members of the public. Events in Minneapolis, Los Angeles, Chicago, and other cities, in addition to the San Francisco Bay Area, have resulted in widespread media coverage and public commentary. Allowing the defense to offer evidence of or refer to such events, policies, or methods would run a significant risk of creating a mini-trial about their propriety and distract from the jurors' fundamental duty as triers-of-fact.

**VII.  MOTION *IN LIMINE* NO. 7: The Defense Should Not Be Permitted to Present the Defenses of Necessity, Justification, Self-Defense, or Defense-of-Others**

The Court should preclude the defense from offering the defenses of necessity, justification, self-defense, or defense-of-others because there is no evidence in the record or other grounds upon which to do so, and it has not made the requisite proffer of evidence to support them. Ranney cannot meet the elements of necessity due the availability of reasonable legal alternatives, and has no grounds to argue the most likely forms of justification he might present—self-defense and defense-of-others—because he knew the victim was a federal law enforcement officer, he was not under immediate threat of excessive force, and he cannot cite actions by other ICE officers in other situations as a ground for believing he or others were under immediate threat of excessive force.

Nevertheless, the government anticipates that, considering the various incidents between immigration authorities and the public and the administration's immigration enforcement policies and methods, *see* Section VI, *supra*, the defense may assert that the defendant acted out of necessity, was justified, or was attempting to defend himself or others through his conduct. Defense attorneys recently asserted such a defense in San Francisco Superior Court in the trial of seven defendants charged with conspiracy to commit false imprisonment and other charges, based on their blocking the Golden Gate Bridge in April 2024.[1] Although denied a jury instruction on necessity, attorneys in that case nonetheless argued to the jury that their clients reasonably believed that their actions were necessary and justified to avert potential harm to civilians in an international military conflict. Similarly, the government anticipates Ranney's defense may seek to assert that he reasonably believed his actions were necessary and justified to avert potential harm to protestors and persons in immigration

---

[1] *See* https://www.kqed.org/news/12086262/san-franciscos-case-against-pro-palestinian-activists-who-blocked-bridge-heads-to-jury, last accessed June 24, 2026.

proceedings, in San Francisco and elsewhere. The defense should not be permitted to do so.

As a general matter, a defendant is entitled to "instructions related to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Lemon*, 824 F.2d 763, 764 (9th Cir. 1987). However, "[a] 'mere scintilla' of evidence supporting a defendant's theory . . . is not sufficient to warrant a defense instruction." *United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993). The Court is within its power to preclude such defenses where the defendant has proffered no evidence to support any element of a given defense. Indeed, "the sufficiency of a proposed defense may be tested in pre-trial motion practice, and the defense excluded where a defendant's proffer reveals a lack of evidence on any element of the defense." *United States v. Houston*, 2011 WL 13143710 at *2 (C.D. Cal. July 15, 2011); *see, e.g.*, *United States v. Shapiro*, 669 F.2d 593, 596-97 (9th Cir. 1982) (affirming trial court's refusal, based on pre-trial proffer, to permit evidence of self-defense where there was no evidence of immediacy of threatened harm); *United States v. Murphy*, 17 Fed. Appx. 545, 547 (9th Cir. 2001) (recognizing trial court's power to bar presentation of justification defense where defendant failed to proffer sufficient basis to demonstrate one element). The defense has provided no notice of or evidentiary proffer to support the presentation of any of these defenses.

"The necessity defense is an affirmative defense that removes criminal liability for violation of a criminal statute." *United States v. Powers*, 129 F.4th 617, 623 (9th Cir. 2025) (quoting *Raich v. Gonzales*, 500 F.3d 850, 861 (9th Cir. 2007)). It requires that (1) the defendant was faced with a choice of evils and chose the lesser evil; (2) the defendant reasonably acted to prevent imminent harm; (3) the defendant reasonably anticipated his conduct would prevent such harm; and (4) there were no other reasonable legal alternatives to violating the law. Model Crim. Jury Instr. 5.8; *United States v. Barnes*, 895 F.3d 1194, 1204 (9th Cir. 2018); *see United States v. Dorrell*, 758 F.2d 427, 432 (9th Cir. 1985) (finding that the availability of "recourse to the political process to address his concerns regarding nuclear war . . . prevent[ed] [defendant] from raising the necessity defense[.]"). Here, whatever concerns Ranney may have had regarding federal immigration enforcement could have been redressed through a variety of means short of the alleged conduct in this case, and he has proffered no evidence to establish any of the elements. *See United States v. Jimenez Quezadas*, No. 25-cr-0319 NC (ECF No. 52

at 2) (N.D. Cal. November 11, 2025) (deferring government's motion *in limine* to preclude argument of necessity and noting that a "defendant is entitled to present evidence on a necessity defense and have the jury instructed accordingly once he has adequately established—through an offer of proof—that all four requisite factors are met[.]")  The defendant has not made, and cannot make, any such proffer, and the Court should therefore preclude the defendant from presenting a necessity defense.

Similarly, the Court should preclude the defendant from presenting a justification defense.  To present a justification defense, a defendant must establish that "(1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. *United States v. Gomez*, 92 F.3d 770, 775 (9th Cir. 1996) (citing *Lemon*, 824 F.2d at 765); *see* Model Crim. Jury Instr. 5.9.  The most likely form such a defense might take in this case would be self-defense or defense-of-others.

There are two distinct theories under which self-defense can be advanced in the context of a charge under 18 U.S.C. § 111(a)(1), and the defendant has no basis for either.  First, a defendant may assert self-defense in response to such a charge if he (1) did not know the alleged victim was a federal officer, (2) reasonably believed a use of force was necessary to defend himself against an immediate use of unlawful force, and (3) used no more force than appeared reasonably necessary under the circumstances.  *United States v. Luis-Amazar*, 2026 WL 1613935 at *2 (D. Ariz. June 4, 2026) (citing *United States v. Span*, 970 F.2d 573, 576-77 (9th Cir. 1992) ("*Span I*") (citing *United States v. Feola*, 420 U.S. 671, 684 (1975)).  This theory requires that the defendant not know the alleged victim was a federal officer.  *Span I*, 970 F.2d at 576; *see United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998) (holding that defendant was entitled to a self-defense jury instruction where he did not know the alleged victim was a federal law enforcement officer and believed he was "being attacked by bandits."). This theory of self-defense could not apply here for multiple reasons, not least because the victim was clearly identified as a federal officer and the events leading up to the alleged conduct were part of an anti-ICE protest.

Second, a defendant may assert self-defense against a § 111 charge despite knowing the alleged

victim is a federal officer, based on a "defendant's right to use reasonable force to repel excessive force by a federal law enforcement officer." *Luis-Amazar*, 2026 WL 1613935 at *3 (citing *Span I*, 970 F.2d at 577); *see United States v. Ornelas*, 906 F.3d 1138, 1147-48 (9th Cir. 2018); *see also United States v. Span*, 75 F.3d 1383, 1388 (9th Cir. 1996) ("*Span II*") ("The theory is that a person has a right to resist an officer who is using excessive force."). The excessive force theory "requires a defendant to have reasonably believed his use of force was necessary to defend against the officer's immediate use of unlawful—i.e., excessive—force; it does not extend to force that a defendant merely fears may occur at some point in the future." *Luis-Amazar*, 2026 WL 1613935 at *3. In this case, the defense has proffered no evidence—and in fact all available evidence points to the contrary—to suggest that the defendant was under threat of immediate use of excessive force at the time he assaulted the ICE officer.[2]

The analysis here applies with equal force to any potential defense-of-others defense. Although the government is not aware of any controlling case law squarely addressing the defense-of-others defense in relation to a charge under § 111(a)(1), the above-referenced Ninth Circuit case law regarding a defendant's ability to argue self-defense in such a context is instructive and should apply with equal force to any defense-of-others defense. The defendant should not be permitted to proffer evidence of conduct of other ICE personnel interacting with the public, or conducting immigration enforcement, as a basis for self-defense or defense-of-others. Any evidence of ICE or other immigration authorities' conduct at different times in different places would not provide a sufficient basis to assert such a defense. *See Luis-Amazar*, 2026 WL 1613935 at *3 ("Evidence of Other ICE Conduct—i.e., conduct by officers not involved in Mr. Luis-Castro's arrest, occurring days and weeks before the arrest, and occurring in locations far from Arizona—is irrelevant to whether Defendant reasonably believed that ICE officers were using excessive force against his father."). The defendant has not made, and cannot make, any evidentiary proffer sufficient to satisfy the elements of this defense, and should therefore be precluded from asserting it. Thus, the Court should not permit the defense to offer evidence of, or make argument about, conduct of other ICE officers or immigration authorities, or the immigration policies and methods of the current administration writ large, to assert that his conduct was in defense of others.

---

[2] Furthermore, any potential claim of excessive force the defendant may wish to raise regarding his arrest post-assault would only be properly raised in a *Bivens* action.

UNITED STATES' MOTS. *IN LIMINE*
3:25-CR-00416-TSH                                                11

**VIII.    <u>MOTION *IN LIMINE* NO. 8</u>: The Court Should Admit Evidence of Property Seized from the Defendant Incident to His Arrest but Otherwise Preclude Evidence or Testimony Regarding Events Following the Offense Conduct**

The United States intends to move into evidence certain exhibits and present testimony regarding items seized from Ranney's person (including a backpack he was wearing and its contents) incident to his arrest.  These items include, among others, hard-knuckle gloves, spray paint, wire cutters, boots, and a black-and-white keffiyeh head scarf, depicted in photographs at Government Exhibits, 11, 12, and 69. Additionally, portions of internal video surveillance footage from 630 Sansome Street—for example, in Government Exhibit 32 (approximately minutes 1:20 through 7:20) and Government Exhibit 34 (approximately 0:00 through minute 02:06, and 1:46:04 through 1:47:04)—show law enforcement officers searching Ranney and his belongings and recovering these items, as well as removing a black balaclava-style mask from Ranney's face.  These items are relevant to either or both of the following: (1) Ranney's identity as an individual seen kicking and striking the garage door during the August 8, 2025 incident, during which multiple individuals were present and masked; and (2) Ranney's mental state with respect to the Destruction of Government Property count, which has a *mens rea* of willfulness.[3]

Aside from the content described above—namely, evidence of the recovery of property from Ranney incident to his arrest to establish his identity and/or mental state at the time of the offense conduct—evidence of events after the offense conduct is not relevant to the charges.  Evidence concerning other events past that point, including any argument or evidence about Ranney's brief detention following his arrest, does not have "any tendency to make [a fact of consequence in determining the action] more or less probable than it would be without the evidence."  *See* Fed. R. Evid. 401.  Therefore, it should be excluded as irrelevant.  *See also* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").  Even were the Court to find some probative value to that information, it should be excluded under Rule 403 on grounds that any probative value is substantially outweighed by the dangers of confusing the issues and wasting time.

---

[3] The elements of the Destruction of Government Property count, in violation of 18 U.S.C. § 1361, include that the defendant "willfully injured or committed a depredation" against the property of the United States.  *See United States v. Jose*, No. 06-CR-00467 SOM, 2007 WL 1669861, at *4 (D. Haw., June 4, 2007).

UNITED STATES' MOTS. *IN LIMINE*
3:25-CR-00416-TSH                          12

Consistent with the above, the government moves to exclude under Rules 402 and 403 portions of video footage that contain evidence only of post-offense conduct or events, including, but not limited to:

- Government Exhibit 1 / Defense Exhibit 212 (after minute 4:08, which is when officers begin to arrest Ranney);

- Government Exhibit 3 / Defense Exhibit 211 (after timestamp 3:23:12 p.m., which is when officers begin to arrest Ranney);

- Government Exhibit 19 / Defense Exhibit 214 (entire exhibit, which captures none of the charged offense conduct, as it starts after Ranney's assault of an ICE officer and his striking the garage door at 630 Sansome Street; it begins as officers respond to Ranney's assault of the ICE officer.);

- Government Exhibit 35 (entire exhibit, which contains footage of Ranney in detention).

The Government does not intend to restrict with this Motion *in Limine* any defense argument or evidence concerning the disposition of Ranney's property post-arrest.

IX.    **MOTION *IN LIMINE* NO. 9: The Court Should Preclude Testimony or Other Evidence Regarding the Assaultive Conduct of the Other Individual Arrested on August 8, 2025, in Connection with the Same Incident, or Regarding Charging or Resolution of That Individual's Case**

As noted above, ICE officers arrested Ranney and Individual 1 on August 8, 2025, in the vicinity of 630 Sansome Street in San Francisco, California. Federal officers issued both Ranney and Individual 1 U.S. District Court Violation Notices, which are typically processed on the District's petty offense docket, also known as the Central Violations Bureau ("CVB") docket, unless the United States Attorney's Office elects to bring misdemeanor or felony charges in federal court. Officers issued Individual 1 four citations, including for assaulting a different ICE officer from the officer Ranney is charged with assaulting and for causing damage to the garage door at 630 Sansome Street. In Ranney's case, the government has filed formal misdemeanor charges via criminal Information in federal court, whereas Individual 1's case was handled on the CVB docket.

Individual 1's conduct and arrest during the August 8, 2025, incident are captured on security video footage from the incident and described in reports provided to the defense in discovery. Although

Individual 1 was arrested in connection with the same incident underlying the instant case against Ranney, the details of Individual 1's assaultive conduct and officers' interactions with Individual 1, including their arrest of Individual 1, are irrelevant to the determination of Ranney' guilt or innocence of the charged crimes; they do not have "any tendency to make [a fact of consequence in determining the action] more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). The Court should preclude the defense from eliciting testimony or presenting other evidence regarding Individual 1's specific assaultive conduct or arrest during that incident, or about the government's charging decisions and case resolution with respect to Individual 1.

## X.    MOTION *IN LIMINE* NO. 10: The Defense May Not Claim That the Defendant is Being "Unfairly Singled Out" or "Persecuted" or That Other Individuals Should Have Been Charged

The defense may seek to claim at trial that the defendant is being unfairly singled out for prosecution or that other individuals should have been charged. This defense theory of the case would be groundless and has no place at the defendant's trial.

Any assertion by the defense, in argument or through testimony, that other individuals associated with the August 8, 2025, incident, including Individual 1, should have been criminally charged but that the defendant has been unfairly and unreasonably singled out, would be improper. Insofar as the defendant would seek to raise a selective prosecution claim, he cannot meet the "particularly demanding standard" of proof to establish a *prima facie* case. *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 489 (1999).

It is well established that the government has broad discretion regarding whom to prosecute. *Wayte v. United States*, 470 U.S. 598, 607 (1985). A simple allegation by a defendant that he has been singled out for prosecution, while other similar violations have not been charged, does not provide the basis for a selective prosecution claim.

To succeed on a selective prosecution claim, a defendant must show both (1) that others are generally not prosecuted for the same conduct; and (2) that the decision to prosecute the defendant "was based upon impermissible grounds such as race, religion, or the exercise of constitutional rights." *United States v. Wilson*, 639 F.2d 500, 503 (9th Cir. 1981) (citations omitted). "The fact that not all

criminals are prosecuted is no valid defense to the one prosecuted. . . . [T]he administration of such a matter lies in the discretion of the prosecuting attorney." *United States v. Choate*, 619 F.2d 21, 23 (9th Cir. 1980) (citations omitted).

Even in the rare case where a defendant can make a *prima facie* showing of selective prosecution, the proper method for seeking relief is through a pretrial motion to dismiss, not by the presentation of evidence or argument to the jury. Fed. R. Crim. P. 12(b)(3)(A)(iv) (listing among motions that must be made before trial if the basis for the motion is then reasonably available a motion for "selective or vindictive prosecution"). As the Supreme Court has explained, "A selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). It is a legal question for the Court, not a question for the jury.

The defendant has not filed such a pretrial motion in this case. There is no basis for the defendant to believe or assert that he has been unfairly singled out for prosecution. And there is no authority supporting presentation of a selective prosecution claim to a jury. Any claim that other individuals should have been prosecuted and/or evidence of other actors who committed criminal acts that have not been prosecuted has no relevance other than to support a selective prosecution claim. Therefore, any such testimony would be irrelevant and inadmissible under Federal Rules of Evidence 401 and 402, or alternatively, unduly prejudicial, highly inflammatory, misleading, and a waste of time under Federal Rule of Evidence 403. The United States therefore requests that the Court preclude (1) any evidence or argument that other individuals involved in the August 8, 2025, events from which this case stems should have been prosecuted in this case; (2) any evidence or argument that the defendant has been unfairly selected for prosecution in this case; and (3) any evidence or argument concerning other assaults (including the alleged assault by Individual 1) or incidents of destruction of government

////

////

////

////

property.

DATED:  June 24, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


_____/s/_____
E. WISTAR WILSON
ELI J. COHEN
Assistant United States Attorneys