JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
ANGELA CHUANG, Bar No. 313445
SAMANTHA JAFFE, Bar No. 324739
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    (415) 436-7700
Facsimile:    (415) 436-7706
Email:        Angela_Chuang@fd.org

Counsel for Defendant RANNEY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CALEB RANNEY,<br><br>Defendant. | **Case No.:** CR 25–416 TSH<br><br>**DEFENDANT'S REPONSE TO GOVERNMENT'S MOTIONS IN LIMINE**<br><br>**Court:**         Courtroom E, 15th  Floor<br>**Hearing Date:**   July 9, 2026<br>**Hearing Time:**   10:00 a.m. |

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

## Federal Cases

*Arizona v. Youngblood,*
488 U.S. 51 (1988) ................................................................................................ 12

*Barnes v. Felix,*
605 U.S. 73 (2025) ................................................................................................ 15

*Opper v. United States,*
348 U.S. 84 (1954) .................................................................................................. 3

*United States v. Abel,*
469 U.S. 45 (1984) .................................................................................................. 2

*United States v. DeGeorge,*
380 F.3d 1203 (9th Cir. 2004) ......................................................................... 14, 15

*United States v. Feola,*
420 U.S. 671 (1975) .............................................................................................. 11

*United States v. Flyer,*
633 F.3d 911 (9th Cir. 2011) ............................................................................... 12

*United States v. Hankey,*
203 F.3d 1160 (9th Cir. 2000) ............................................................................. 15

*United States v. Heard, No. 18-10218,*
2022 WL 2662882 (9th Cir. July 11, 2022) ........................................................... 4

*United States v. Kayser,*
488 F.3d 1070 (9th Cir. 2007) ........................................................................... 9, 11

*United States v. Marguet-Pillado,*
648 F.3d 1001 (9th Cir. 2011) ............................................................................... 9

*United States v. Moreno-Ornelas,*
253 F. Supp. 3d 1117 (C.D. Cal. 2017) ................................................................ 13

*United States v. Morsette,*
622 F.3d 1200 (9th Cir. 2010) ............................................................................... 7

*United States v. Murphy,*
17 Fed. Appx. 545 (9th Cir. 2001) ..................................................................... 7, 8

*United States v. Pierre,*
254 F.3d 872 (9th Cir. 2001) ................................................................................. 7

*United States v. Romero-Avila,*
210 F.3d 1017 (9th Cir. 2000) ............................................................................... 9

*United States v. Sanchez-Lima*,
    161 F.3d 545 (9th Cir. 1998) .............................................................................................. 9

*United States v. Severeid*,
    609 F. App'x 931 (9th Cir. 2015) ......................................................... 6, 12, 13, 15

*United States v. Shapiro*,
    669 F.2d 593 (9th Cir. 1982) .............................................................................................. 7

*United States v. Sivilla*,
    714 F.3d 1168 (9th Cir. 2013) ......................................................................................... 12

*United States v. Span*,
    970 F.2d 573 (9th Cir. 1992) ........................................................................................... 11

*United States v. Vizcarra-Martinez*,
    66 F.3d 1006 (9th Cir. 1995) ...................................................................................... 14, 15

*United States v. Washington*,
    819 F.2d 221 (9th Cir. 1987) ............................................................................................. 9

*United States v. Wilkerson*,
    388 F. Supp. 3d 969 (E.D. Tenn. 2019) .......................................................................... 8

*United States v. Zaragoza-Moreira*,
    780 F.3d 971 (9th Cir. 2015) ........................................................................................... 12

**Federal Rules and Statutes**

Fed. R. Crim. P. 12.1–12.3 ............................................................................................... 8

Fed. R. Evid. 401 .......................................................................................................... 12, 14

Fed. R. Evid. 403 .......................................................................................................... 14, 15

Fed. R. Evid. 607 ............................................................................................................... 2

Fed. R. Evid. 608 ............................................................................................................... 2

Fed. R. Evid. 611 ............................................................................................................... 2

Fed. R. Evid. 615 ........................................................................................................... 3, 4

**Other Authorities**

Dell Cameron & Caroline Haskins, *FBI Warns of Criminals Posing as ICE, Urges Agents to ID Themselves*, WIRED (Nov. 4, 2025) ............................................................................... 10

Graham Hurley, *Blood. Pain. Disorientation. Here's What Protesters Say 'Less-Lethal' Weapons Feel Like*, CNN (Jan. 23, 2026) ............................................................................................. 9

Kenneth S. Broun et al., *McCormick on Evidence* § 39 (9th ed. 2025) ................................. 2

*Law Enforcement Use of Less-Than-Lethal Weapons: Considerations for Congress*, Congr. Research serv. at 10, 16 (Jan. 23, 2025) ............................................................................................. 10

**INTRODUCTION**

Mr. Ranney hereby submits his responses to the government's Motions in Limine in accordance with the pretrial schedule in this matter.

**ARGUMENT**

I. <u>Response To Motion In Limine No. 1</u>: **Mr. Ranney does not intend to refer to punishment or sentencing**

The government's motion to exclude any reference to potential sentencing, or potential impacts of a conviction on Mr. Ranney's future professional or educational prospects, is moot. Mr. Ranney does not presently intend to introduce any such reference, and will seek leave of the Court before doing so should that intention change, for example if the government opens the door. If the government believes that a statement as simple and as commonly used as "this is a serious case," refers to punishment, Mr. Ranney disagrees with that characterization.

II. <u>Response To Motion In Limine No. 2</u>: **Neither party should make improper arguments, but evidence of Mr. Ranney's personal circumstances and motivations, circumstances surrounding the charged offenses, and evidence related to witness credibility including sources of bias, are admissible**

Mr. Ranney does not intend to offer evidence or make arguments seeking jury nullification. The defense, as always, will abide by ethical and evidentiary rules throughout the trial. Surely, both parties reserve the right to object if the other side seeks to introduce any inadmissible evidence or make any improper argument. While Mr. Ranney does not oppose the general contention that all "irrelevant" evidence should be excluded from trial (as it usually is), such things cannot be litigated abstractly in advance. In the absence of a specific motion about some particular evidence that the Court can rule on in limine, it is expected that counsel for both parties will object at trial as needed in the normal course.

It is somewhat unclear what specifically the government seeks to preclude, other than personal characteristics of Mr. Ranney and vaguely described attempts to enflame negative feelings about ICE and/or immigration enforcement. First, the Court should deny the government's request to exclude evidence of Mr. Ranney's personal circumstances. Mr. Ranney's personal characteristics such as his age, education, and his perception of ICE enforcement practices and policies are clearly relevant to and inform his understanding of his circumstances, as well as his actions and motivations therefor.

Second, given that this case involves a charge of Assault on an ICE Officer (Count One) and Destruction of Government Property (Count Two) that occurred at an ICE building in the context of a pro-immigration protest, this trial will necessarily involve discussion of ICE practices and policies, as well as examination of multiple ICE agents' actions and their interactions with Mr. Ranney and other protesters. It would be impossible not to reference these topics, as they not only are critical to a complete narrative of the circumstances of the charged offenses but they also shed light on, *inter alia*, various individuals' relevant motivations, states of mind, biases, and reasons to lie. Numerous ICE agents and other federal agents are expected to testify at trial. As witnesses, their credibility will be at issue. Evidence about sources of bias and self-interest that create a motive to lie, which would include evidence about engaging in misconduct or failing to follow applicable policies and/or court orders,[1] has long been recognized to fall within the proper ambit of what is permissible at trial. *See, e.g.*, Fed. R. Evid. 607 ("Any party . . . may attack the witness's credibility."); Fed. R. Evid. 611(b) (defining the scope of cross-examination to include "matters affecting the witness's credibility"); *United States v. Abel*, 469 U.S. 45, 51 (1984) ("A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probably in the eyes of the jury than it would be without such testimony . . . . The Courts of Appeals have upheld use of extrinsic evidence to show bias both before and after the adoption of the Federal Rules of evidence. We think the lesson to be drawn from all of this is that it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence just as it was permissible to do so before their adoption.") (citations omitted); *see also* Kenneth S. Broun et al., *McCormick on Evidence* § 39 (9th ed. 2025) ("In courtroom parlance, facts showing bias are considered so highly probative of credibility that they are never deemed 'collateral[.]'"). Not only that, but the ability to probe such issues is necessary in order to fulfill Mr. Ranney's constitutional rights under the Due Process Clause to present a complete defense and under the Confrontation Clause to effectively confront the witnesses against him.

The government's contention that references to Mr. Ranney's personal characteristics and/or relevant topics such as immigration enforcement policies and methods would be "designed to elicit

---

[1] Reference to such topics may also take the form of cross-examination about specific instances of conduct that are probative of a witness' truthfulness. Fed. R. Evid. 608(b).

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

2

jurors' sympathy or encourage nullification" is unfounded. As the government itself points out, the jury will be instructed that they are not to render a verdict based on "personal likes or dislikes, sympathy . . . public opinion, or biases." Govt. MIL #2 at 5. It is a long-standing basic principle that jurors are presumed to follow the Court's instructions. *See Opper v. United States*, 348 U.S. 84, 95 (1954) ("To say that the jury [would be] confused amounts to nothing more than an unfounded speculation that the jurors [would disregard] clear instructions of the court in arriving at their verdict. Our theory of trial relies upon the ability of a jury to follow instructions.").

If any potential juror feels so strongly about ICE and/or immigration enforcement that their ability to judge the case fairly and impartially would be affected, then surely such juror would be excused during the jury selection process. Indeed, both parties have submitted voir dire questions along these lines. To prohibit either party from referencing these topics during jury selection, as the government requests, would in fact be counter-productive.

Accordingly, this Court should deny the government's motion to preclude the defense from presenting evidence of Mr. Ranney's personal characteristics and evidence that goes to bias and/or completes the narrative of the case. It should defer the government's motion to preclude improper jury nullification arguments until any such objection arises to specific evidence or argument. *Cf. United States v. Jimenez Quezadas*, Case No. CR 25-319-NC, Dkt. No. 52 (Order on Motions in Limine) at 2–3 (N.D. Cal. Nov. 11, 2025) (in the context of a criminal case involving ICE agents, denying government's MIL No. 2 requesting exclusion of evidence of the defendant's "health, age, finances, and education, as those issues could explain the Defendant's motive, actions, and necessity," and deferring a similar government MIL No. 6 to preclude jury nullification arguments "for consideration of objection to specific evidence or argument").

**III.   Response To Motion In Limine No. 3: Mr. Ranney agrees that all non-exempt fact witnesses should be excluded from the courtroom and restricted from accessing trial testimony, but defense investigator Catherine Goulet should be exempted from the exclusion order**

Mr. Ranney has similarly requested an exclusion order under Rule 615 to exclude witnesses from all trial proceedings. *See* Def's MIL #2. He has also requested in his MIL # 3 that Federal Public Defender Catherine Goulet be exempted from any exclusion order because her presence is

"essential to present [Mr. Ranney's] defense." Fed. R. Evid. 615(a)(3). Other Courts in this District have issued similar orders along these lines. *See, e.g.*, *United States v. DePape*, Case No. CR 22-426-JSC, Dkt. No. 134 (Order Re: Motions in Limine) at 2–3 (N.D. Cal. Oct. 30, 2023) (granting defense MILs to exclude witnesses, "other than one case agent and one defense investigator").

**IV.    Response To Motion In Limine No. 4: Mr. Ranney has no objection to following the standard practice in this District with regard use of *Henthorn* material, including that he is *not* required to make any offer of proof where there has been an express finding of untruthfulness, a false statement, or a false report**

As of the date of the filing of the motions in limine, the defense has not received any *Henthorn* material from the government. The defense emailed government counsel notifying them of this, along with specific *Henthorn*/*Giglio* requests, on June 25, 2026.

The government seeks to require the defense to make "an offer of proof and offer of relevance regarding any alleged prior misconduct by law enforcement officers—including allegations based on citizen complaints or news reports—outside the presence of the jury before inquiring about such alleged misconduct in front of the jury." Govt. MIL #4 at 6. In support of its request, the government cites three district court cases. *Id.* The defense has no objection to the notice and good faith basis procedure routinely followed in this District with regard to *Henthorn* material, with one important caveat, which is noted in the government's citation to *Heard* but not included in its citation to *Williams*: an express finding of untruthfulness in *Henthorn* materials (including a false statement, or a false report), **does not** require independent vetting by this Court before being a subject of discussion before the jury. *See United States v. Heard*, No. 18-10218, 2022 WL 2662882 (9th Cir. July 11, 2022); *see also United States v. Williams*, No. CR-13-00764-WHO (ECF No. 1343 at 4-5) (N.D. Cal. Sep. 28, 2017) (requiring judicial vetting of proposed use of *Henthorn* material prior to questioning, outside the presence of the jury, **except** where the questioning concerns an express finding of untruthfulness, a false statement, or a false report); *United States v. Cerna*, No. CR-08-00730-WHA (ECF No. 3644 at 24) (N.D. Cal. Mar. 3, 2011) (requiring judicial vetting of proposed use of *Henthorn* material prior to questioning, outside the presence of the jury, **except** where the questioning concerns an express finding of untruthfulness, a false statement, or a false report).

Further, the defense objects to the government's proposed expansion of an offer of proof

requirement beyond *Henthorn* material to citizen complaints or news reports. Both of those sources of impeachment fall outside of *Henthorn*, which specifically refers to materials from personnel files, and are proper subjects of impeachment on cross examination with no offer of proof necessary.

Relatedly, the government seeks to explicitly exclude a possible basis for a *Henthorn* inquiry: "officers' interactions with Individual 1, including their arrest of Individual 1 . . ." Govt. MIL # 9 at 13. But the law enforcements' actions that may have given rise to *Henthorn* material concerning this specific protest, and this specific arrest, are part and parcel of the events of that day, and highly relevant to their credibility. As is evident both from the videos of the alleged assaultive conduct itself (on behalf of Mr. Ranney and Individual 1), Declaration of Angela Chuang in Support of Defendant's Response to Government's Motions in Limine ("Chuang Response Decl."), Exs. J–L; as well as videos of the subsequent detention and searches of Mr. Ranney and Individual 1, *see* Ex. A to Mr. Ranney's Motion to Suppress, Dkt. 33, the involved officers' conduct and interactions with Individual 1, including any excessive force and assaultive behavior towards her, cannot be untied from Mr. Ranney's case: Mr. Ranney and Individual 1 participate in the same protest, are arrested contemporaneously, and searched contemporaneously. The same surveillance video captures the interactions of Mr. Ranney and Individual 1 with law enforcement; the government, much as it wishes to, cannot excise one from the other. And as previously discussed *supra* in Mr. Ranney's response to the government's Motion in Limine #2, cross-examination into the conduct or misconduct of agents in this case is proper as it bears on their credibility, including potential motives to lie.

V.    **Response To Motion In Limine No. 5: The Court should deny the motion in limine and assume that both parties will follow the law and the Federal Rules of Evidence, absent a specific objection**

The defense agrees that both parties must follow the law and the Federal Rules of Evidence, and it assumes the government also agrees with that general point. In that context, this specific motion in limine, without any cited factual or case-specific basis for its necessity, should be denied. Rather, the defense assumes both parties will endeavor to follow the law, and object accordingly if any perceived vouching occurs.

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

**VI.    <u>Response To Motion In Limine No. 6:</u> The government cannot preclude relevant evidence, and this Court should deny the motion in limine**

The government seeks to preclude the defense "from offering evidence, or making reference to, other incidents that have occurred between ICE or other immigration officers and civilians, or federal immigration enforcement policies and methods." Govt. MIL at 7. The government appears to believe, based on the totality of its motions in limine, that the defense will attempt to argue that immigration enforcement is unconstitutional or morally wrong. Not so. But Mr. Ranney must be allowed to cross-examine ICE agents in this case about their role in this case, which necessitates describing what kind of protest was occurring, and may necessitate describing prior protests, as it informs how the agents reacted here.

Federal immigration enforcement policy—on a granular, not general—level is intrinsically tied to this case: the alleged offenses occurred at a protest regarding federal immigration enforcement. That fact is beyond dispute. The alleged victim in this case is an ICE officer. To remove this case from that context is to deny Mr. Ranney the ability to present a full defense, which would violate basic constitutional principles.

The credibility of ICE agents in this case is tantamount. It is the government's burden to prove to the jury, beyond a reasonable doubt, that Mr. Ranney committed a crime. In so doing, they have to show that his actions were not taken in self-defense or in defense of others. *See infra* at Response to MIL #7. To pretend that this protest occurred without context or otherwise not mention the circumstances of it would prejudice Mr. Ranney and deny the jury a full picture of what occurred that day: his actions, and the officers' actions, did not spring from thin air.

Put simply: "other incidents" involving ICE or federal immigration enforcement are relevant if they affect how the officers in this case reacted and behaved, and thus any threat perceived by Mr. Ranney. Mr. Ranney also has a Sixth Amendment right to cross-examine the government's witnesses about the facts of this case and their credibility and/or bias, which is crucial here when the allegation is that a law enforcement officer was assaulted. *See United States v. Severeid*, 609 F. App'x 931, 933 (9th Cir. 2015) (on appeal for conviction for assaulting a federal official, noting that prosecutor's vouching for alleged victim was particularly damaging because the "jury was tasked with a close credibility contest" between the federal officer and the accused defendant). This trial cannot occur in

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

a vacuum.

**VII.    Response To Motion In Limine No. 7: Mr. Ranney does not intend to present the defenses of necessity or justification, and the Court should defer ruling on a self-defense or defense-of-others jury instruction until the close of evidence**

The government moves to preclude Mr. Ranney from presenting the affirmative defense of necessity and/or justification without a corresponding pretrial offer of proof making a prima facie showing as to the elements. Mr. Ranney does not intend to present either of these defenses, both of which the defense would have to prove by a preponderance of the evidence.

Self-defense and/or defense-of-others, on the other hand, are distinct defenses with different elements than necessity and justification, and more importantly, **do not place the burden of proof on the defense**. Rather, pursuant to longstanding Ninth Circuit caselaw, the government **must disprove self-defense** (of which defense-of-others is a subset) beyond a reasonable doubt. *See United States v. Morsette*, 622 F.3d 1200, 1202 (9th Cir. 2010) (stating that "[t]he model jury instruction remains correct," referring to Model Jury Instruction 5.10 placing the burden of proof beyond a reasonable doubt on the government to disprove self-defense); *United States v. Pierre*, 254 F.3d 872, 876 (9th Cir. 2001) (finding reversible error in district court's failure to properly instruct the jury that the government has the burden of disproving self-defense). Where a defense is not one for which the defendant bears a burden of proof, the Court should not require a pretrial offer of proof; rather, the Court decides whether an instruction on self-defense is warranted at the close of the case, and if it is, it must instruct the jury that the government must disprove it beyond a reasonable doubt. *See* Ninth Cir. Model Crim. J. Instr. 5.10 cmt. (Self-Defense) (directing court that "[w]hen there is evidence of self-defense, an additional element should be added to the instruction on the substantive offense: for example, 'Fourth, the defendant did not act in reasonable self-defense.'").

The government's citations to *Shapiro* and *Murphy* for the opposite contention are entirely misplaced and are based on mischaracterizations of the jury instructions at issue in those cases. The pincite in *Shapiro* that the government describes as "affirming trial court's refusal, based on pre-trial proffer, to permit evidence of self-defense where there was no evidence of immediacy of threatened harm," Govt. MIL #7 at 9, does not involve a contested self-defense instruction, but rather a contested **duress** instruction. *United States v. Shapiro*, 669 F.2d 593, 596–97 (9th Cir. 1982). Duress

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

is a different defense than self-defense, with its own unique elements and—critically—on which the defense has the burden of proof by a preponderance of the evidence. *See* Ninth Cir. Model Crim. J. Instr. 5.7 (Duress, Coerion or Compulsion (Legal Excuse)). *Murphy* similarly did not involve a self-defense instruction, but rather a **justification** instruction in a felon in possession of a firearm case. *United States v. Murphy*, 17 Fed. Appx. 545, 547 (9th Cir. 2001) (unpublished).[2] Justification is also a different defense than self-defense with its own unique elements and—just like duress—places the burden of proof on the defense. *See* Ninth Cir. Model Crim. J. Instr. 5.9 (Justification (Legal Excuse)). Consistent with the defense having the burden of proof for duress or justification, denials of duress or justification defense instructions have been upheld by the Ninth Circuit if the defendant did not make a pre-trial prima facie showing. The same requirement should not apply for self-defense, for which the government—not the defense—bears the burden of proof, and the government has failed to cite binding authority requiring otherwise.

At bottom, the government seeks to force the defense to prematurely show its cards and exceed its disclosure obligations. The government must be aware, however, that a defendant only has to disclose the defenses specifically listed in Fed. R. Crim. P. 12.1–12.3, and "even the drafters of those rules could not agree on their propriety." *United States v. Wilkerson*, 388 F. Supp. 3d 969, 974 (E.D. Tenn. 2019). "Whatever wisdom supported the adoption of those rules, courts should not ad hoc invent new ways to coerce criminal defendants to assist the government in their prosecution—absent compelling reason to do so. And it is certainly not a sufficient justification that doing so would be more convenient for the government and the Court. '[J]ealously guard[ed]' constitutional principles are not casually tossed aside for the sake of expediency, much less for the mere potential that there may be some future inconvenience." *Id.* at 974–75 (rejecting the government's argument that the Court has the inherent authority or authority under Rule 16 to order the defendant to disclose pretrial whether he intended to present an advice of counsel defense). Indeed, the government's request is

---

[2] Mr. Ranney only cites to this 2001 unpublished Ninth Circuit opinion in response to the government doing so. Not only is this unpublished opinion not binding precedent, but the government's citation to it appears to violate Ninth Circuit Rule 36-3(c) (prohibiting citation to unpublished Ninth Circuit dispositions and orders issued before January 1, 2007, but for specific circumstances, none of which apply here).

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

8

nothing "other than a seemingly arbitrary, unspecified sentiment about when a proper defense must be formulated," without any explanation "why a criminal defendant must decide what defense (if any) to pursue in advance of trial or risk losing the option altogether." *Id.* at 975.

As the government essentially concedes, the standard for theory of defense jury instructions is extremely deferential and favorable to the defense. *See United States v. Kayser*, 488 F.3d 1070, 1076 (9th Cir. 2007) (describing the legal standard for granting a theory-of-the-defense instruction as "generous," and explaining that "a defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if the evidence is weak, insufficient, inconsistent, or of doubtful credibility") (quoting *United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987)); *United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998) (same in the context of a self-defense instruction). Failure to give a theory-of-the-defense instruction, "provided that it is supported by law and has some foundation in the evidence[,] . . . violates a defendant's constitutional right to a fair trial." *United States v. Romero-Avila*, 210 F.3d 1017, 1023 (9th Cir. 2000); *see also United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) ("A criminal defendant has a constitutional right to have the jury instructed according to his theory of the case.").

In its motion, the government assumes that the evidence at trial will not support a self-defense or defense-of-others instruction. But the defense believes otherwise. The fact is that evidence that would support an instruction under either theory—excessive force or lack of knowledge that the alleged victim was a federal officer—will be admitted at trial. What the government neglects to mention, *inter alia*, is that video footage will show that a small army of ICE and other federal agents—wielding and brandishing weapons such as tasers, pepper ball guns, and nightstick-like batons—advanced towards a small group of non-violent unarmed protesters in a public street, Chuang Response Decl., Ex. K (West Side Surveillance Footage) at 00:05–02:20, and that one agent fired multiple pepper balls[3] towards the unarmed protesters less than a minute prior to Mr. Ranney's

---

[3] Pepper balls, though not technically classified as lethal force, are chemical weapons that can cause debilitating and lasting painful injuries. *See* Graham Hurley, *Blood. Pain. Disorientation. Here's What Protesters Say 'Less-Lethal' Weapons Feel Like*, CNN (Jan. 23, 2026) (describing the effects of pepper balls, which "marry the effects of a chemical irritant with the blunt force of a paintball" and

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

alleged assault, *id.* at 03:15–04:00. Chuang Response Decl., Ex. K (West Side Surveillance Footage). What the government has also neglected to mention is that after Mr. Ranney's alleged assault, video recordings in this case show officers escalating physical contact with both Mr. Ranney and the person the government has identified as "Individual 1." After Mr. Ranney is tackled to the ground, multiple officers hold him down and use substantial force on him when he is already prone. One officer appears to almost be laying his full body weight on top of Mr. Ranney and presses Mr. Ranney's throat into the ground with his forearm. Simultaneously, Individual 1 is also taken to the ground by an officer. Chuang Response Decl., Ex. J (East Side Surveillance Footage), at 2:13–5:22; Ex. K (West Side Surveillance Footage) at 3:50–7:08; Ex. L (Bystander Video from Mission Local). Such unjustified escalation and provocation by government agents certainly is relevant to the reasonableness of Mr. Ranney's actions and the reasonableness of his belief that there was an imminent threat of excessive force. Clearly, that supports a self-defense or defense-of-others instruction.

Evidence will also show that most if not all of these agents were masked and/or were not wearing badges or proper identification. This raises a very real question about whether the government can prove that Mr. Ranney actually knew the alleged victim was an ICE agent or thought they were merely a civilian impersonating one. As widely reported, the FBI itself has warned the public about criminals impersonating ICE agents by wearing gear labeled "ICE," much like that worn by the agents here—and taking advantage of actual ICE agents' recent practice of wearing masks and not wearing official IDs—to commit robberies, kidnappings, and sexual assaults. *See, e.g.*, Dell Cameron & Caroline Haskins, *FBI Warns of Criminals Posing as ICE, Urges Agents to ID Themselves*, WIRED (Nov. 4, 2025).[4] Generally, in § 111 cases, the government does not have to

---

powder from which can easily enter people's orifices, which is like 'injecting this chemical toxin inside people's bodies'"); *see also Law Enforcement Use of Less-Than-Lethal Weapons: Considerations for Congress*, CONGR. RESEARCH SERV. at 10, 16 (Jan. 23, 2025) (stating that "pepper spray balls are rifle-launched plastic projectiles that burst and disperse a cloud of chemical irritant (e.g., OC, PAVA, or CS) powder upon impact. Pepper spray balls combine the incapacitation mechanisms of kinetic weapons and chemical irritants **to increase pain** experienced by the targeted personnel and, thus, increase the probability of incapacitation," and noting that pepper spray balls qualify as a destructive device under the GCA and NFA) (emphasis added), *available at* https://www.congress.gov/crs-product/R48365.
[4] Available at https://www.wired.com/story/fbi-warns-of-criminals-posing-as-ice-urges-agents-to-id-

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

prove that a defendant knew the alleged victim was a federal officer or employee. *United States v. Feola*, 420 U.S. 671, 684 (1975). However, where there may be an honest mistake of fact, "ignorance of the official status of the person assaulted or resisted negates the very existence of mens rea." *Id.* at 686 (further explaining by example that "where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property"). So was the situation in *United States v. Span*, 970 F.2d 573 (9th Cir. 1992) ("*Span I*"), where the Ninth Circuit approved of the trial court's self-defense jury instruction stating in relevant part that "'the government must also prove beyond a reasonable doubt *either* (1) that the defendants knew that Garry Grotewold and David Dains were federal officers . . . .'" 970 F.2d at 576–77.[5]

Mr. Ranney is not asking the Court to decide this issue now because it has not yet seen how the evidence will come in at trial. Instead, this Court should defer ruling on whether to give a jury instruction on self-defense and/or defense-of-others until the close of evidence. That way, it will have the benefit of knowing what testimony and other evidence was admitted at trial, in order to properly consider and decide whether a self-defense and/or defense-of-others theory of defense jury instruction is supported by law and has some foundation in the evidence—keeping in mind that such an instruction should be given even if the evidence is "weak, insufficient, inconsistent, or of doubtful credibility." *Kayser*, 488 F.3d at 1076. To decide this important issue in advance, without having seen how the evidence comes in at trial and based on the government's conclusory biased assertions of their view of the case, would be unwise and premature.

**VIII. <u>Response To Motion In Limine No. 8:</u> Evidence of property that was seized from Mr. Ranney that the government lost or destroyed, and about which agents subsequently lied, should be precluded, but Mr. Ranney should be permitted to cross-examine them about their statements, and evidence of post-alleged-assault conduct is also relevant**

The government is trying to have its cake and eat it too and, in so doing, prevent relevant and probative evidence from reaching the jury, while presenting evidence that is neither of those things. It "intends to move into evidence certain exhibits [photographs] and present testimony regarding items

themselves/.
[5] A version of the *Span* instruction is now encapsulated in Ninth Circuit Model Criminal Jury Instruction 8.3 (Assault on Federal Officer or Employee – Defenses).

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

11

seized from Ranney's person" which were lost or destroyed in government custody, and about which multiple law enforcement officers have lied, but asks the Court to keep out any other evidence or testimony regarding the circumstances of Mr. Ranney's arrest and the subsequent seizure of those items. Govt. MIL at 12; *see also* Def's MIL #6 at 10–18, Dkt. No. 30, Ex. C; Dkt. No. 32 (Motion to Suppress), Dkt. No. 33, Ex. H.

As described in the defense's motions in limine and the suppression motion, photographs are insufficient substitutes for the items seized, which have subsequently been either lost or destroyed and which the defense has had no opportunity to inspect. Further, the officers involved who stated, as shown in emails turned over to the defense, that they had no involvement in the search or seizure when that was patently false based on video surveillance, must be allowed to be crossed on those matters: it goes directly to both credibility and bias, which is critical in this case. *See Severeid*, 609 F. App'x at 933. At a minimum, that evidence should be excluded and the officers' credibility tested. *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013); *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011). As Mr. Ranney has also requested, an appropriate remedy for the spoliation of evidence in this case would also be dismissal, especially in light of the credibility issues highlighted with the officers involved in this case, which sounds in the key of bad faith. *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977–82 (9th Cir. 2015); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Evidence regarding the officers' post-alleged-assault use of force, including methods of restraint and their treatment of Mr. Ranney during his arrest and search of him and his property, which was caught on video, *see* Dkt. 33, Ex. A, is relevant here and admissible under Rule 401. It bears directly on the reasonableness of Mr. Ranney's perception of ongoing or imminent harm, which began when law enforcement—wielding and brandishing weapons such as tasers, pepper ball guns, and nightstick-like batons—advanced towards a small group of non-violent unarmed protesters in a public street, and an agent fired multiple pepper balls towards the unarmed protesters. *See supra* at Response to MIL #7. Video recordings in this case show officers escalating physical contact with both Mr. Ranney and the person the government has identified as "Individual 1" after the alleged assault (less than one minute after the pepper balls were fired). After Mr. Ranney is tackled to the

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

ground, multiple officers hold him down and use substantial force on him when he is already prone on the ground. One officer appears to almost be laying his full body weight on top of Mr. Ranney and presses Mr. Ranney's throat into the ground with his forearm. Simultaneously, Individual 1 is also taken to the ground by an officer. Chuang Response Decl., Ex. J (East Side Surveillance Footage), at 2:13–5:22; Ex. K (West Side Surveillance Footage) at 3:50–7:08; Ex. L (Bystander Video from Mission Local). Additional recordings show that conduct continuing inside the building as Mr. Ranney and Individual 1 are searched. Dkt. 33, Ex. A at 00:27–00:38; 2:00–2:30; 3:08–3:17; 5:56–6:04; 9:32–9:34; 9:49–9:51. This is all part of the same course of conduct, and cannot be separated out into pieces. Further, evidence regarding officers' use of force is relevant to bias and credibility: excessive force gives officers an incentive to lie. *See, e.g.*, *Severeid*, 609 F. App'x at 933 (explaining the importance of officer credibility in § 111 cases).

Excluding this evidence deprives the jury of critical context as they evaluate the elements of the government's case. Post-assault conduct is also probative of the proportionality of the force used. Ninth Circuit Model Criminal Jury Instruction 8.3 provides that a defendant may use only the amount of force that reasonably appears necessary to defend against unlawful force. If officers continued to apply force after the initial confrontation, the jury is entitled to consider that evidence when determining whether Mr. Ranney's response was reasonable or excessive. Denying the jury access to these facts would restrict the context necessary for a fair assessment of Mr. Ranney's state of mind. Where events unfold as part of a single, rapidly developing encounter, the jury is not required to evaluate the charged contact in artificial isolation, but may consider the full sequence of officer and defendant conduct in assessing reasonableness and any self-defense or defense-of-others defense.

As both parties agree, in § 111 cases, the Ninth Circuit has recognized that a defendant is entitled to argue and receive instructions on self-defense where the officer's use of force during the encounter may have been unlawful or excessive, including where the defense theory is that the defendant acted reasonably in response to the officer's force from the outset of the confrontation. *See United States v. Moreno-Ornelas*, 253 F. Supp. 3d 1117, 1120–22 (C.D. Cal. 2017), aff'd, 744 F. App'x 441 (9th Cir. 2018). Consistent with that principle, Ninth Circuit law permits admission of acts occurring immediately before or after the charged conduct when they are part of the same transaction

or necessary to present a coherent and comprehensible account of the events to the jury. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995); *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). Accordingly, evidence of officers' post-alleged-assault actions during the continuous arrest and search and seizure sequence is properly considered by the jury in evaluating the reasonableness of Mr. Ranney's perceptions and response. This evidence is not designed to provoke jury emotion or otherwise run afoul of Federal Rule of Evidence 403: rather, it is intrinsically tied to the charged offense, which it is the government's burden to prove. This Court will instruct the jury to make their decision in this case based on the law, not on emotions. And nothing prevents the government from garnering context on direct examination from the involved officers. This evidence is relevant and admissible as key context to what Mr. Ranney is charged with, and to literally cut the surveillance video off without showing the jury what happened after the alleged assaultive conduct would be to deny key facts to the trier of fact.

**IX.    <u>Response To Motion In Limine No. 9</u>: The evidence regarding Individual 1's arrest is inextricably intertwined with Mr. Ranney's arrest, necessary to present a coherent and comprehensible account to the jury, and relevant to a fact at issue**

Rule 401 permits the introduction of evidence "having **any** tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). The evidence the government seeks to preclude is, in part, from the surveillance video produced by the government itself, and in part from bystander video published by Mission Local. It can also be elicited through the officers on-scene. It is impossible to somehow decouple the arrest of Individual 1 from Mr. Ranney's arrest: they happen on the same video, within seconds of each other, based on alleged assaultive conduct that occurred as part of the same protest.

As the government notes: both Mr. Ranney and the person described as Individual 1 were arrested on August 8, 2025 "in the vicinity of 630 Sansome Street in San Francisco, California." Govt. MIL at 13. The government further notes that "Individual 1 was arrested in connection with the same incident underlying the instant case against Ranney. . . ." *Id.* at 14. Nonetheless, even though they were arrested as part of the "same incident," and the conduct was captured on the same security video, the government seeks to somehow excise that from the jury's consideration. As noted *supra*,

acts occurring immediately before or after the charged conduct that are part of the same transaction or necessary to present a coherent and comprehensible account to the jury are admissible. *Vizcarra-Martinez*, 66 F.3d at 1012-13; *DeGeorge*, 380 F.3d at 1220. Here, the only two protesters visible during the alleged assault by Mr. Ranney are Mr. Ranney and Individual 1. After Mr. Ranney is tackled to the ground, multiple officers hold him down and use substantial force on him when he is already prone on the ground. One officer appears to almost be laying his full body weight on top of Mr. Ranney and presses Mr. Ranney's throat into the ground with his forearm. Simultaneously, Individual 1 is also taken to the ground by an officer. Chuang Response Decl., Ex. J (East Side Surveillance Footage), at 2:13–5:22; Ex. K (West Side Surveillance Footage) at 3:50–7:08; Ex. L (Bystander Video from Mission Local). It is impossible to pull these incidents apart: they are part of the same surveillance video, caught on camera by the same bystander, and part of the same incident and course of conduct. The officers' post-alleged-assault actions are relevant and probative, and their actions cannot be viewed in a vacuum: what they do to Individual 1 while Mr. Ranney is on the ground is probative of the reasonableness of Mr. Ranney's actions, from both a self-defense and defense-of-others perspective, which the jury must consider. Further, it is relevant to bias and credibility. The fact that agents engaged in demonstrable excessive force against both Mr. Ranney and Individual 1 gives them incentives to lie, and it is officer testimony that is likely to form the basis of the government's case. As the Ninth Circuit has recognized, officer credibility in § 111 cases is particularly paramount. *See, e.g.*, *Severeid*, 609 F. App'x at 933. And as the Supreme Court has recognized recently, albeit in the different context of a § 1983 case, the reasonableness of an officer's use of force cannot be viewed in only an isolated moment: the government cannot untie Mr. Ranney's arrest from the arrest of Individual 1 which is pictured on the exact same video, happening at the same time. *Barnes v. Felix*, 605 U.S. 73, 76, 82 (2025).

This evidence also does not run afoul of Rule 403. It is not unfairly prejudicial: it is video evidence of what occurred in this case, immediately after the alleged assault with which Mr. Ranney is charged. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."). This Court will instruct the jury to

decide the case based on the law, not on emotions. And, further, there is nothing preventing the government from eliciting testimony from the officers about why they felt those actions were necessary.

## X.     Response To Motion In Limine No. 10: Mr. Ranney does not intend to argue that he was the victim of selective prosecution

The government correctly states that the defense has not filed a pretrial selective prosecution motion. At this time, he does not intend to argue selective prosecution at trial but will, of course, advise the Court and government should that change based on developments at trial.[6]

However, the government overreaches by requesting that the Court preclude "any evidence or argument that the defendant has been unfairly selected for prosecution in this case," as well as "any evidence or argument concerning other assaults (including the alleged assault by Individual 1) or incidents of destruction of government property." Govt. MIL #10 at 15. As to the former, Mr. Ranney obviously would be well within his rights to argue, for example, that he was unfairly prosecuted in this case because the government lacks the proof necessary to prove the charges beyond a reasonable doubt. As to the latter, as repeatedly explained, the arrest of Individual 1 occurs at the same time as and is directly related to Mr. Ranney's arrest. She is a petite, middle-aged woman who is another unarmed protester from the small group that an agent had shot chemical weapons at just a minute prior. There is also a basic disagreement over whether Individual 1's actions warranted arrest or even qualified as an assault, considering that video footage shows that a federal agent initiates physical contact by pushing and grabbing at her before forcing her to the ground, throwing her several feet, and sitting on top of her. *See* Chuang Response Decl., Ex. J (East Side Surveillance Footage) at 02:15–03:00. Many of the agents who will testify interacted with Individual 1 as well as Mr. Ranney; evidence about the nature of those interactions and the propriety of the agents' conduct will bear on their credibility and should be permitted. This is particularly critical in a case where multiple agents have already lied about their mishandling of physical evidence from Mr. Ranney's property.

---

[6] For example, he does not presently intend to argue that he was "singled out" for prosecution because others should have been charged too or that Individual 1 should have been criminally charged. But that may change if the government opens the door by, e.g., suggesting that his purported offense was unusually serious.

DEF'S RESP. TO GOVT MOT. IN LIM.
*RANNEY*, CR 25–416 TSH

Additionally, the government's request should be denied because there will be video footage and other evidence of multiple people, including Individual 1, hitting and kicking the door that Mr. Ranney is charged with damaging, and those actions clearly would be relevant to the jury's determination of their verdict on Count Two.

## CONCLUSION

For the reasons stated, the Court should rule consistent with Mr. Ranney's arguments on the aforementioned issues.

Dated:     July 1, 2026                                     Respectfully submitted,

                                                            JODI LINKER
                                                            Federal Public Defender
                                                            Northern District of California

                                                                        /S
                                                            ANGELA CHUANG
                                                            SAMANTHA JAFFE
                                                            Assistant Federal Public Defenders