CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

E. WISTAR WILSON (CABN 324705)
ELI J. COHEN (NYBN 5539226)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
Wistar.Wilson@usdoj.gov
Eli.Cohen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CALEB ALEXANDER RANNEY,<br><br>Defendant. | Case No. 3:25-CR-00416-TSH<br><br>**UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**<br><br>Pretrial Conference Date: July 9, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: E, 15th Floor<br><br>Hon. Thomas S. Hixson |

# TABLE OF CONTENTS

INTRODUCTION ....................1

STATEMENT OF FACTS ....................1

I. Ranney Participated in an Anti-ICE Demonstration at the United States Appraiser's Building While Gloved, Masked, and Wearing a Backpack ....................1

II. Ranney and Others Struck and Kicked the Sally Port Garage Door As and After It Closed, Causing Damage ....................2

III. When ICE Officers Exited the Building in Response to the Damage, Ranney Assaulted an Officer ....................3

IV. ICE Officers Arrested Ranney, Took Him to Processing Area, and Performed Searches ....................3

ARGUMENT ....................4

I. Ranney's Arrest Was Supported by Probable Cause ....................4

II. The Seizure of Ranney's Gloves Was Constitutional ....................5

III. The Search of Ranney's Backpack Was Constitutional as a Search Incident to Arrest ....................7

IV. The Search of Ranney's Backpack Was Constitutional as a Product of Inevitable Discovery ....................8

V. Even if the Searches Were Unreasonable, the Exclusionary Rule Does Not Apply ....................9

VI. The Defendant is Not Entitled to an Adverse Inference Nor an Evidentiary Hearing ....................10

CONCLUSION ....................11

# TABLE OF AUTHORITIES

## CASES

*Arizona v. Gant*, 556 U.S. 332 (2009) ........ 6, 8

*Beck v. Ohio*, 379 U.S. 89 (1964) ........ 4

*Brigham City v. Stuart*, 547 U.S. 398 (2006) ........ 8

*Chimel v. California*, 395 U.S. 752 (1969) ........ 6

*D.C. v. Wesby*, 583 U.S. 48 (2018) ........ 4, 5

*Gasho v. United States*, 39 F.3d 1420 (9th Cir. 1994) ........ 4

*Herring v. United States*, 555 U.S. 135 (2009) ........ 10

*Hopkins v. Bonvicino*, 573 F.3d 752 (9th Cir. 2009) ........ 7

*Hudson v. Michigan*, 547 U.S. 586 (2006) ........ 10

*Illinois v. Gates*, 462 U.S. 213 (1983) ........ 10

*Illinois v. Krull*, 480 U.S. 340 (1987) ........ 10

*Illinois v. Lafayette*, 462 U.S. 640 (1983) ........ 9

*Kaley v. United States*, 571 U.S. 320 (2014) ........ 4

*Katz v. United States*, 389 U.S. 347 (1967) ........ 6

*Nix v. Williams*, 467 U.S. 431 (1984) ........ 8

*Rawlings v. Kentucky*, 448 U.S. 98 (1980) ........ 6

*United Staes v. Sevilla*, 714 F.3d 1168 (9th Cir. 2013) ........ 11

*United States v. Andrade*, 784 F.2d 1431 (9th Cir. 1986) ........ 8, 9

*United States v. Bernard*, 992 F.2d 229 (9th Cir. 1993) ........ 9

*United States v. Bowhay*, 992 F.2d 229 (9th Cir. 1993) ........ 9

*United States v. Feldman*, 788 F.2d 544 (9th Cir. 1986) ........ 9

*United States v. Garay*, 938 F.3d 1108 (9th Cir. 2019) ........ 9

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) ........ 5

*United States v. Howard*, 156 F.Supp.3d 1045 (N.D. Cal. 2016) ........ 8

*United States v. Howell*, 231 F.3d 615 (9th Cir. 2000) ........ 11

*United States v. Keller*, 142 F.4th 645 (9th Cir. 2025) ........ 11

*United States v. Kelley*, 482 F.3d 1047 (9th Cir. 2007) .... 5
*United States v. Krupa*, 658 F.3d 1174 (9th Cir. 2011) .... 5
*United States v. Leon*, 468 U.S. 897 (1984) .... 10
*United States v. Loaiza-Marin*, 832 F.2d 867 (5th Cir. 1987) .... 9
*United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979) .... 11
*United States v. Manzo-Jurado*, 457 F.3d 928 (9th Cir. 2006) .... 7
*United States v. McLaughlin*, 170 F.3d 889 (9th Cir. 1999) .... 8
*United States v. O'Bryant*, 775 F.2d 1528 (11th Cir. 1985) .... 9
*United States v. Peltier*, 422 U.S. 531 (1975) .... 10
*United States v. Peterson*, 902 F.3d 1016 (9th Cir. 2018) .... 9
*United Staes v. Sivilla*, 714 F.3d 1168 (9th Cir. 2013) .... 11
*United States v. Smith*, 389 F.3d 944 (9th Cir. 2004) .... 6
*United States v. Tarazon*, 989 F.2d 1045 (9th Cir. 1993) .... 6, 7, 8
*United States v. Trullo*, 790 F.2d 205 (1st Cir. 1986) .... 9
*United States v. Turner*, 926 F.2d 883 (9th Cir. 1991) .... 6, 7, 8
*United States v. Washington*, 387 F.3d 1060 (9th Cir. 2004) .... 7
*United States v. Washington*, 490 F.3d 765 (9th Cir. 2007) .... 7
*Warden v. Hayden*, 387 U.S. 294, 301 (1967) .... 6

**STATUTES**

18 U.S.C. § 111(a)(1) .... 5
8 U.S.C. § 1357(a)(5) .... 5

**RULES**

Criminal Local Rule 47-2(b) .... 11

## INTRODUCTION

Defendant Caleb Alexander Ranney ("Ranney" or the "defendant") moves this Court to suppress the items seized from a search of his person and backpack following his arrest, and the fruits thereof. Dkt. 39, Defendant's Motion to Suppress ("Mot.") at 1. Specifically, he contends that the seizure of hard-knuckle gloves that he wore at the time of the destruction of government property and assault with which he is charged was unconstitutional because they were not immediately apparent as contraband and are not evidence of any crime charged. Mot. at 8-9. He further argues that the search of his backpack was unconstitutional as either an inventory search or a search incident to his arrest, and that he is entitled to an adverse inference to inform the Court's decision on his motion. Mot. at 9-16. Lastly, he requests an evidentiary hearing to resolve his motion. Mot. at 16. As explained below, his challenges are without merit, and he is entitled to neither an adverse inference nor an evidentiary hearing.

## STATEMENT OF FACTS

### I. Ranney Participated in an Anti-ICE Demonstration at the United States Appraiser's Building While Gloved, Masked, and Wearing a Backpack

For approximately the last year-and-a-half, anti-Immigration and Customs Enforcement ("ICE") demonstrations have become a pervasive phenomenon throughout the United States. The defendant participated in one such demonstration on August 8, 2025, in the vicinity of the United States Appraisers Building, located at 630 Sansome Street, San Francisco, California ("Appraisers Building"), where ICE San Francisco and other federal agencies involved in immigration enforcement have offices. Demonstrators attempted to obstruct the movement of immigration detainee vans as they exited a sallyport and drove onto Jackson Street, and various ICE officers and members of the Federal Protective Service ("FPS") had to physically guide the vans past the crowd. Declaration of Eli J. Cohen ("Cohen Decl."), Exhibit A (Westside Outside Sallyport Video) at 00:05-00:54. After the vans successfully departed, ICE and FPS personnel retreated into the sallyport, followed by Ranney and several other demonstrators. Cohen Decl., Ex. A at 01:44-02:23. Ranney was wearing dark clothing, a black balaclava-style mask and keffiyeh head scarf, black hard-knuckle gloves, boots, and a backpack. *Id.* As the rolling sallyport garage door began to close, Ranney stood just outside, giving officers the middle finger with both hands. Cohen Decl., Ex. A at 02:22-02:28. As the door was rolling downward, Ranney screamed that the officers would

"rot in hell" and were "motherf***ers," and accusatorily pointed his finger at them. Cohen Decl., Exhibit B (IMG_8424.MOV (Reoriented Officer/Contractor S.S. Video)) at 03:15-03:21. Below are Cohen Decl., Exhibits C (left) and D (right) (Screenshot 1 from Cohen Decl., Ex. A and B, respectively).





## II. Ranney and Others Struck and Kicked the Sally Port Garage Door As and After It Closed, Causing Damage

As the rolling sallyport garage door was nearing the ground, one demonstrator kicked it. Cohen Decl., Ex. A at 02:44-02:45. Directly after it had closed, Ranney and other demonstrators began violently kicking and shoving the door. *Id.* at 02:45-02:54. They exerted enough force to detach the door from its track, causing it to billow inward toward the officers, and creating a sizable gap between the track and the door. *Id.* Ranney and two other demonstrators then came back to deliver more kicks to the door. *Id.* at 03:11-03:19. In total, Ranney delivered two kicks and approximately four shoves with his body weight. *Id.* at 02:44-03:19. Below are Cohen Decl., Exhibits E (left) and F (right) (Screenshots 2 and 3 from Cohen Decl., Ex. A).





### III. When ICE Officers Exited the Building in Response to the Damage, Ranney Assaulted an Officer

After Ranney and other demonstrators damaged the sallyport garage door, multiple ICE officers exited the building to respond to the situation. Cohen Decl., Exhibit G (Sally Port North (Jackson) video) at 00:00-00:26; Ex. A at 03:48-03:59. As one officer walked along the sidewalk, Ranney charged at him at a running pace from across the street, and the officer squared his shoulders in anticipation. Cohen Decl., Ex. A at 03:48-03:59. Ranney then shoved the officer with both hands, forcing him to step backward. *Id.* Below are Cohen Decl., Exhibits H (left), I (middle) and J (right) (Screenshots 4, 5, and 6 from Cohen Decl., Ex. A).






### IV. ICE Officers Arrested Ranney, Took Him to Processing Area, and Performed Searches

After Ranney assaulted the officer, another officer, along with the assault victim, took Ranney into custody and attempted to place him in handcuffs while he resisted. Cohen Decl., Ex. A at 03:59-04:52. They eventually got him into handcuffs and walked him into the building. Cohen Decl., Ex. A at 04:52-06:56; Cohen Decl., Ex. G at 00:30-01:12. The officers then transported Ranney to the ICE office and detention area in the Appraisers Building. *See* Dkt. 33-1, Declaration of Samantha Jaffe ("Jaffe Decl."), Ex. A. Once there, an ICE officer/contractor removed the black balaclava-style mask from Ranney's head. Jaffe Decl., Ex. A at 03:38-03:40. Officers removed Ranney's backpack and he was made to remove black hard-knuckle gloves from his hands and hand them to an ICE officer/contractor. Jaffe Decl., Ex. A at 04:45-05:07. An officer then carried Ranney's backpack into an adjoining room and placed it on a table. Jaffe Decl., Ex. A at 05:17-05:21; Jaffe Decl., Exhibit B at 04:54-05:00. Officers searched the backpack, discovering cans of spray paint, pliers/wire cutters, and a gas mask, among other items. Jaffe

Decl., Ex. B at 05:00-07:47. Law enforcement took pictures of some of the items from Ranney's backpack and put most of the items back in, ultimately returning the backpack to Ranney, but seizing the gloves, spray paint, and wire cutters. Jaffe Decl., Exhibit C at 1:46:05-1:52:16. The seized items were put into a paper bag and an FPS officer then took that paper bag out with him.

**ARGUMENT**

The recovery and seizure of hard-knuckle gloves from Ranney's hands, and the search of his backpack, which led to photographs of some of the property inside and seizure of cans of spray paint and pliers/wire cutters, did not violate the Fourth Amendment. Officers had probable cause to arrest Ranney, and the seizure of the gloves was permissible because it was evidence of his identity and willfulness in damaging the sallyport garage door. The search of his backpack, and subsequent photographing and seizure of certain items, was justified as a search incident to arrest and was the inevitable result of an inventory search. Even were the Court to find the searches and seizures unreasonable, the evidence derived therefrom would not be subject to the exclusionary rule. The defendant is entitled to neither an adverse inference nor an evidentiary hearing.

**I. Ranney's Arrest Was Supported by Probable Cause**

The Fourth Amendment permits a warrantless arrest in a public place, provided there is probable cause to arrest the individual. *United States v. Bernard*, 623 F.2d 551, 558–59 (9th Cir. 1979). This includes situations in which a law enforcement officer "has probable cause to believe that the suspect committed a crime in the officer's presence." *D.C. v. Wesby*, 583 U.S. 48, 56 (2018). "Whether [an] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "Probable cause exists when, under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that a crime was committed." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (citation and internal quotation marks omitted). Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). ICE officers are empowered by statute "to make arrests—(A) for any offense against the United States, if the offense is committed in the officer's or employee's

presence . . . if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(5).

To assess whether an arrest is supported by probable cause, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Wesby*, 583 U.S. at 57 (internal quotation marks and citation omitted). Probable cause means a "fair probability, not certainty or even a preponderance of the evidence," *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011) (quoting *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) (internal quotation marks omitted), and "[w]hether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question.'" *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (citing *Gourde*, 440 F.3d at 1069).

Here, Ranney had just committed an offense against the United States, 18 U.S.C. § 111(a)(1), by assaulting a federal officer. Clearly that was done in an officer's presence. The ICE officers were "performing duties relating to the enforcement of immigration laws at the time of the arrest" in that they were responding to property damage committed shortly after they assisted in the movement of immigration detainee vans. *See* 8 U.S.C. § 1357(a)(5). There was a "likelihood of [Ranney] escaping before a warrant [could] be obtained for his arrest" because his identity was concealed, and it would have been near impossible to identify and locate him after the fact. *See Id.* In sum, officers had probable cause and were authorized to arrest Ranney without a warrant. As explained below, the seizure of the hard-knuckle gloves on his hands was authorized because they were evidence. And both the search of his backpack and photographing and seizure of certain items was authorized as part of a search incident to arrest. Moreover, they were the inevitable result of an inventory search.

## II. The Seizure of Ranney's Gloves Was Constitutional

Because Ranney's arrest was supported by probable cause, the seizure of his gloves was lawful. The officers were authorized to conduct a search incident to his arrest. While it is true that the presumptive rule is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject to only a few specifically established and

well-delineated exceptions[,]" *Katz v. United States*, 389 U.S. 347, 357 (1967), "[a]mong the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

Incident to an arrest, an officer may search the person arrested, and that search may even take place before the arrest, as long as the arrest follows quickly on the heels of the search. *United States v. Smith*, 389 F.3d 944, 950-51 (9th Cir. 2004) (per curiam); *accord Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). When evaluating the propriety of a search incident to arrest, the Ninth Circuit employs a two-factor test: "(1) was the item to be searched within the arrestee's custody and control; and (2) did the events following the arrest make the search unreasonable." *United States v. Tarazon*, 989 F.2d 1045, 1051 (9th Cir. 1993) (citing *United States v. Turner*, 926 F.2d 883, 887-88 (9th Cir. 1991)). Although the scope of a search incident to arrest is limited to "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from whin which he might gain possession of a weapon or destructible evidence[,]" *Chimel v. California*, 395 U.S. 752, 763 (1969), the *Turner* test focuses on whether "the area searched was within the arrestee's control *when he was arrested*." *Tarazon*, 989 F.2d at 1051 (citing *Turner*, 926 F.2d at 888) (emphasis added). In *Tarazon*, the Ninth Circuit held that the search incident to arrest exception applied where officials searched drawers within desks at which the arrestees were sitting when they were arrested, which "were clearly within Tarazon's and Serna's control at the time they were arrested . . . [and] Tarazon and Serna were placed on the floor near the front desk, and the search occurred only moments after the arrest." *Id.*

The fact that Ranney's hard-knuckle gloves did not in and of themselves constitute contraband is of no moment. Indeed, "[n]othing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband." *Warden v. Hayden*, 387 U.S. 294, 301 (1967). Due to the need for "a nexus . . . between the item to be seized and the criminal behavior . . . in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Id.* at 307. That need is clearly satisfied in this case. Like in *Hayden*, where seized clothing "matched the description of those worn by the robber and the police therefore could reasonably believe that the items would aid in the identification of the culprit," *Id.*, officers could reasonably believe that the hard-knuckle gloves, which

Ranney was wearing when he committed the offenses in question, would aid in his later identification. Of all the people striking and kicking the sallyport garage door, multiple were wearing masks, but only Ranney was wearing gloves. Cohen Decl., Ex. A at 02:44-02:55. The officers could also reasonably have believed that the gloves demonstrated Ranney's state of mind in committing the offenses for which he was being arrested.

The defense conflates the concepts of "evidence" and "contraband" when it says that "[t]he gloves were not evidence of any crime that had been alleged" and that "[i]t strains credulity to imagine that . . . they were somehow immediately aware that the gloves themselves were contraband." Mot. at 9. Though contraband is always evidence, something can be evidence without being contraband.

**III. The Search of Ranney's Backpack Was Constitutional as a Search Incident to Arrest**

The search of Ranney's backpack, as well as the photographing and seizure of certain items from it, was also justified as a search incident to arrest. First, Ranney was in fact arrested. In his motion, the defendant appears to dispute that he was placed under "arrest" at all, writing that he was "detained in custody, but not actually booked in or processed to be held longer than temporarily. There is nothing in the reports or videos that has been produced that evinces any such intent to hold him overnight or take him to jail, rather than the temporary ICE holding cell." Mot. at 12.

"An arrest—or, to use the Fourth Amendment's terminology, a "seizure"—"occurs when a law enforcement officer, through coercion, 'physical force[,] or a show of authority, in some way restricts the liberty of a person.'" *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (quoting *United States v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004). It is plain that when officers took Ranney to the ground, placed him in handcuffs, and transported him to a holding area, they had "in some way restrict[ed] [his] liberty." Significantly less coercive conduct has been found to constitute an arrest. *See, e.g.*, *United States v. Washington*, 490 F.3d 765, 772 (9th Cir. 2007) (considering a police officer directing someone where to walk in holding that an arrest occurred); *United States v. Manzo-Jurado*, 457 F.3d 928, 934 n.3 (9th Cir. 2006) (finding that police officer giving vehicle occupants a "show hands order" was a seizure).

Given that Ranney was obviously arrested within the Ninth Circuit's understanding of the term, the next question is whether the search of his backpack was proper as a search incident to arrest. It was. As the *Tarazon* court stated, the *Turner* test focuses firstly on whether "the area searched was within the

arrestee's control *when he was arrested*." *Tarazon*, 989 F.2d at 1051 (citing *Turner*, 926 F.2d at 888) (emphasis added). At the time he was arrested, Ranney was wearing the backpack. Officers did not take it off his person until he had been brought up to the holding area, and no events following the arrest made the search unreasonable. Bringing the backpack into an adjoining room and placing it on a table, rather than going through its contents in the hallway, was eminently reasonable. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("[T]he Fourth Amendment's ultimate touchstone is 'reasonableness[.]'")

The defendant's motion places significant emphasis on the fact that the officers "initially searched Mr. Ranney's backpack for far over three minutes," and that they "did not stop the search upon discovering that there was no evidence for which he was charged." Mot. at 14. It begs the question of how exactly officers would have determined "there was no evidence" before completing a search. The defendant's emphasis on the search "far exceed[ing] the justifications for a search incident to arrest exception," *id.*, is unavailing. This is because "[n]otwithstanding the doctrinal justification of officer safety and evidence preservation, in a particular case the exception will apply as long as the officer had probable cause to arrest the defendant before the search was made, and so long as the arrest and search are not 'so separated in time *or by intervening acts* that the latter cannot be said to have been incident to the former.'" *United States v. Howard*, 156 F.Supp.3d 1045, 1049 (N.D. Cal. 2016) (emphasis in original) (quoting *United States v. McLaughlin*, 170 F.3d 889, 893 (9th Cir. 1999) *abrogated on other grounds by Gant*, 556 U.S. 332). Like the gloves, the cans of spray paint and pliers/wire cutters seized from Ranney's backpack were subject to seizure as evidence of his mental state when kicking the door. They tend to prove his damaging of the door was willful, in that he came prepared with tools to deface and cause damage.

## IV. The Search of Ranney's Backpack Was Constitutional as a Product of Inevitable Discovery

Even if the search of Ranney's backpack was somehow not a proper search incident to arrest, suppression is unwarranted under the inevitable discovery doctrine. That doctrine applies when the government establishes by a preponderance of evidence that unlawfully obtained information "ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). In such instances, the exclusionary rule, which allows courts to suppress evidence unlawfully obtained, does not apply and the evidence may be admitted at trial. *Id.* Where the "routine booking procedure and inventory would have inevitably resulted in discovery" of the evidence, the inevitable discovery doctrine

allows for admission of that evidence. *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986); *United States v. Peterson*, 902 F.3d 1016, 1019-20 (9th Cir. 2018) (upholding denial of motion to suppress evidence from search of backpack because it inevitably would have been searched during an inventory search at booking); *see also Illinois v. Lafayette*, 462 U.S. 640, 648 (1983).

This is the case whether or not searching officers produced an inventory. While it is true that the Supreme Court has held "that it is not "unreasonable" for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures[,]" *Lafayette*, 462 U.S. at 648, it does not follow that a failure to strictly comply with those procedures necessarily renders an inventory search unreasonable. *United States v. Garay*, 938 F.3d 1108, 1112 (9th Cir. 2019) ("That the officer did not complete the inventory list that ordinarily would be completed as part of a department inventory search is not, on its own, a material deviation from policy."); *see, e.g.*, *United States v. Loaiza-Marin*, 832 F.2d 867, 869 (5th Cir. 1987) (per curiam) ("failure to compile the written inventory does not render the inventory search invalid"); *United States v. Trullo*, 790 F.2d 205, 206 (1st Cir. 1986) ("We will not hold that the officer's failure, technically, to follow the inventory form procedures for valuables meant it was not an inventory search."); *United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir. 1985) ("We also reject O'Bryant's contention that the inventory search exception to the general prohibition against warrantless searches was violated because [the officer] did not prepare a complete list of the briefcase's contents.")

Furthermore, an expectation of finding incriminating evidence in a particular location "would not invalidate an otherwise reasonable inventory search." *Garay*, 938 F.3d at 1112. Although "an inventory search is invalid if it was a pretext for an investigative search[,]" *United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993) (citing *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986), where "the department's policy was to search everything . . . the presence of an investigative motive does not invalidate the inventory search." *Id.* Here, Ranney had been taken into an ICE office and detention area. Officers needed to search his backpack for weapons to ensure the security of the area and confirm it did not contain contraband before returning it to him.

## V. Even if the Searches Were Unreasonable, the Exclusionary Rule Does Not Apply

Even were the Court to find that the search and seizure of Ranney's property did not fall into an

exception to the warrant requirement, excluding the evidence derived therefrom would not be a proper remedy. "The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009) (citing *Illinois v. Gates*, 462 U.S. 213, 223 (1983)). The exclusionary rule is a "last resort, not [a] first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591 (2006), and the Supreme Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Herring*, 555 U.S. at 141 (citing *United States v. Leon*, 468 U.S. 897, 909 (1984)). Invoking the exclusionary rule is appropriate in cases of flagrant, "patently unconstitutional" law enforcement conduct. *Herring*, 555 U.S. at 143. "[E]vidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987) (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975)).

Here, even if the seizure of Ranney's hard-knuckle gloves and subsequent search of his backpack and seizure of items therefrom was unreasonable under the Fourth Amendment—which it was not—these actions would by no standard be "patently unconstitutional." Officers were performing searches in close conjunction with an arrest, and there is no indication that they were acting in anything other than "objectively reasonable reliance," *Leon*, 468 U.S. at 922, on their understanding of their lawful authority and the necessity to discover whether any contraband or weapons were present. Even were the court to find a Fourth Amendment violation, exclusion would not be appropriate.

## VI. The Defendant is Not Entitled to an Adverse Inference Nor an Evidentiary Hearing

The defendant asks the Court to draw an adverse inference against the government in deciding the instant motion based on its inability to determine the location of certain seized property. Mot. at 14. Putting aside the fact that he points to a jury instruction as the basis for the *Court* drawing an inference, and asks the Court to use such inference in assessing witness credibility, he has no basis for such relief. Further, is not clear how or why the Court would instruct itself to make such an inference, rather than weighing the facts and law before it. In support of his request, he relies on the same authority used to argue for dismissal of the Information in his Motion *in Limine* No. 6, *see* Dkt. 38, Defendant's Motions *in Limine* at 10-18, but simply seeks a lesser remedy. The Court should deny his request for an adverse

inference for the same reasons it should deny his motion to dismiss the Information, *see* Dkt. 43, The United States' Responses to Defendant's Motions in Limine at 2-11, namely that the defense has failed to demonstrate bad faith within the meaning of *United Staes v. Sivilla*, 714 F.3d 1168 (9th Cir. 2013) or prejudice within the meaning of *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (en banc) (Kennedy, J., concurring) (overruled in part on other grounds). It is also worth noting that the defendant appears to make contradictory requests to the Court: he wants to exclude testimony or other evidence about the property seized, while also being permitted to question government witnesses about searching and seizing the defendant's property, and what happened to it afterward. *See* Dkt. 38 at 17-18.

Almost as an aside, Ranney concludes his motion to suppress by requesting "that the Court hold an evidentiary hearing on all contested issues of fact." Mot. at 16. "An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Additionally, the "dispute" need be as to a "*material* fact." *United States v. Keller*, 142 F.4th 645, 655 (9th Cir. 2025) (citing *Howell*, 231 F.3d at 620) (emphasis added). Here, there is no contested issue of material fact. The circumstances of the searches and seizures at issue are all on video, and Ranney has not submitted any affidavits or declarations that present a contested issue of material fact and should not be permitted to do so in reply. *See generally* Crim. L. R. 47-2(b).

**CONCLUSION**

In sum, officers had probable cause and were authorized to arrest Ranney. Their search of his person was justified as incident to his arrest, and their seizure of hard-knuckle gloves from his hands was proper due to the gloves' evidentiary value. The search of his backpack was reasonable as a search incident to arrest and in any event the items found therein would have inevitably been discovered as the product of a reasonable inventory search, and the seizure of the items therefrom was proper due to their evidentiary value. Even if this were not the case, exclusion would not be appropriate remedy. The defendant is not entitled to an adverse inference, has presented no contested issue of material fact, and is not entitled to an evidentiary hearing. Therefore, the Court should deny the defendant's motion to suppress in its entirety.

DATED: July 1, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
E. WISTAR WILSON
ELI J. COHEN
Assistant United States Attorneys