CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

E. WISTAR WILSON (CABN 324705)
ELI J. COHEN (NYBN 5539226)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
Wistar.Wilson@usdoj.gov
Eli.Cohen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CALEB ALEXANDER RANNEY,<br><br>Defendant. | Case No. 3:25-CR-00416-TSH<br><br>**UNITED STATES' STATEMENT REGARDING DISPUTED JURY INSTRUCTIONS**<br><br>Trial Date: July 27, 2026<br>Time: 9:30 a.m.<br><br>Hon. Thomas S. Hixson |

# TABLE OF CONTENTS

INTRODUCTION ........................................ 1
DISPUTED JURY INSTRUCTIONS ........................................ 2
I. Definition of Reasonable Doubt ........................................ 2
II. Assault on a Federal Officer ........................................ 3
III. Self-Defense ........................................ 6
IV. Aiding and Abetting ........................................ 11
V. First Amendment ........................................ 13

## TABLE OF AUTHORITIES

### CASES

*Barnes v. Felix*, 605 U.S. 73 (2025) ........ 10

*Counterman v. Colorado*, 600 U.S. 66 (2023) ........ 14

*Feldstein v. United States*, 429 F.2d 1092 (9th Cir. 1970) ........ 12

*Graham v. Connor*, 490 U.S. 386 (1989) ........ 10

*N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ........ 13

*Spence v. State of Wash.*, 418 U.S. 405 (1974) ........ 14

*Texas v. Johnson*, 491 U.S. 397 (1989) ........ 14

*Yellowhammer Fund v. Marshall*, 776 F. Supp. 3d 1071 (M.D. Ala. 2025) ........ 14

*United States v. Armstrong*, 909 F.2d 1238 (9th Cir. 1990) ........ 12

*United States v. Ehmer*, 87 F.4th 1073 (9th Cir. 2023) ........ 8, 9

*United States v. Haynes*, 143 F.3d 1089 (7th Cir. 1998) ........ 9

*United States v. Juvenile Female*, 566 F.3d 943 (9th Cir. 2009) ........ 5

*United States v. Lemon*, 824 F.2d 763 (9th Cir. 1987) ........ 7

*United States v. Luis-Amazar*, No. CR-26-00084-001-PHX-SHD, 2026 WL 1613935 (D. Ariz. June 4, 2026) ........ 9

*United States v. Morton*, 999 F.2d 435 (9th Cir. 1993) ........ 7

*United States v. O'Brien*, 391 U.S. 367 (1968) ........ 13

*United States v. Ornelas*, 906. F.3d 1138 (9th Cir. 2018) ........ 5

*United States v. Slocum*, 486 F.Supp.2d 1104 (C.D. Cal. 2007) ........ 9

*United States v. Vaandering*, 50 F.3d 696 (9th Cir. 1995) ........ 12

## INTRODUCTION

On July 1, 2026, the parties filed proposed jury instructions. *See* Dkt. 44. The filing included several disputed instructions offered by one party or the other but did not include argument regarding the parties' reasons for supporting or opposing the instructions. *See id.* On July 6, 2026, the Court ordered the parties to file a joint statement by July 13, 2026, setting forth argument regarding whether the Court should or should not adopt each of their respective proposed jury instructions. *See* Dkt. 56. At the pretrial conference on July 9, 2026, the Court modified its previous order at the request of the parties, permitting the parties to file separate briefs regarding the disputed jury instructions.

Pursuant to the Court's July 6, 2026, Order, dkt. 56, as modified, the United States files this statement setting forth its position and reasoning regarding each disputed jury instruction.

The proposed instructions come from the Ninth Circuit's Manual of Model Criminal Jury Instructions (2022 Ed., last updated June 26, 2026), with exceptions otherwise noted (for example, when there is no Ninth Circuit Model Instruction). Changes to the Ninth Circuit's model instructions are reflected in bold red-colored text.

DATED: July 13, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
E. WISTAR WILSON
ELI J. COHEN
Assistant United States Attorneys

## DISPUTED JURY INSTRUCTIONS

### I. Definition of Reasonable Doubt

The government requests that the Court use the definition of reasonable doubt provided in the Ninth Circuit's Model Criminal Jury Instruction 6.5 verbatim, rather than including the additional language proposed by the defendant and provided in red below. The parties' proposals differ only with respect to the language in red:

> Disputed Jury Instruction No. 6.5: Reasonable Doubt—Defined (Offered by the Government)
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.
>
> A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.
>
> If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty. On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.
>
> Disputed Jury Instruction No. 6.5: Reasonable Doubt—Defined (Offered by the Defense)
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.
>
> A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.
>
> If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty. On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.
>
> **If you view the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—you must adopt the conclusion of innocence.**

Given that the instruction regarding the definition of reasonable doubt is provided in every criminal case, Model Criminal Instruction 6.5 has been well honed. The commentary to Model Criminal Instruction 6.5 notes that "[t]he Ninth Circuit has *repeatedly* upheld this instruction." *See* Cmt., Ninth Cir. Model Crim. Jury Inst. No. 6.5 (2022 Ed., updated June 2026) (emphasis added). The government sees no reason for, and unnecessary risk in, deviating from this Model Instruction on a topic so fundamental to this—and any—criminal case.

## II. Assault on a Federal Officer

Both parties use Rule 8.1 of the Model Ninth Circuit Criminal Jury Instructions as the basis for their respective proposals regarding Assault on Federal Officer (Count One of the Information). From there, both parties seek additions as set forth below.

The two instructions differ in several ways: (1) the government's instruction does not mention self-defense, because the government disputes that the defendant will be entitled to an instruction on self-defense; (2) the defendant's proposed instruction includes the words "a federal officer or employee, namely" in the first element, whereas the government's proposed instruction does not; (3) the government's proposed instruction includes language defining "reasonable apprehension of immediate bodily harm" that the defendant's proposed instruction does not; and (4) the defendant's proposed instruction contains additional language (beginning with "It is not considered a performance of official duties" until "to cause harm") to define when an officer or employee is engaged in his official duties, which the government's instruction does not. The two proposals are as follows:

<u>Disputed Jury Instruction No. 8.1: Assault on Federal Officer or Employee (18 U.S.C. § 111(a)) (Offered by the Government)</u>

The defendant is charged in Count One of the Information with assault on a federal officer in violation of Section 111(a) of Title 18 of the United States Code. For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant forcibly assaulted Joe Love; and

Second, the defendant did so while Joe Love was engaged in, or on account of, his official duties.

There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm.

**A federal officer or employee includes any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services).**

**A reasonable apprehension of immediate bodily harm is determined with reference to a reasonable person aware of the circumstances known to the victim, not with reference to all circumstances, including circumstances unknown to the victim.**

**There is no requirement for the government to prove that the defendant was aware that the victim is a federal officer.**

**An officer or employee is engaged in his official duties when he is acting within the scope of his employment, that is, the officer's actions fall within his agency's overall mission, in contrast to engaging in a personal frolic of his own.**

<u>Disputed Jury Instruction No. 8.1: Assault on Federal Officer or Employee (18 U.S.C. § 111(a)) (Offered by the Defense)</u>

The defendant is charged in Count One of the Information with assault on a federal officer or employee in violation of Section 111(a) of Title 18 of the United States Code. For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant forcibly assaulted **a federal officer or employee, namely**[1] Joe Love; and

Second, the defendant did so while Joe Love was engaged in, or on account of, his official duties.

[IF SELF-DEFENSE INSTRUCTION GIVEN:

Third, the defendant did not act in reasonable self-defense.]

There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm.

**A federal officer or employee includes any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services).**

**[ONLY IF NO SELF-DEFENSE INSTRUCTION BASED ON THEORY OF NO KNOWLEDGE OF FEDERAL OFFICER OR EMPLOYEE: There is no requirement for the government to prove that the defendant was aware that the victim is a federal officer.]**

**An officer or employee is engaged in his official duties when he is acting within the scope of his employment, that is, the officer's actions fall within his agency's overall mission, in contrast to engaging in a personal frolic of his own. It is not considered a performance of official duties if: (1) under the surrounding circumstances, an officer uses an amount or type of force that is more than reasonably necessary (i.e., excessive force) to effectuate a seizure, arrest, detention, or other lawful action; or (2) the officer was acting with the intent to retaliate against an individual's protected speech, to punish, or to cause harm.**

As an initial matter, the government disputes that the defendant is entitled to an instruction on self-defense, which the government addresses separately below. *See infra*, Section III.

With respect to the inclusion of the "a federal officer or employee, namely" language, the government's preference is to adhere to the model instruction, which does not include that language; the rest of the government's proposed instruction makes sufficiently clear by reference to officer Love's "official duties" and the definition of official duties that Joe Love must be a federal officer or employee.

The rest of the government's proposed language in red is derived from language in the Comment to Model Criminal Jury Instruction No. 8.1 that will be helpful to the jurors, including the definitions of "reasonable apprehension of immediate bodily harm" and "official duties." The definition of "official

[1] The government has made this text red and bolded (relative to the parties' joint filing, *see* dkt. 44, to indicate that it differs from the language in Model Criminal Jury Instruction No. 8.1.

duties" comes from *United States v. Ornelas*, 906. F.3d 1138, 1149 (9th Cir. 2018) and is mentioned in the Comment to the model instruction. *See* Cmt., Ninth Cir. Model Crim. Jury Inst. No. 8.1. Of note, in *Ornelas*, the district court included in the jury instruction language defining "official duties" that "the question was *not* 'whether the officer is abiding by laws and regulations in effect at the time of the incident' or 'whether the officer is performing a function covered by his job description,'" and the defendant objected. *See Ornelas,* 906 F.3d at 1148-49. The defendant challenged that instruction on appeal and the Ninth Circuit panel, reviewing *de novo*, upheld the instruction as "appropriate." *See id.* (citing *United States v. Juvenile Female*, 566 F.3d 943, 950 (9th Cir. 2009)).

The government opposes inclusion of the defendant's additional proposed language to define "official duties" beginning with "It is not considered official duties" through "or to cause harm." That language unnecessarily introduces both the complicated concept of excessive force and the matter of the victim officer's intent into an instruction that calls for neither inquiry.[2] Additionally, it is more expansive than, and counter to, the standard in the Ninth Circuit, having been implicitly rejected in *Ornelas*. *See Ornelas*, 566 F.3d at 1149 (upholding jury instruction that included language to the effect that the question was *not* "whether the officer is abiding by laws and regulations in effect at the time of the incident").

[2] The concept of unlawful force is properly considered in the Ninth Circuit's Model Instruction No. 8.3 regarding self-defense.

## III. Self-Defense

The government opposes the provision of the defendant's offered self-defense instruction because there is no evidence in the record to support it, and any evidence the defendant might adduce is invalid as a matter of law. Under case law, self-defense can proceed under one of two theories, both of which the defendant includes in the alternative in his proposed instruction.

Disputed Jury Instruction No. 5.10: Self-Defense (If Applicable) (Offered by the Defense)

> The defendant has offered evidence of having acted in self-defense. Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary under the circumstances.
>
> ~~**Force likely to cause death or great bodily harm is justified in self-defense only if a person reasonably believes that such force is necessary to prevent death or great bodily harm.**~~
>
> The government must prove beyond a reasonable doubt, with all of you agreeing, that the defendant did not act in reasonable self-defense.
>
> **[IF THEORY OF NO KNOWLEDGE OF FEDERAL OFFICER:**[3]
>
> **It is a defense to the charge if (1) the defendant did not know that Joe Love was a federal officer or employee, (2) the defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful force, and (3) the defendant used no more force than appeared reasonably necessary in the circumstances**
>
> **In addition to proving all the elements of the crime beyond a reasonable doubt, the government must also prove beyond a reasonable doubt either (1) that the defendant knew that Joe Love was a federal officer or employee or (2) that the defendant did not reasonably believe force was necessary to defend against an immediate use of unlawful force or (3) that the defendant used more force than appeared reasonably necessary in the circumstances.]**
>
> **[IF THEORY OF EXCESSIVE FORCE:**
>
> **Even if the defendant knew that Jose Love was a federal officer or employee, it is a defense to the charge if (1) the defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful (i.e., excessive) force, and (2) the defendant used no more force than appeared reasonably necessary in the circumstances.**
>
> **In addition to proving all the elements of the crime beyond a reasonable doubt, the government must also prove beyond a reasonable doubt that (1) the defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful (i.e., excessive) force, and (2) the defendant used no more force than appeared reasonably necessary in the circumstances.]**[4]

---

[3] This is taken from Model Instruction 8.3

[4] Although the foregoing bolded red text is how the defendant's proposed instruction appears, the modified "Excessive Force" theory instruction seems to omit crucial language and makes it seem that the burden is on the government to prove, rather than disprove, self-defense. Consistent with the Model Instruction, it seems it should read "did not reasonably believe" rather than "reasonably believed" and "used more force" rather than "used no more force."

The government opposes the Court providing a self-defense instruction under either theory. While the government acknowledges that a defendant is entitled to "instructions related to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility[,]" *United States v. Lemon*, 824 F.2d 763, 764 (9th Cir. 1987), "[a] 'mere scintilla' of evidence supporting a defendant's theory . . . is not sufficient to warrant a defense instruction." *United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993). The facts of this case are straightforward and largely agreed upon by the parties, and sufficient evidence has already been submitted to the Court through exhibits to pretrial motions, *see generally* Dkt. 46-2, Declaration of Eli J. Cohen ("Cohen Decl."), Exhibit A (Westside Outside Sallyport Video), to demonstrate that the defendant cannot adduce any legally valid evidence to support either the "No Knowledge" theory or the "Excessive Force" theory. Each theory is considered in turn.

First, the notion that the defendant may claim he did not know that the victim in this case was a federal officer strains credulity. By his own assertion, this case arose when the defendant "attended a pro-immigration rights protest . . . held outside 630 Sansome Street, a federal building that houses an immigration court and where Immigration, Customs, and Enforcement ("ICE") temporarily holds immigration detainees." Dkt. 39, Defendant's Motion to Suppress at 5.[5] He further asserts that "video footage will show that a small army of ICE and other federal agents . . . advanced towards a small group of non-violent unarmed protestors in a public street[.]" Dkt. 41, Defendant's Response to Government's Motions *in Limine* at 13.

Despite these characterizations—as well as video exhibits, *see* Cohen Decl., Ex. A at 03:53-03:58, Exhibit G (Sally Port North (Jackson) Video) at 00:10-00:14, that show the victim officer was wearing a protective vest marked with the words "POLICE ICE"—the defendant argues there is "a very real question about whether the government can prove Mr. Ranney actually knew the alleged victim was an ICE agent[.]" Dkt. 41 at 14. He bases this in part on a November 2025 news article describing an FBI bulletin about criminals posing as ICE officers. *Id.* This is a question the Court should reject out of hand and not permit the defendant to argue to the jury. The defendant, by his own representation, went

[5] The government refers to the ECF page numbers appearing at the top of each page.

to a federal building where ICE operates to protest their practices and was confronted by ICE officers. In this context, the facts and law simply do not support an instruction under this theory, where the defendant attacked an individual outside a government building wearing a vest marked "POLICE ICE."

Second, the Court should not instruct the jury on the "Excessive Force" theory of self-defense because the defendant cannot meet the fundamental element of immediacy as a matter of law. Video evidence clearly demonstrates the following facts: the defendant last kicks the sally port garage door at 03:18 into the video. Cohen Decl., Ex A. at 03:18. He then runs across the street and walks out of frame. Cohen Decl., Ex. A at 03:22-03:32; Dkt. 42, Declaration of Angela Chuang ("Chuang Decl."), Exhibit J (East Side surveillance footage) at 01:34-01:42. The victim officer appears in the frame about 20 seconds later. Cohen Decl., Ex A. at 03:52; Chuang Decl., Ex. J at 02:02. Within about five seconds, the defendant is depicted charging across the street at the victim officer and shoving him. Cohen Decl., Ex. A at 03:54-03:58; Chuang Decl., Ex J. at 02:08-02:11. When taken together, all of this shows that the defendant crossed to the north side of the street, about 20 seconds passed, and then he charged across the street at the victim officer, who was on the south side of the street. The idea that the victim officer presented an immediate threat of any force, excessive or otherwise, is belied by the video evidence.

The immediacy requirement is crucial because without it, any defendant could get a self-defense instruction when charged under 18 U.S.C. § 111(a)(1) simply by asserting that over the course of history, law enforcement officers have employed excessive force, and that the defendant feared a given officer might employ it against him. In *United States v. Ehmer*, 87 F.4th 1073, 1129-30 (9th Cir. 2023), two defendants were convicted of depredation of government property, in violation of 18 U.S.C. § 1361, based on their digging of trenches in a national wildlife refuge. The defendants dug the trenches as part of an ongoing occupation of the area and anticipated standoff with the Bureau of Land Management, after law enforcement had fatally shot another occupier the day before. *Id.* at 1130. The defendants "envisioned the trenches as a 'fox hole of sorts' that would allow them 'to defend themselves' from an attack by the Government." *Id.* at 1129-30. Before trial, the defendants requested that the jury be instructed that the trenches were dug in self-defense due to a reasonable fear of an immediate use of unlawful force by the government. *Id.* at 1130. The district court declined to give the requested

instruction, because the trenches took hours to complete and there was no factual basis to support the view that the defendants were facing an imminent threat. *Id.* The Ninth Circuit found no error. *Id.* "At the time they began digging, Ryan and Ehmer may have thought that the Government might soon decide to attack the refuge, but any such potential in-the-future action did not confront them with an *immediate* use of force, much less one that could reasonably be deemed to be unlawful." *Id.* at 1131 (emphasis in original).

Although not binding, *United States v. Haynes*, 143 F.3d 1089 (7th Cir. 1998), is instructive. In that case, the Seventh Circuit affirmed the district court's foreclosing, before trial, a possible self-defense claim where a prisoner committed a sneak attack on another prisoner who had assaulted him the day before and threatened that he would "finish what he started" later in the day of the purportedly-preemptive sneak attack. *Id.* at 1090 (internal quotation marks omitted) ("There was a threat of action later that afternoon, but Flores-Pedroso had made unfulfilled threats before, and anyway 'later' and 'imminent' are opposites."). Similarly, in *United States v. Slocum*, 486 F.Supp.2d 1104, 1109-10 (C.D. Cal. 2007), the court precluded a self-defense instruction sought by prisoner defendants who had preemptively attacked rival gang members with whom they were allegedly in an ongoing gang war. ("Defendants' conduct can most generously be characterized as preventive self-defense, a concept that finds no support in state or federal law. Preventive self-defense is an offensive concept, properly understood to constitute aggression, and is, in fact, the opposite of defense.")

As described above, there was no immediate threat of excessive force to Ranney, and he should not be allowed to point to his belief about the threat of ICE officers generally to argue that it was. Applied to the specific context of assault on ICE officers, a district court opinion from this circuit is instructive. In *United States v. Luis-Amazar*, No. CR-26-00084-001-PHX-SHD, 2026 WL 1613935 (D. Ariz. June 4, 2026), the government moved to preclude testimony regarding the conduct of other ICE officers in other places as a basis for the reasonableness of the defendant's perception of an immediate threat of excessive force to his father. The court excluded such evidence as irrelevant. *Id.* at *4. "[T]he Excessive Force Theory requires a defendant to have reasonably believed his use of force was necessary to defend against the officer's immediate use of unlawful—i.e. excessive—force; it does not extend to force that a defendant merely fears may occur at some point in the future." *Id.* at *3.

Lastly, the notion that the defendant may present evidence of ICE conduct that occurred *after* he committed the assault to buttress the purported reasonableness of his perception of an immediate threat *before* the assault flies in the face of logic. The defendant states that "after Mr. Ranney's alleged assault, video recordings in this case show officers escalating physical contact with both Mr. Ranney . . . and 'Individual 1.' . . . Such unjustified escalation and provocation by government agents certainly is relevant to the reasonableness of Mr. Ranney's actions and the reasonableness of his belief that there was an imminent threat of excessive force." Dkt. 41 at 14. The defendant is arguing that because officers used force to arrest him after he had committed an assault, he was reasonable to commit the assault. It not only eschews the fundamental immediacy requirement—because an event that occurs *after* an action cannot be viewed as a motivation for that preceding action—but has absolutely no limiting principle. When contemplating this position, it is helpful to consider analogous situations and question whether a court would ever deem them reasonable. Would the Court accept a police officer's assertion that a defendant's subsequent violent conduct justified a preemptive use of force that was otherwise excessive based on what the officer knew when he exercised the force? Would the Court accept the argument that finding drugs in a location that was searched pursuant to a warrant not supported by probable cause retroactively saved the warrant by confirming the officers' suspicions? Of course not. As a matter of law, any analysis about whether Mr. Ranney reasonably believed it was necessary to use force to defend against an immediate use of unlawful force can only consider matters that occurred *prior to* Mr. Ranney's assault of Officer Love. *Cf. Barnes v. Felix*, 605 U.S. 73, 83 (2025) (holding that in excessive force cases, court must look to "any relevant events *coming before*" the use of force, reasoning that "deciding whether a use of force was objectively reasonable demands 'careful attention to the facts and circumstances' relating to the incident, *as then known to* the officer.") (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989) (emphasis added).

## IV. Aiding and Abetting

The government proposes the inclusion of the Ninth Circuit's Model Criminal Jury Instruction 4.1, regarding aiding and abetting liability under 18 U.S.C. § 2(a), and the defense opposes.

Disputed Jury Instruction No. 4.1 Aiding and Abetting (18 U.S.C. § 2(a)) (Offered by the Government)

A defendant may be found guilty of Destruction of Government Property, in violation of 18 U.S.C. § 1361, even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To "aid and abet" means intentionally to help someone else commit a crime. To prove a defendant guilty of Destruction of Government Property by aiding and abetting, the government must prove each of the following beyond a reasonable doubt:

First, someone else committed Destruction of Government Property;

Second, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of Destruction of Government Property;

Third, the defendant acted with the intent to facilitate Destruction of Government Property; and

Fourth, the defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit Destruction of Government Property.

A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advance knowledge of the crime [and having acquired that knowledge when the defendant still had a realistic opportunity to withdraw from the crime].

The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

As a substantive matter, the government believes that the evidence at trial will support the provision of this instruction. As video evidence demonstrates, multiple people, along with the defendant, kicked and struck the sally port garage door in question. *See* Cohen Decl., Ex. A at 02:44-03:19. The government anticipates that the defendant may argue that a person or persons other than him caused the damage, that his actions were not the cause-in-fact of the damage, and therefore, the jury cannot find that he willfully damaged government property. The provision of the above instruction would make clear to the jury that even were it to so find, it must still find the defendant guilty of Count Two of the Information if it finds beyond a reasonable doubt that the defendant aided or abetted the person or people it finds to have caused the damage.

As a legal matter, the provision of the above instruction is proper because "[a]iding and abetting may be implied in every substantive criminal offense." *United States v. Vaandering*, 50 F.3d 696, 702 (9th Cir. 1995) (citing *United States v. Armstrong*, 909 F.2d 1238, 1241-42 (9th Cir. 1990)). The government, therefore, need not have explicitly alleged an aiding and abetting theory in the Information. *See id.* The fact that the other persons striking and kicking the sally port garage door are not named in the Information does not preclude the provision of the instruction. "All that the prosecution need prove is that the offense has been committed. It is not even necessary that the identity of the principal be established, much less that he be convicted." *Feldstein v. United States*, 429 F.2d 1092, 1095 (9th Cir. 1970). Therefore, the government's proposed aiding and abetting instruction is proper.

## V. First Amendment

The government opposes use of the defendant's proposed First Amendment jury instruction, set forth below:

Disputed Jury Instruction re: First Amendment (No Ninth Circuit Model Jury Instruction Available) (Offered by the Defense)

**The First Amendment to the United States Constitution guarantees the right to free speech, which encompasses the right to protest. To the extent that Mr. Ranney's actions are protected by the First Amendment, you cannot convict Mr. Ranney on the basis of such protected actions.**

**I instruct you that the First Amendment protects speech, and the right to protest, even if that speech constitutes vehement, scathing, and offensive criticism of public officials, including law enforcement officers, and even if that protest includes such criticisms. Such speech and such protest are protected even if that speech or protest behavior is insulting, offensive, disagreeable, opprobrious, obscene, upsetting, arouses contempt, or outrageous. The First Amendment also protects the right to remain anonymous while engaged in protected activities.**

**Mr. Ranney's First Amendment rights to speak his mind and to protest, standing alone, cannot constitute assault for purposes of applying my other instructions.**

The government objects to this instruction as irrelevant, unnecessary, and confusing. In this case, the defendant can only be convicted of two possible charges—assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1), and destruction of government property, in violation of 18 U.S.C. § 1361. The factual allegations underpinning those charges—that the defendant kicked and shoved a garage door that was federal property, causing damage, and then shoved an ICE officer—do not involve thorny questions about the contours of protected speech or grey areas of tension between First Amendment principles and criminal law. *See N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916, 102 S. Ct. 3409, 3427, 73 L. Ed. 2d 1215 (1982) ("The First Amendment does not protect violence.").

Indeed, the First Amendment is not even at play with respect to the charged conduct in this case. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968) (rejecting "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."). There is no legally viable path for Ranney to claim that his destruction of the garage door somehow constituted protected expressive conduct because it was government property.

*See, e.g.*, *Spence v. State of Wash.*, 418 U.S. 405, 409 (1974)[6] (distinguishing First Amendment rights around use of *privately owned* flag from situations involving government property, observing, "We have no doubt that the State or National Governments constitutionally may forbid anyone from mishandling in any manner a flag that is public property."); *cf. Texas v. Johnson*, 491 U.S. 397, 399 (1989) (holding that First Amendment protects right to burn privately owned flag). And the jury will not need to parse any language to determine whether it constitutes protected speech or a "true threat" or other form of unprotected speech. *See Counterman v. Colorado*, 600 U.S. 66 (2023) (discussing categories of unprotected communications, including "true threats" of violence, and defining true threats standard).

There can be no risk that a jury, following the Court's other jury instructions to follow the law and the evidence, will convict the defendant for activity protected under the First Amendment. Because this case does not have real First Amendment implications but the defendant's proposed First Amendment instruction suggests otherwise, the proposed instruction will be confusing to the jury. To the extent the defendant is concerned that jurors may form unfavorable opinions of him based on his decision to participate in the August 8, 2025 protest or statements he made at that protest, *see* Govt. Opp. to Mot. to Suppress, Dkt. 46 at 6 (describing Ranney screaming "rot in hell" and "mother***ers"), and be impermissibly swayed thereby, the Court's instruction regarding the duties of the jury sufficiently addresses that concern. *See* Court's Proposed Jury. Instrs., Dkt. 63 at 3 (instructing the jury to decide the case solely on the evidence and the law before it and to not allow "personal likes or dislikes," among other impermissible considerations, to influence their execution of those duties.). Therefore, the defendant's proposed First Amendment instruction is also unnecessary.

---

[6] This case was recognized as abrogated on other grounds in *Yellowhammer Fund v. Marshall*, 776 F. Supp. 3d 1071, 1111 (M.D. Ala. 2025).