JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
ANGELA CHUANG, Bar No. 313445
SAMANTHA JAFFE, Bar No. 324731
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Angela_Chuang@fd.org

Counsel for Defendant Ranney

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CALEB ALEXANDER RANNEY,<br><br>Defendant. | **Case No.:** CR 25–00416 TSH<br><br>**MOTION TO DISMISS UNDER BRADY V. MARYLAND**<br><br>**Court:**        Hon. Thomas S. Hixson |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................iii

INTRODUCTION .......................................................................................................................1

BACKGROUND .........................................................................................................................1

ARGUMENT...............................................................................................................................4

    I.    The government violated *Brady* when it failed to timely disclose evidence that Inspector Glumaz was decertified as a pepper ball gun operator based on his use of force on August 8, 2025, and August 20, 2025...........................................................................4

        A.    The withheld evidence was favorable to the accused. ..........................................5

        B.    The withheld evidence was willfully or inadvertently suppressed. ......................6

        C.    Suppression of the evidence was prejudicial to Mr. Ranney. ...............................7

    II.    The proper remedy for the government's *Brady* violation is dismissal...........................8

    III.    Alternatively, the Court should give an adverse jury instruction and order discovery...11

        A.    The Ninth Circuit has approved an adverse jury instruction for *Brady* violations. ...............................................................................................................................11

        B.    This Court should order the government to produce responsive discovery to ensure all material evidence is disclosed under both Brady and Rule 16...........12

            1.    Personnel files...................................................................................14

            2.    All records/communications re: decertification for Inspector Glumaz or any other involved individuals..................................................15

            3.    All discovery from the 8/20/2025 protest and the law enforcement response, including (1) list of agents present; (2) surveillance footage; (3) cell phone video; (4) communications; (5) reports (including but not limited to use of force reports, memos, ROIs, etc.) ...............................15

            4.    All discovery from the 6/10/25 protest, or any other local protest (undersigned counsel believes there was also a protest on 7/8/25, at a minimum) involving the same agents (same categories as above).........15

            5.    All texts from any involved individuals related to the 8/8 and 8/20 protests ...............................................................................................16

            6.    Communications between DOJ/DHS, DHS/ICE, DHS/FPS related to the 8/8 and 8/20 protests, to include: (1) when Brady requests were made by the government; (2) copies of those requests; (3) when responses from the agencies were received; and (4) copies of those responses ..............16

            7.    Any verbal reprimands or disciplinary action relating to any involved

individual, even if it wasn't documented in writing, from either 8/8/25 or 8/20/25 ........................................................................................................................ 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

## Federal Cases

*Benn v. Lambert*,
    283 F.3d 1040 (9th Cir. 2002) ........................................................................................ 6

*Brady v. Maryland*,
    373 U.S. 83 (1963) ..................................................................................................... 1, 4

*Clark v. Chappell*,
    936 F.3d 944 (9th Cir. 2019) ........................................................................................ 5

*Comstock v. Humphries*,
    786 F.3d 701 (9th Cir. 2015) ........................................................................................ 5

*Gantt v. Roe*,
    389 F.3d 908 (9th Cir. 2004) ........................................................................................ 5

*Giglio v. United States*,
    405 U.S. 150 (1972) ...................................................................................................... 5

*Kyles v. Whitley*,
    514 U.S. 419 (1995) ................................................................................................... 4, 6

*McGuffin v. Dannels*,
    790 F. Supp. 3d 1079 (D. Or. 2025) ............................................................................. 5

*Milke v. Ryan*,
    711 F.3d 998 (9th Cir. 2013) ........................................................................................ 5

*Paradis v. Arave*,
    240 F.3d 1169 (9th Cir. 2001) ...................................................................................... 5

*Reis-Campos v. Biter*,
    832 F.3d 968 (9th Cir. 2016) ........................................................................................ 5

*Silva v. Brown*,
    416 F.3d 980 (9th Cir. 2005) ........................................................................................ 5

*Strickler v. Greene*,
    527 U.S. 263 (1999) ...................................................................................................... 1

*United States v. Aguilar Noriega*,
    831 F. Supp. 2d 1180 (C.D. Cal. 2011) ...................................................................... 10

*United States v. Bagley*,
    473 U.S. 667 (1985) ...................................................................................................... 5

*United States v. Bernal-Obeso*,
    989 F.2d 331 (9th Cir. 1993)....................................................................................... 12

*United States v. Blanco*,
   392 F.3d 382 (9th Cir. 2004) ............................................................................... 5, 12

*United States v. Bruce*,
   984 F.3d 884 (9th Cir. 2021) .................................................................................. 6

*United States v. Bryan*,
   868 F.2d 1032 (9th Cir. 1989) ............................................................................... 14

*United States v. Bundy*,
   968 F.3d 1019 (9th Cir. 2020) ..................................................................... 7, 8, 9, 10

*United States v. Cardenas-Flores*,
   974 F.2d 1343 (9th Cir. 1992) ........................................................................... 13, 14

*United States v. Chapman*,
   524 F.3d 1073 (9th Cir. 2008) ......................................................................... 8, 9, 10

*United States v. Cloud*,
   102 F.4th 968 (9th Cir. 2024) ............................................................................... 5, 7

*United States v. Davenport*,
   753 F.2d 1460 (9th Cir. 1985) ................................................................................ 7

*United States v. Doe*,
   705 F.3d 1134 (9th Cir. 2013) ............................................................................... 13

*United States v. Garrison*,
   888 F.3d 1057 (9th Cir. 2018) ........................................................................... 11, 12

*United States v. Hernandez-Meza*,
   720 F.3d 760 (9th Cir. 2013) ................................................................................ 13

*United States v. Kearns*,
   5 F.3d 1251 (9th Cir. 1993) ................................................................................... 8

*United States v. Kojayan*,
   8 F.3d 1315 (9th Cir. 1993) ................................................................................... 9

*United States v. Lopez*,
   577 F.3d 1053 (9th Cir. 2009) ............................................................................... 5, 6

*United States v. Muniz-Jaquez*,
   718 F.3d 1180 (9th Cir. 2013) ............................................................................... 13

*United States v. Obagi*,
   965 F3d. 993 (9th Cir. 2020) .................................................................................. 6

*United States v. Olsen*,
   704 F.3d 1172 (9th Cir. 2013) ................................................................................ 7

*United States v. Price*,
   566 F.3d 900 (9th Cir. 2009) ................................................................................ 6, 7

*United States v. Soto–Zuniga*,
   837 F.3d 992 (9th Cir. 2016) ............................................................................... 13

*United States v. Struckman*,
   611 F.3d 560 (9th Cir. 2010) ............................................................................... 8

*Wearry v. Cain*,
   136 S. Ct. 1002 (2016)........................................................................................ 6

*Williams v. Ryan*,
   623 F.3d 1258 (9th Cir. 2010) ............................................................................. 1

**Federal Rules and Statutes**

Fed. R. Evid. 16 ................................................................................................ 13, 14

**INTRODUCTION**

As noted at the hearing on July 23, 2026, defendant Caleb Ranney moves to dismiss the Information in the above-captioned matter due to the government's violations of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. *See, e.g.*, *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Williams v. Ryan*, 623 F.3d 1258, 1264 (9th Cir. 2010). In the alternative, he requests that this Court order the government to produce the discovery requested *infra* and instruct the jury on the government's violation of its obligations to timely produce favorable evidence to the defense.

**BACKGROUND**

On December 19, 2025, at the initial appearance on this matter, this Court admonished the government and "advised government counsel of the government's disclosure obligations under *Brady v. Maryland* and its progeny, and that the failure to do so in a timely manner may result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, or any other remedy that is just under the circumstances." Dkt. No. 2 (Minute Entry). The government acknowledged its understanding of such obligations. That same day, the defense sent a discovery letter to the government, which included a request for all *Brady/Giglio* material. Declaration of Angela Chuang in Support of Defendant's Motion to Dismiss ("Chuang Decl."), Ex. F at 4–5.

On March 12, 2026, the case was scheduled for trial to begin on July 27, 2026. Dkt. No. 15 (Minute Entry). The Court subsequently adopted the parties' stipulation for pretrial deadlines, which included a June 10, 2026, deadline for the government to disclose *Brady/Jencks/Giglio* material to the defense. Dkt. No. 21 (Pretrial Deadlines Order) at 2. On June 25, 2026, defense counsel emailed a *Henthorn/Giglio* request to the government that included records related to the involved agents' participation in immigration enforcement and any allegations of misconduct stemming therefrom. *See* Chuang Decl., Ex. A (Email Exchange).

On June 24, 2026, both parties filed motions in limine. In its filing, the government moved to preclude the defense from arguing self-defense, including based upon a theory of excessive force. See Dkt. No. 37 (Gov't MIL) at 8–11. The defense asked the Court to defer ruling on a self-defense jury instruction until the close of evidence, and summarized some of the anticipated evidence at trial that

MOTION TO DISMISS UNDER BRADY V. MARYLAND
*RANNEY*, CR 25–00416 TSH

would support a self-defense instruction; the referenced evidence includes surveillance footage of a federal officer firing multiple pepper balls at unarmed protesters less than a minute before Mr. Ranney allegedly assaulted an ICE officer. Dkt. No. 41 (Def. MIL Response) at 9–10. This Court agreed with Mr. Ranney's position and deferred ruling on a self-defense instruction until the close of evidence. Dkt. No. 74 (Order re: MIL) at 10.

In its motions *in limine*, the defense moved to dismiss the Information, or for alternative lesser sanctions, based on the government's spoliation of physical evidence that agents had seized from Mr. Ranney, subsequently lost/destroyed, and then lied about. Dkt. No. 38 (Def. MIL) at 10–18. In a concurrently filed motion to suppress, Mr. Ranney requested suppression of various items that were seized from him based on Fourth Amendment grounds, and requested an adverse-inference instruction based on the aforementioned spoliation. See Dkt. No. 32 (MTS). This Court denied Mr. Ranney's motion to dismiss the Information but imposed alternative sanctions, and concurrently granted in part Mr. Ranney's motion to suppress, based on a finding that government agents conducted an unconstitutional search of his backpack. See Dkt. No. 74 (Order re: MIL) at 19, Dkt. No. 71 (Order re: MTS) at 17.

On June 24, 2026, both parties filed proposed witness lists. Dkt. No. 28 (Def. Wit. List); Dkt. No. 36 (Govt Wit. List). The government did not list FPS Inspector Stephen Glumaz, the officer who fired the pepper ball rounds on August 8, as one of their witnesses. See Dkt. No. 36 (Govt. Wit. List). The defense served a subpoena on Glumaz on July 9, 2026, which directed him to appear to testify at trial. Chuang Decl. ¶ 5.

On July 1, 2026, the government disclosed interviews that Special Agent Rivero, the main case agent, conducted in this case. *Id.* ¶ 4. In SA Rivero's May 20, 2026 interview with Glumaz, Inspector Glumaz noted that he a) fired FN-303 (pepper ball rounds) at the thigh area of a protester, that b) he was "subsequently decertified as an FN-303 user," and that c) he "intends to recertify at a later date." Chuang Decl., Ex. E (Interview Notes). No further information or records related to his decertification were disclosed to the defense until July 22, 2026. The interview notes do not specify who was present at the interview, though based on representations by the assigned AUSAs at the July 23 hearing, it appears possible that one or both of the prosecutors were present. It also appears

MOTION TO DISMISS UNDER BRADY V. MARYLAND
*RANNEY*, CR 25–00416 TSH

2

possible that the reasons for his decertification, one of which was his use of force in the charged incident, were relayed to them at that meeting. The defense affirmatively seeks clarification on those points.

On July 21, 2026, the government emailed defense counsel a letter disclosing that Glumaz had informed them of decades-old instances of dishonesty. Chuang Decl., Ex. B (July 21 Letter). The letter did not mention anything about Glumaz being stripped of his pepper ball certification due to his use of force in the incident charged here as well as at a similar protest shortly thereafter.

On July 22, 2026, the government disclosed an email from March 25, 2026, addressed to Inspector Glumaz. Chuang Decl., Ex. C (Decertification Email). The government styled it as a *Henthorn/Giglio* disclosure. The email appears to be from Inspector Glumaz's supervisor, and informs Inspector Glumaz, that he has been decertified "as a PepperBall and FN303 operator." *Id*. at 2. It informs him that he is not to "possess or operate" an FPS PepperBall or FN303 launcher until further notice. *Id*. That basic information of his decertification was known to the defense.

What was not known to the defense, however, is the last sentence of the email, which indicates, in no uncertain terms, that the basis for "this action" (the decertification) was "in connection with the use of force incidents" on August 8, 2025 (the protest at issue here) and August 20, 2025 which Inspector Glumaz was involved in. *Id.* Not only was this the first time that the defense was made aware that Inspector Glumaz's decertification from use of the pepper ball gun was caused by his actions on the date of the charged incident, this was also the first time the defense was made aware that Inspector Glumaz (or any other involved agent who was part of the same team) was involved in the subsequent protest on August 20, 2025, which also involved excessive force against protesters. Chuang Decl., ¶¶ 7–8.

Publicly available video footage of the August 20, 2025, incident confirms that multiple agents who have been identified as government witnesses, as well as multiple agents present who the government has not disclosed as witnesses, were involved in the August 8, 2025, protest. This indicates to the defense that, as a team, the agents involved on August 8 were also involved on August 20, 2025, and may have been involved, as a team, in other protest responses. Undersigned counsel was able to identify DO Caldwell, DO Love, FPS Inspector James, and FPS Inspector

Orchard in publicly available videos of the August 20 protest. Chuang Decl., Ex. D (August 20 Videos). Undersigned counsel also believes, based on the publicly available videos, that DO Cheng, FPS Inspector Hall, and FPS Inspector Glumaz can be identified as well. As confirmed by the email received on July 22, 2026, Inspector Glumaz was certainly present, and used his pepper ball gun improperly.

Indeed, publicly available footage shows that not only were officers associated with this case present on August 20, but they used excessive force on that date. DO Caldwell is visible on video taking down a protester, after DO Love points at them. Chuang Decl., Ex. D3 at 00:34–00:40. DO Caldwell is also on video running and tackling another protester into the side of a building. *Id*. at 00:40–00:44. FPS Inspector Hall is visible on video violently snatching a megaphone from a protester, possibly hitting him in the face while doing so, while FPS Inspector Orchard and DO Love are nearby. Chuang Decl., Ex. D4. Hall is also on video repeatedly hitting a protester's bicycle with a baton while DO Love watches and another officer who the defense believes to be FPS Inspector Glumaz pulls on the protester's shoulder. Chuang Decl., Ex. D5. The person undersigned counsel believes to be FPS Inspector Glumaz is visible with a pepper ball gun that matches the one he had on August 8, 2025.

## ARGUMENT

**I.     The government violated *Brady* when it failed to timely disclose evidence that Inspector Glumaz was decertified as a pepper ball gun operator based on his use of force on August 8, 2025, and August 20, 2025.**

The Due Process Clause requires the government to disclose any exculpatory or impeaching evidence to the defense if it is material to defense or punishment. *E.g., Brady*, 373 U.S. at 87–88. Under *Brady*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87; *see also Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (explaining that post-*Brady* case law has made "clear that a defendant's failure to request favorable evidence [does] not leave the Government free of all obligation"). "[T]here are three elements to a Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching, (2) that evidence must have been suppressed

by the State, either willfully or inadvertently, and (3) prejudice must have ensued." *Clark v. Chappell*, 936 F.3d 944, 980 (9th Cir. 2019) (quoting *Reis-Campos v. Biter*, 832 F.3d 968, 975 (9th Cir. 2016)).

The prosecutor's duty to disclose *Brady* material exists whether or not the information is requested by the defense. *See Paradis v. Arave*, 240 F.3d 1169, 1176 (9th Cir. 2001) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Here, however, the defense expressly requested all relevant *Brady* materials, and the Court imposed a deadline for such disclosures on June 10, 2026. *See* Dkt. No. 21.

### A.    The withheld evidence was favorable to the accused.

The legal standard for whether evidence is "favorable" to the accused under the first prong of *Brady* is a liberal one. *See, e.g., McGuffin v. Dannels*, 790 F. Supp. 3d 1079, 1110 (D. Or. 2025) ("Whether information favors the accused is a low standard." (citing *Gantt v. Roe*, 389 F.3d 908, 912 (9th Cir. 2004))). Specifically, "[e]vidence that has *any* affirmative, evidentiary support for the defendant's case or any impeachment value is, by definition, favorable." *Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015) (emphasis added). "Evidence is favorable if it is exculpatory or impeaches a prosecution witness." *United States v. Lopez*, 577 F.3d 1053, 1059 (9th Cir. 2009). Or, as the Ninth Circuit put it in *Comstock*, "[i]f information would be advantageous to the defendant, or would tend to call the government's case into doubt, it is favorable." 786 F.3d at 708 (internal citations and punctuation omitted); *see also Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013) ("Any evidence that would tend to call the government's case into doubt is favorable for *Brady* purposes"); *United States v. Cloud*, 102 F.4th 968, 975 (9th Cir. 2024) ("[E]vidence that has any … impeachment value is, by definition, favorable."). Impeachment information is often called "*Giglio*" material after *Giglio v. United States*, 405 U.S. 150, 154 (1972), which extended the original *Brady* rule to impeachment material. Both impeachment and other evidence favorable to the accused are kinds of *Brady* material. *See, e.g., United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) ("*Brady/Giglio* information includes material . . . that bears on the credibility of a significant witness in the case.").

Here, the evidence is that Inspector Glumaz, who fired pepper balls into the protesters (including Mr. Ranney) moments before Mr. Ranney's alleged assault, was disciplined for that action

and his pepper ball certification was taken away. This supports an excessive force claim against Glumaz, which, in turn, supports a self-defense claim as well as an argument that the officers involved were not engaged in good-faith performance of their official duties. *See* Dkt. No. 77 (Def. Mem. ISO Prop. Jury Instr.) at 4-5 (citing numerous Ninth Circuit cases establishing that "[a]n officer is only considered to be performing official duties if they do so in good faith, which necessarily excludes the use of excessive force and unlawful retaliation"). As made clear by the authority cited above, whether the government believes there is sufficient evidence to support a self-defense claim is not the correct standard for their disclosure obligations. In its ruling on the motions *in limine*, this Court deferred ruling on a self-defense jury instruction precisely because it is possible that evidence at trial would support giving such an instruction. The withheld evidence is clearly favorable to the defense.

### B.    The withheld evidence was willfully or inadvertently suppressed.

Second, the government violates *Brady* when evidence is suppressed by the prosecution. But "suppressed" requires no showing of malice by the government; rather, evidence is deemed suppressed whenever "favorable evidence known to police or the prosecution is not disclosed, either willfully or *inadvertently*." *United States v. Lopez*, 577 F.3d 1053, 1059 (9th Cir. 2009) (emphasis provided). Indeed, "[t]he term 'suppression' does not describe merely overt or purposeful acts on the part of the prosecutor; sins of omission are equally within Brady's scope." *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009). Thus, the terms "suppression," "withholding," and "failure to disclose" all "have the same meaning for *Brady* purposes." *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002). "Suppression occurs whenever the government fails to disclose evidence, regardless of the government's good or bad faith." *United States v. Obagi*, 965 F3d. 993, 997 (9th Cir. 2020) (citing *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016)). Finally, "[t]he obligations imposed by *Brady* are not limited to evidence prosecutors are aware of, or have in their possession." *United States v. Bruce*, 984 F.3d 884, 895 (9th Cir. 2021). "Rather, individual prosecutors have 'the duty to learn of any favorable evidence known to others acting on the government's behalf' as part of their 'responsibility to gauge the likely net effect of all such evidence' to the case at hand." *Id.* (quoting *Kyles*, 514 U.S. at 437).

Here, the meeting between the case agent and Inspector Glumaz (where government counsel may or may not have been present) was on May 20, 2026. The notes from that interview were not disclosed to the defense until July 1, 2026. The email that was produced even later to the defense on July 22, 2026 had originally been sent to Glumaz on March 25, 2026. Glumaz is a federal agent with Federal Protective Services. It is likely that FPS conducted an internal investigation into Glumaz's use of force between August 2025 and his decertification on March 25, 2026, records of which would be squarely within the agency's custody and control at the time of creation. This evidence was suppressed within the meaning of *Brady*.

### C.    Suppression of the evidence was prejudicial to Mr. Ranney.

Finally, the government's suppression of the *Brady* evidence here was prejudicial to Mr. Ranney. Where a *Brady* violation is identified before trial rather than after conviction, the ordinary retrospective "reasonable probability of a different verdict" test does not apply. That test is "a poor fit" whenever suppression comes to light before a "look back" at a completed trial record is possible. *United States v. Cloud*, 102 F.4th 968, 979 (9th Cir. 2024) (quoting *United States v. Olsen*, 704 F.3d 1172, 1183 (9th Cir. 2013)). Instead, the proper test evaluates whether the withheld evidence is favorable to the defense and valuable in light of the proceedings to date, including whether earlier disclosure would have altered trial strategy, not whether a jury would ultimately have found the evidence convincing enough to acquit. *See Cloud*, 102 F.4th at 979–80; *United States v. Bundy*, 968 F.3d 1019, 1033, 1044 (9th Cir. 2020). Disclosure escapes a *Brady* sanction only if made "at a time when the disclosure would be of value to the accused." *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985). Impeachment evidence is "especially likely to be material" where it impugns an important witness. *Price*, 566 F.3d at 913 (quoting *Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005)).

Here, the extremely late disclosure ensured that the defense lacks the ability to fully investigate the claim, as it would have if the evidence had been timely disclosed to them. Defense counsel does not have time to try and speak with Ryan Johnson, Area Commander for the Federal Protective Service, Region 9, who decertified Inspector Glumaz. Nor does the defense have the time to fully investigate the circumstances of the August 20 protest and other similar protests where the same team

of agents may have engaged in the same type of behavior. The defense has also had to divert time and resources to address this violation on the eve of trial that it otherwise would have devoted to trial preparation, as well as to adjust its strategy and trial preparation in light of the untimely disclosure.

## II.    The proper remedy for the government's *Brady* violation is dismissal.

Although dismissal of the charges is a disfavored remedy for a *Brady* violation, the Ninth Circuit "has recognized that dismissal with prejudice may be an appropriate remedy for a *Brady* or *Giglio* violation using a court's supervisory powers where prejudice to the defendant results and the prosecutorial misconduct is flagrant." *United States v. Struckman*, 611 F.3d 560, 577 (9th Cir. 2010). Appellate review of any dismissal by the trial court is for abuse of discretion. *See United States v. Bundy*, 968 F.3d 1019, 1043 (9th Cir. 2020).

Thus, a district court may dismiss an indictment under its inherent supervisory power where the government's misconduct reflects "(1) flagrant misbehavior and (2) substantial prejudice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993). This authority exists independent of, and does not require, a freestanding due process violation. *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008). The supervisory power serves three purposes: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *Bundy*, 968 F.3d at 1030 (quoting *Struckman*, 611 F.3d at 574).

Flagrant misbehavior does not require proof of intentional or malicious conduct. "Reckless disregard for the prosecution's constitutional obligations is sufficient." *Id.* at 1038 (cleaned up); *Chapman*, 524 F.3d at 1085. The government cannot escape a finding of flagrancy by attributing the failure to an agency or individual other than the prosecutor personally; the prosecution is "deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation," and the flagrant conduct of any such agent is imputed to the government as a whole. *Bundy*, 968 F.3d at 1037. Courts also look to the government's conduct once a disclosure problem comes to light: continued misrepresentation, minimization, or failure to accept responsibility is itself evidence supporting dismissal, both because it deepens the harm and because it demonstrates the government has not internalized the seriousness of its constitutional obligations.

*Chapman*, 524 F.3d at 1088; *United States v. Kojayan*, 8 F.3d 1315, 1318, 1323–25 (9th Cir. 1993).

Misconduct need not arise from a single dramatic violation to be flagrant; a pattern of discovery failures, misrepresentations to the court, and untimely disclosures can be considered together, and the cumulative weight of that pattern may establish flagrancy even where any single incident, viewed in isolation, might not. *See Chapman*, 524 F.3d at 1085–86 (dismissal warranted where the government's failure to log disclosures, repeated assurances of full compliance, and belated production together reflected reckless disregard for its obligations); *Bundy*, 968 F.3d at 1038–42 (evaluating multiple categories of withheld evidence collectively in sustaining dismissal).

Once flagrant misbehavior and substantial prejudice are shown, dismissal is warranted only if "no lesser remedial action" would cure the harm. *Chapman*, 524 F.3d at 1087. This does not mean dismissal must be the only theoretically conceivable remedy; a lesser remedy will, in some sense, always be available. *Bundy*, 968 F.3d at 1043. Rather, the question is whether any lesser sanction—a continuance, exclusion of testimony, a curative instruction, or additional discovery—would still leave the defense "at a greater disadvantage than it would have faced had the government produced the [material] in the first place," thereby perpetuating rather than curing the constitutional harm. *Id.*

Here, this misdemeanor case arises from events nearly a year ago. It was on the petty offense calendar for months, and has been pending on the criminal calendar since December 19, 2025. Dkt. No. 2. This case was set for trial on March 19, 2026. Dkt. No. 15. The government thus has been on notice of its *Brady* obligations, via instruction from this Court, since December, long before Inspector Glumaz received the email from his supervisor decertifying him. The government received the defense's initial request for *Brady* material immediately after Mr. Ranney's initial appearance. The government has also been on notice that this case was going to trial since at least a week before the email was sent to Inspector Glumaz.

In this case, a misdemeanor which has been pending since December 2025, there has been a pattern of misconduct by government agents with regard to the search in this case, spoliation of evidence, and lying about it. *See* Dkt Nos. 38, 39, 51, 71, 74. First, government agents violated Mr. Ranney's Fourth Amendment rights when they illegally searched his backpack, as the Court already found when it granted Mr. Ranney's suppression motion. *See* Dkt. No. 71. Then, as Mr. Ranney

argued in his sixth motion *in limine*, government agents also committed misconduct in this case when they lost or destroyed gloves and other materials seized from Mr. Ranney's backpack. *See* Dkt. No. 38 at 10–18. The Court declined to dismiss the information based on the government's spoliation of evidence, finding no prejudice (in part based on its suppression order excluding the backpack regardless), and the Court therefore declined to address whether the government acted in bad faith. *See* Dkt. No. 74 at 17–19. But the Court nevertheless imposed lesser sanctions on the government based on its spoliation of evidence. *See id.* Although the Court's order determined that it did not need to delve into the government's bad faith because it determined dismissal wasn't warranted for other reasons, Mr. Ranney maintains that evidence of bad faith as to this separate alleged violation of the Due Process Clause was substantial. *See* Dkt. No. 38 at 15–17. And now, there is a major *Brady* violation.

When there is a pattern of bad faith actions by government, dismissal is especially appropriate. *See Chapman*, 524 F.3d at 1085–86 (dismissal warranted where the government's failure to log disclosures, repeated assurances of full compliance, and belated production together reflected reckless disregard for its obligations); *Bundy*, 968 F.3d at 1038–42 (evaluating multiple categories of withheld evidence collectively in sustaining dismissal). Simply put, the cumulative effect of these instances of government misconduct requires reversal: the government pulled this case off of the petty offense calendar, the burden of proof lies with the government, and the government, as a whole, is the entity who has repeatedly violated its obligations under the Constitution. *See id.*; *United States v. Aguilar Noriega*, 831 F. Supp. 2d 1180, 1206–08 (C.D. Cal. 2011) (dismissing indictment based on multiple types of government misconduct, including a *Brady* violation).

With regard to lesser sanctions: a continuance would be a particularly inappropriate remedy here. Mr. Ranney has been on pretrial supervision, which, no matter how minimal the conditions, is a curtailment on his liberty, since December 2025. A continuance only stretches out that time for him. Further, a continuance renders toothless the *Brady* advisal this Court gave from the outset (and that it gives in every criminal case) as well as its pretrial order setting deadlines for government disclosures: if the remedy for a violation of that court order is a continuance and nothing more, there is no real consequence for the government violating its disclosure obligations. If anything, if a continuance

were the remedy, the government would benefit from delaying required disclosures as a way to buy itself additional time to prepare for trial while a defendant's liberty is curtailed by pretrial supervision. Nor should Mr. Ranney be forced to choose between his right to a speedy trial and his right to an effective defense—which includes his Sixth Amendment right to meaningful examination of witnesses—due to the government's failure to comply with its obligations. Exclusion of testimony is also unavailable here: the government is not planning on calling Inspector Glumaz.

A curative instruction and the order of additional discovery still places Mr. Ranney at a greater disadvantage than he would have been had this information been timely produced, for the reasons stated *supra*: additional investigation would have occurred. But, recognizing that this Court may disagree, the defense notes that the only equitable lesser remedy which vindicates this Court's *Brady* advisal and pretrial order and Mr. Ranney's Constitutional rights would be for a clear curative instruction and to order the discovery requested *infra*.

**III.    Alternatively, the Court should give an adverse jury instruction and order discovery.**

**A.    The Ninth Circuit has approved an adverse jury instruction for *Brady* violations.**

Although dismissal of the information is the appropriate remedy for the pattern of government misconduct in this case, if the Court declines to dismiss, it should give a curative jury instruction. The Ninth Circuit has specifically approved of giving a curative jury instruction when the government failed to timely disclose *Brady* evidence. *See United States v. Garrison*, 888 F.3d 1057, 1065–66 (9th Cir. 2018). Specifically, in *Garrison*, the government failed to timely disclose information to the defense, including multiple instances of *Brady* or *Giglio* evidence. *See id.* As a remedy for the *Brady* violation by the government, "the district court gave a jury instruction telling the jury that the government had disclosed evidence late and that the jury could draw adverse inferences from that late disclosure." *Id.* at 1065 ("From the instruction it is clear that the jury was empowered to exonerate [the defendant] because of the government's misconduct, if it chose to do so."). The Ninth Circuit affirmed the district court's remedial instruction. *See id.* at 1065–66.

The instruction the Ninth Circuit affirmed in *Garrison* read as follows:

> Under the United States Constitution, in order for the defendant to receive a fair trial, the Government must inform the Defense of any information known to the Government that tends to suggest the defendant might not

have committed the crimes or crime charged . . . and any information that casts doubt on the credibility of the Government's own evidence. In this case, the Government violated those important Constitutional principles upon which the fair administration of our system of justice depends on multiple occasions. In evaluating the merits of this case, you can decide what weight, if any, to give to the Government's violations of these Constitutional principles. The Government's actions standing alone or in combination with other facts presented in this case, may create a reasonable doubt in your mind about the defendant's guilt.

*Garrison*, 888 F.3d at 1963 n.3 (ellipsis original). Further, the Ninth Circuit's model criminal jury instructions now specifically sanction the approach taken in *Garrison* and the specifically cite the instruction given in *Garrison*. *See* Ninth Cir. Manual of Model Criminal Jury Instructions § 3.20 (Untimely Disclosure of Exculpatory or Impeachment Evidence). Accordingly, should the Court decline to dismiss the Information, it should give the same jury instruction that the Ninth Circuit approved in *Garrison*.

**B.     This Court should order the government to produce responsive discovery to ensure all material evidence is disclosed under both Brady and Rule 16.**

Should the Court decline to dismiss the Information, Mr. Ranney also requests that the Court exercise its discretion in crafting a *Brady* remedy to order the government to provide prompt remedial discovery. *See, e.g., United States v. Blanco*, 392 F.3d 382, 394 (9th Cir. 2004) (directing the district court to "order full disclosure" of any material related to a *Brady* violation for "for prophylactic reasons") (quoting *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993))). Specifically, at the hearing on July 23, 2026, the defense requested the following, and sent those requests via email to the government:

1. Personnel files for all involved officers

2. All records/communications re: decertification for Inspector Glumaz or any other involved individual

3. All discovery from the 8/20/2025 protest and the law enforcement response:

   a.     List of agents present

   b.     Surveillance footage

   c.     Cell phone video

   d.     Communications

   e.     Reports (including but not limited to use of force reports, ROIs, etc.)

4. All discovery from the 6/10/25 protest, or any other local protest (undersigned counsel believes there was also a protest on 7/8/25, at a minimum) involving the same agents (same categories as above)

5. All texts from any involved individuals related to the 8/8 and 8/20 protests

6. Communications between DOJ/DHS, DHS/ICE, DHS/FPS related to the 8/8 and 8/20 protests, to include:

    a. When *Brady* requests were made by the government, copies of those requests, when responses from the agencies were received, and copies of those responses

7. Any verbal reprimands or disciplinary action relating to any involved individual, even if it wasn't documented in writing, from either 8/8/25 or 8/20/25

The government objected on the record at the hearing to these requests being overly broad or otherwise unworkable. As described *infra*, the breadth of these requests is necessary here based on the government's failure to comply with its obligation under *Brady*, regardless of whether that failure is intentional or inadvertent.

"Rule 16 of the Federal Rules of Criminal Procedure grants defendants a broad right to discovery." *United States v. Doe*, 705 F.3d 1134, 1150 (9th Cir. 2013). The government must disclose all material evidence. Fed. R. Evid. 16(E)(i). "Materiality is a low threshold; it is satisfied so long as the information . . . would have helped to prepare a defense." *United States v. Soto–Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (internal quotation marks omitted). "The test is not whether the discovery is admissible at trial, but whether the discovery may assist [the defendant] in formulating a defense, including leading to admissible evidence." *Id.* This includes both inculpatory and exculpatory information, *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013), and even information that could "cause[] a defendant to completely abandon a planned defense and take an entirely different path." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (internal quotation marks omitted).

Rule 16 "requires the government, upon request, to produce materials 'within the possession, custody or control of *the government*'"—not just the "prosecuting attorney." *United States v. Cardenas-Flores*, 974 F.2d 1343 (9th Cir. 1992) (unpublished decision). Prosecutors are "deemed to

have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). In *Cardenas-Flores*, the government failed to produce two of the case agent's photographs of the defendant's truck prior to trial. *Id.* at 1343. The three-judge panel explicitly held that "because the photographs at issue were in the case agent's file, the prosecutor is deemed to have had knowledge of and access to them." *Id*. (quoting *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989)). The government argued "that no Rule 16 violation was committed because the photographs were turned over as soon as the prosecutor learned of their existence." *Id*. The panel was abundantly clear in response, concluding: "we reject this argument." *Id*.

Here, the requested discovery is from federal agencies: DHS and ICE. It is certainly within the government's possession, custody, and control. The discovery requested here is not only material, some of it may well contain *Brady* material, which prosecutors have an affirmative duty to disclose, even absent any defense request. This Court should order the requested discovery.

### 1.    Personnel files

The government previously represented that they had complied with their *Brady* and *Henthorn/Giglio* obligations. Dkt. No. 45 (Joint Pretrial Conference Statement) at 2. The defense noted that it had not received any *Henthorn* material from the government as of July 1, 2026. *Id.* Notably, this joint statement was filed well over a month after the government's May 20 interview with Glumaz, where he advised them of his decertification, which must have been documented in personnel records. Based on the July 23, 2026 hearing, it appears that either the government believes that disciplinary proceedings stemming from a government agent's improper use of force during the charged incident (when excessive force is a central issue in the case) do not qualify as *Brady/Henthorn/Giglio* material, or that the government is requesting the underlying agencies do that review and is deferring to the agencies' judgment. Thus, the defense is, understandably, skeptical of the government's (or, more problematically, ICE's or DHS') ability to properly determine what should be produced to the defense and seeks to review the underlying materials themselves.

The defense maintains that the government should seek the production of personnel files for all agents who engaged with protesters in this incident (and should have sought that production to

examine those files for *Brady* and *Giglio/Henthorn* material long before this date). However, if the production of personnel files for all involved agents is unduly burdensome, the defense suggests focusing, first, on those agents involved in this incident directly and who are under subpoena by either party: ICE DO Love, ICE DO Caldwell, ICE DO Cheng, ICE SDDO Kaskanlian, ICE Contractor Swan, FPS Inspector Orchard, FPS Inspector James, FPS Inspector Glumaz, and FPS Inspector Hall.

> **2.     All records/communications re: decertification for Inspector Glumaz or any other involved individuals**

What the government has produced is an email thread showing that Glumaz was decertified for use of the pepper ball gun following his behavior with it on August 8 and August 20, 2025. What has not been produced is everything else: any investigation into his actions, any record of that decertification in his personnel file, any paper trail, at all, that led to the decision being made. It stands to reason that there would be internal documentation of any investigation into Glumaz's use of force on those two dates and discussion of what disciplinary action should be taken. The fact that the email informing Glumaz of his decertification is dated March 25, seven months after the protests at issue, tends to show that some type of internal review of his use of force occurred during that period of time. If those documents exist, they are material to that investigation and material to Mr. Ranney's defense.

> **3.     All discovery from the 8/20/2025 protest and the law enforcement response, including (1) list of agents present; (2) surveillance footage; (3) cell phone video; (4) communications; (5) reports (including but not limited to use of force reports, memos, ROIs, etc.)**

It is evident, based on publicly available video and video procured through rapid defense investigation, that the same team of agents involved in this interaction was present on August 20 (including many of the government's witnesses). Accordingly, their actions that day (and from other local protests) are central to their credibility in this case, and probative as to, *inter alia*, a common scheme or plan to use excessive force against protesters exercising their First Amendment rights.

> **4.     All discovery from the 6/10/25 protest, or any other local protest (undersigned counsel believes there was also a protest on 7/8/25, at a minimum) involving the same agents (same categories as above)**

As noted *supra*, III.B.4, if the same team of agents responded on other days to other protests,

MOTION TO DISMISS UNDER BRADY V. MARYLAND
*RANNEY*, CR 25–00416 TSH

15

their actions at those protests are relevant impeachment material and central to determinations about their credibility, as well as probative of a common plane or scheme in their interactions with protesters engaging in protected First Amendment activity.

**5.    All texts from any involved individuals related to the 8/8 and 8/20 protests**

The defense has received very few text messages in discovery. In undersigned counsel's experiences, there are often text messages (on either work or personal cell phones) relating to incidents like this one. Those messages may, and often do, contain adopted statements, which are Jencks materials, and may contain *Brady* materials as well (for instance, text message reprimands or references to use of force).

**6.    Communications between DOJ/DHS, DHS/ICE, DHS/FPS related to the 8/8 and 8/20 protests, to include: (1) when Brady requests were made by the government; (2) copies of those requests; (3) when responses from the agencies were received; and (4) copies of those responses**

Given the extremely late disclosure of Glumaz's decertification based on his use of force in this matter, the defense seeks records that would shed light on the government's *Brady* requests to involved agencies and any responses. Production of other requested communications will allow the defense to determine what favorable evidence was known to the government and when, as well as whether other favorable evidence has yet to be disclosed.

**7.    Any verbal reprimands or disciplinary action relating to any involved individual, even if it wasn't documented in writing, from either 8/8/25 or 8/20/25**

The defense understands from witness interview notes produced by the government that three of the ICE officers involved in this case (including witnesses who the government intends to call) were reprimanded by a superior for some of their actions at the August 8 protest. It appears that these verbal reprimands were not documented in written form, or presumably, the government would have produced them as *Henthorn/Giglio* material. If involved agents were disciplined in any way for their actions at the protests on August 8 and August 20, the defense is entitled to disclosure of such information.

MOTION TO DISMISS UNDER BRADY V. MARYLAND
*RANNEY*, CR 25–00416 TSH

16

## CONCLUSION

For the foregoing reasons, the defense respectfully requests that this Court dismiss the Information in this case. If this Court declines to do so, the defense requests this Court avail itself of the only appropriate lesser sanction: a curative instruction and an order for all discovery requested.

Dated:    July 23, 2026                          Respectfully submitted,

                                                 JODI LINKER
                                                 Federal Public Defender
                                                 Northern District of California

                                                 _____/S_____
                                                 ANGELA CHUANG
                                                 SAMANTHA JAFFE
                                                 Assistant Federal Public Defenders

MOTION TO DISMISS UNDER BRADY V. MARYLAND
*RANNEY*, CR 25–00416 TSH

17