| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cr-00416-TSH-1 |
| Plaintiff, | |
| v. | **ORDER CONTINUING TRIAL** |
| | Re: Dkt. No. 94 |
| CALEB ALEXANDER RANNEY, | |
| Defendant. | |

Defendant Caleb Ranney has filed a motion to dismiss this case due to the government's alleged failure to comply with *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

## A.    Background

Defendant is charged by information with two misdemeanor counts:  Assault on a federal officer (18 U.S.C. § 111(a)(1)) and destruction of government property (18 U.S.C. § 1361).  ECF No. 1.  Both charges stem from the interaction between federal officers and protestors on August 8, 2025, outside the immigration court at 630 Sansome Street in San Francisco, California.  The case is scheduled to go trial tomorrow, July 27, 2026.

### 1.    Defendant's Motion

The Court set a deadline of June 10, 2026 for the government to disclose *Brady*/*Jencks*/*Giglio* material to the defense.  ECF No. 21.  The defense had been requesting such material as far back as December 19, 2025.  ECF No. 95-6 at 4-5.  On June 10, 2026, the government produced FPS Inspector Stephen Glumaz's Use of Force Report relating to his firing of pepper ball rounds at the protesters on August 8, and the fact that he had targeted people's thighs but instead impacted the pavement.  On that date, the government also produced an email chain between Glumaz and other FPS personnel suggesting edits to his Use of Force Report

narrative.  ECF No. 105 ¶ 11; *see also* ECF No. 105-8 (the email chain).  The suggested edits imply that Glumaz misused the FN 303 by using it for area denial when it is a direct impact system.

On July 1, 2026, the government disclosed interviews that Special Agent Rivero, the main case agent, conducted in this case.  ECF No. 95-1 ¶ 4.  Rivero's May 20, 2026 interview with Glumaz noted that Glumaz had "attempted to fire the 303 rounds at the thigh area of the protester damaging the federal facility."  He also wrote that Glumaz "advised that he was subsequently decertified as an FN-303 user.  Which he later intends to recertify at a later date."  ECF No. 95-5.

On July 9, 2026, the defense subpoenaed Glumaz as one of their witnesses.  ECF No. 95-1 ¶ 5.  On July 22, 2026, the government disclosed an email from March 25, 2026, addressed to Glumaz.  The email appears to be from his supervisor, and it informs him that he is not to possess or operate an FPS PepperBall or FN303 launcher until further notice.  ECF No. 97-2.  The new information first disclosed to the defense on July 22 (five days before trial) is in the last sentence of the email, which states that the basis for the decertification was "in connection with the use of force incidents" on August 8, 2025 (the protest in this case) and August 20, 2025, which Glumaz was involved in.  *Id*.

In ECF No. 94, the defense moved to dismiss the case.  Ranney argued that the previously withheld evidence (that Glumaz was decertified *because* of the August 8 incident, not just after it) was favorable to him, it was suppressed within the meaning of *Brady*, and the suppression was prejudicial to him.  If the Court were unwilling to dismiss, Ranney requested an adverse jury instruction and that the Court order additional discovery as alternative remedies.

### 2.    Government's Opposition

The government opposed the motion.  ECF No. 104.  However, the government's opposition raised more questions than it answered.  Rivero and AUSA Eli Cohen submitted declarations stating that during the May 20 interview of Glumaz, they concluded that his decertification was due to his use of the FN 303 during the August 8, 2025 incident, and specifically due to his deployment of FN 303 rounds into the ground rather than directly at a person during that incident.  ECF Nos. 104-1 ¶ 3 & 105 ¶ 5.  The declarations further state that

United States District Court
Northern District of California

there was a second interview of Glumaz on July 21, 2026, after the government learned the defense had subpoenaed him. In that interview Glumaz stated that he had been decertified due to both the August 8 and August 20 incidents. ECF Nos. 104-1 ¶ 4 & 105 ¶ 16.

Similarly, with the opposition brief, the government filed Exhibit Q (ECF No. 106-4), a March 25, 2026 email chain documenting proceedings by the Use of Force Review Committee (UoFRC), concerning case numbers F25090171185B (Glumaz's August 20 use of force) and F25090165415D (Glumaz's August 8 use of force). Concerning August 20, the committee was unable to determine whether the force used was within agency policy or followed training doctrine. However, the committee concluded that the narrative in Glumaz's Form 10 demonstrated a significant lack of understanding regarding the proper lawful utilization of less lethal launchers or the proper articulation in the reporting thereof. Concerning August 8, the committee determined that the use of force was within policy and training doctrine. However, the committee also concluded that the narrative provided included a great deal of irrelevant data. Further, Glumaz's "inclusion of language that would indicate usage of a PepperBall launcher, when the launcher used was the FN303, clearly demonstrates a lack of required understanding and the necessity for additional training." The committee concluded: "Given the nature and content of the above use of force reporting, it is clear to the committee that Inspector Glumaz requires immediate de-certification as a less lethal launcher operator." Further, "[a]s is required in policy, the committee is also entering the relevant documents for" the August 20 incident "as it pertains to Inspector Glumaz into the OIG portal for potential policy violations."

### 3. Ranney's Reply

Additional evidence trickled in with Ranney's reply. The defense states that yesterday at 3:56 pm the government provided a full memo by Rivero about the July 21 interview of Glumaz (ECF No. 108-2), containing much more detail than the brief notes provided on July 22 (ECF No. 108-3). At 4:59 pm, the government produced additional documents, including a full written March 26, 2026 Use of Force Review Memo. ECF No. 109-1. The memo is mostly about the August 20 incident, although it also mentions the August 8 incident. The main functions of the memo are (1) to strongly imply that Exhibit Q (ECF No. 106-4) is a summary shorthand and a

3

similar lengthy memo likely exists for the August 8 incident, and (2) to clarify that both the August 8 and August 20 incidents were submitted for OIG's review (ECF No. 106-4 had suggested that only the August 20 incident was).

**B.     *Brady* Analysis**

"The Court has counseled that a due process violation under *Brady* . . . has three components: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the government, either willfully or inadvertently; and [3] prejudice must have ensued." *United States v. Cloud*, 102 F.4th 968, 975 (9th Cir. 2024).

**1.     The Evidence Is Favorable to the Accused**

The evidence produced after the June 10 deadline is favorable to the accused. The fact that Glumaz's decertification was due in part to the August 8 incident supports Ranney's self-defense defense because the jury could infer that this reflects a determination that Glumaz used excessive force. The jury is not required to accept the UoFRC's conclusion that the use of force was within policy and training; the jury can decide that actions speak louder than words. Further, the UoFRC's conclusion that Glumaz did not even know what type of launcher he was operating, and its further conclusion that this "clearly demonstrates a lack of required understanding," also support Ranney's self-defense defense by suggesting that Glumaz was incompetent and potentially reckless. And the UoFRC's conclusion that Glumaz included "a great deal of irrelevant data" in his report, "which added to the confusion of the report," is a wide opening for the defense to attack Glumaz's credibility.

Because the federal officers in this case acted in a coordinated fashion as a team, evidence that any one of them used excessive force, was reckless, or was dishonest could be interpreted by the jury to taint the team. In addition, the fact that the first version of Rivero's notes of the May 20 interview of Glumaz (ECF No. 95-5) omits that he thought the decertification was *because* of the August 8 violation, when Rivero himself testifies that was exactly what he thought at the time (ECF No. 104-1 ¶ 3), could make Rivero look dishonest too.

And that's just the evidence we know about. The defense has never received case files

F25090171185D or F25090165414D. But since the UoFRC came to negative conclusions about Glumaz after having reviewed both, there is likely more favorable evidence for the accused in them. The defense has also never received a full use of force memo by the UoFRC for the August 8 incident (similar to the one in ECF No. 109-1 for the August 20 incident). Nor has the defense received any OIG materials for the August 8 or 20 incidents. Given the negative conclusions that UoFRC reached concerning both incidents, the OIG materials are also likely favorable to the accused as well.

### 2. The Evidence Has Been Suppressed

This motion would be closer if all the evidence favorable to the accused had been produced in advance of trial but after the June 10 deadline. However, this motion is not close because tomorrow is the first day of trial, and it is obvious that important evidence that is likely favorable to the accused has still not been produced. As noted, the case files for the two use of force incidents, the formal use of force memo for the August 8 incident, and the OIG materials for the August 8 and 20 incidents have not been produced. Therefore, as of this writing, they have undoubtedly been suppressed within the meaning of *Brady*.

### 3. Prejudice to the Defendant

As explained, the missing evidence is likely favorable to the accused, so his not having it is prejudicial to him.

### C. *Brady* Remedy

Ranney asks the Court to dismiss the information using the Court's supervisory powers. However, "[a] court may dismiss an [information] under its supervisory powers only when the defendant suffers substantial prejudice, and where no lesser remedial action is available." *United States v. Chapman*, 524 F.2d 1073, 1087 (9th Cir. 2008). Here, a lesser remedial action is available: The Court can continue the trial while the government gets the missing *Brady* evidence and turns it over to the defense. That will cure the prejudice.[1] The Defendant will be in no worse

---

[1] The other remedies Ranney requests are inappropriate. Citing *United States v. Garrison*, 888 F.3d 1057 (9th Cir. 2018), Ranney argues that instead of a continuance, the Court should issue a jury instruction empowering the jury to acquit due to the government's *Brady* violation. However, in *Garrison*, "[a]ll of the late disclosed evidence . . . was given to the jury." *Id*. at 1065. In this

position than if the government had produced the *Brady* evidence in a timely fashion in the first place. Ranney has been out of custody since the August 8 incident, and a short continuance will not prejudice him. The late-disclosed and not-yet-disclosed *Brady* evidence is favorable to the accused but does not fundamentally change his planned defense: As is clear from the pretrial filings, Ranney was always going to claim the federal officers used excessive force, were reckless and didn't know what they were doing, and that they were liars. The additional *Brady* evidence is important and must be produced, but it will not change what this case is about in a significant way.

Accordingly, the Court **VACATES** the July 27, 2026 trial date and **CONTINUES** the trial. The parties shall appear in Courtroom E on the 15th floor tomorrow at 9:00 a.m. to discuss the plan for producing the remaining *Brady* evidence and dates for the continued trial.

**IT IS SO ORDERED.**

Dated: July 26, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

---

case, by contrast, we have an uncured, ongoing *Brady* violation. Such a jury instruction would therefore not seem to remedy the *Brady* violation here, as defense counsel do not even know what the missing *Brady* evidence says. As for the requested discovery, it is overbroad and not proportional to the *Brady* violation.