JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
ANGELA CHUANG, Bar No. 313445
SAMANTHA JAFFE, Bar No. 324731
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Angela_Chuang@fd.org
Email: Samantha_Jaffe@fd.org

Counsel for Defendant Ranney

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CALEB ALEXANDER RANNEY.<br>Defendant. | **Case No.:** CR 25–416 TSH<br><br>**DEFENDANT'S MOTION TO DISMISS GOVERNMENT APPEAL FOR LACK OF JURISDICTION** |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 3

I. The collateral order doctrine does not apply ..... 3

A. The collateral order doctrine is extremely circumscribed and particularly so in criminal cases ..... 3

B. *Cloud* is a narrow decision informed by the "unique posture" of the appeal, and not a "carte blanche to lodge an interlocutory appeal from any district court *Brady* order" ..... 4

C. The orders here are routine trial management orders that do not fall under the collateral order doctrine ..... 6

II. The government's appeal of the July 26, 2026, order is untimely ..... 9

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Federal Cases

*Abney v. United States*,
431 U.S. 651 (1977) .......... 4

*AdTrader, Inc. v. Google LLC*,
7 F.4th 803 (9th Cir. 2021) .......... 1

*Anderson v. Allstate Ins. Co.*,
630 F.2d 677 (9th Cir. 1980) .......... 5

*Barker v. Wingo*,
407 U.S. 514 (1972) .......... 4

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534 (1986) .......... 1

*Cohen v. Beneficial Industrial Loan Corp.*,
337 U.S. 541 (1949) .......... 4, 6

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) .......... 9

*Cunningham v. Hamilton County*,
527 U.S. 198 (1999) .......... 5, 7

*Dannenberg v. Software Toolworks, Inc.*,
16 F.3d 1073 (9th Cir. 1994) .......... 5

*Di Bella v. United States*,
369 U.S. 121 (1962) .......... 7, 9

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) .......... 8, 9

*Flanagan v. United States*,
465 U.S. 259 (1984) .......... 3

*Helstoski v. Meanor*,
442 U.S. 500 (1979) .......... 4

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100, 113 (2009) .......... 5

*Sell v. United States*,
539 U.S. 166 (2003) .......... 4

*Stack v. Boyle*,
342 U.S. 1 (1951) .......... 4

*United States v. Austin*,
416 F.3d 1016 (9th Cir. 2005) .......... 7, 8

*United States v. Belgarde*,
300 F.3d 1177 (9th Cir. 2002) .......... 11

*United States v. Cloud*,
102 F.4th 968 (9th Cir. 2024) .......... *passim*

*United States v. Cloud*,
C.A.9 No. 22-30044, Dkt. 24 (Defendant's Answering Brief, filed Feb. 3, 2023) .......... 5

*United States v. Dieter*,
429 U.S. 6 (1976) .......... 10, 11

*United States v. Garrison*,
888 F.3d 1057 (9th Cir. 2018) .......... 2

*United States v. Healy*,
376 U.S. 75 (1964) .......... 10

*United States v. Ibarra*,
502 U.S. 1 (1991) .......... 10, 11

*United States v. Lefler*,
880 F.2d 233 (9th Cir. 1989) .......... 11

*United States v. MacDonald*,
435 U.S. 850 (1978) .......... 7

*United States v. McVeigh*,
106 F.3d 325 (10th Cir. 1997) .......... 9

*Weitzner v. Cynosure, Inc.*,
802 F.3d 307 (2d Cir. 2015) .......... 11

*Will v. Hallock*,
546 U.S. 345 (2006) .......... 5

*Will v. United States*,
389 U.S. 90 (1967) .......... 9


**Statutes**


18 U.S.C. § 111(a)(1) .......... 1

18 U.S.C. § 1361 ........ 2

18 U.S.C. § 3731 ........ 3, 9

28 U.S.C. § 1291 ........ 3

**Rules**

Fed. R. Civ. P. 83(a)(1) ........ 11

Fed. R. Crim. P. 57 ........ 11

Fed. R. Crim. P. 58(g)(2)(A) ........ 1, 3, 9

Fed. R. Crim. P. 16 ........ 8

N.D. Cal. Civ. Local Rule 7-9 ........ 1, 2, 10, 11

N.D. Cal. Crim. Local Rule 2-1 ........ 1, 10, 11

S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3 ........ 10

## INTRODUCTION

In advance of Defendant Caleb Ranney's October 5, 2026, trial, the government has appealed interlocutory orders by Magistrate Judge Thomas Hixson, issued July 26, and September 9, 2026, orders finding *Brady* violations by the government and granting Ranney's request for an adverse-inference jury instruction as a remedy for the government's violation.

The Court may not consider the government's appeal unless it determines that it has appellate jurisdiction. *See*, *e.g.*, *AdTrader, Inc. v. Google LLC*, 7 F.4th 803, 808 (9th Cir. 2021) ("A federal appellate court 'has a special obligation to satisfy itself ... of its own jurisdiction.'") (quoting *Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 541 (1986)). In its appeal, the government cursorily claims that the Court has jurisdiction under the collateral order doctrine, and cites *United States v. Cloud*, 102 F.4th 968, 973–74 (9th Cir. 2024). Ranney disagrees.

First, *Cloud* is a narrow decision arising out of a unique procedural posture, and which explicitly cautioned that "[g]]iven the unique posture of this appeal, [the Ninth Circuit's] jurisdictional analysis should not be read to give litigants carte blanche to lodge an interlocutory appeal from any district court *Brady* order." *Cloud*, 102 F.4th at 974 n.5.

Second, even if the Court had jurisdiction under the collateral order doctrine, it does not have authority over the appeal of Magistrate Judge Hixson's July 26, 2026, order. While the timely *filing* of a motion for reconsideration "tolls" the appellate deadline, Magistrate Judge Hixson *denied the government leave to file* its motion for reconsideration. *See* N.D. Cal. Civ. Local Rule 7-9(a), (b), (c) (requiring leave to file a motion to reconsider, providing the circumstances under which a motion to reconsider is appropriate, and prohibiting the repetition of arguments in the original briefing); N.D. Cal. Crim. Local Rule 2-1 (applying civil local rules to criminal proceedings if not inconsistent). Therefore, the government's 14-day deadline to appeal the July 26, 2026, order, has expired, and the Court lacks authority over the appeal of that order. *See* Fed. R. Crim. P. 58(g)(2)(A) (setting 14-day appellate deadline).

## BACKGROUND

Mr. Ranney was charged, by information, with one count of misdemeanor assault on a federal officer, 18 U.S.C. § 111(a)(1), and misdemeanor destruction of government property, 18 U.S.C. §

1361, arising out of a protest against immigration policies that occurred at 630 Sansome Street in San Francisco, California. *See* Dkt. 1.[1] Trial was set for July 27, 2026.

On July 26, 2026, Magistrate Judge Hixson found that the government committed violations of its duties under *Brady v. Maryland*, denied Ranney's request to dismiss the charges, and—over Ranney's objection—continued the trial date to October 5, 2026, the last date available under the Speedy Trial Act. *See* Dkt. 111. The very same day, consistent with the Local Rules, Ranney moved for leave to file a motion to reconsider the denial of dismissal, arguing that new disclosures by the government demonstrated that the government's *Brady* violations were even more extensive than initially known, and warranted dismissal. *See* Dkt. 112 (citing Rule 7-9 (b)(1) ("That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought"), (b)(2) ("The emergence of new material facts or a change of law occurring after the time of such order.").

On August 7, 2026, the government filed its own motion for leave to file a motion to reconsider, arguing that the Court misapplied the *Brady* standard and that this constituted "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court. . . ." Dkt. 129 (citing Rule 7-9(b)(3)).

On September 9, 2026, Magistrate Judge Hixson denied the government's motion for leave to file a motion to reconsider, finding that the government failed to establish the requirements of Rule 7-9(b)(3) and that the government was simply relitigating issues that the Court had already resolved, but the government disagreed with. Dkt. 161 at 1, 18–20.

In the same order, Magistrate Judge Hixson granted Ranney's motion for leave to file his motion to reconsider; and granted in part and denied in part the motion, finding additional *Brady* violations by the government and granting Ranney's request for an adverse-inference jury instruction modeled on the instruction upheld by the Ninth Circuit in *United States v. Garrison*, 888 F.3d 1057, 1061 (9th Cir. 2018). Dkt. 161 at 1–18.

---

[1] Ranney does not provide further factual background at this stage because this motion does not address the merits of the government's appeal, and because Magistrate Judge Hixson's orders already include the relevant factual background.

The government has now filed an interlocutory appeal from Magistrate Judge Hixson's July 26, and September 9, 2026, orders.

**ARGUMENT**

## I. The collateral order doctrine does not apply

Interlocutory appeals from magistrate decisions in misdemeanor cases are permissible "within 14 days of its entry *if a district judge's order could similarly be appealed*." Fed. R. Crim. P. 58(g)(2)(A) (emphasis added). Therefore, 28 U.S.C. § 1291 (providing that appellate jurisdiction is limited to "final decisions of the [lower] courts") and 18 U.S.C. § 3731 (governing the government's right to appeal in criminal cases) apply.

The government's interlocutory appeal is plainly not authorized by 18 U.S.C. § 3731: as relevant here, it is neither an order dismissing the charging document nor suppressing or excluding evidence. Therefore, the government invokes this Court's jurisdiction under the collateral order doctrine, relying on the Ninth Circuit's decision in *Cloud*. *Cloud* is inapposite; it is a narrow decision arising out of a unique procedural posture, which does not govern interlocutory appeals of routine pre-trial *Brady* orders.

### A. The collateral order doctrine is extremely circumscribed and particularly so in criminal cases

As a general rule, only final judgments are appealable. *See* 28 U.S.C. § 1291. The final judgment rule serves several important interests: "It helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the pre-judgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals. It is crucial to the efficient administration of justice." *Flanagan v. United States*, 465 U.S. 259, 263 (1984).

The policy against piecemeal appellate review is the strongest in the criminal context. *Id.* "Promptness in bringing a criminal case to trial has become increasingly important as crime has increased, court dockets have swelled, and detention facilities have become overcrowded." *Id.* at 264. As the Sixth Amendment's guarantee of a Speedy Trial indicates, a defendant has "a strong interest in speedy resolution of the charges against him." *Id.* Society too has an "'interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused.'" *Id.*

(quoting *Barker v. Wingo*, 407 U.S. 514, 519 (1972)).

The importance of the final judgment rule has led the Supreme Court to allow departures from the rule only for the "limited category of cases falling within the 'collateral order' exception delineated" in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *Id.* at 265. To come within this "narrow exception," a trial court order "must, at a minimum, meet three conditions." *Id.* First, it "must conclusively determine the disputed question"; second, it must "resolve an important issue completely separate from the merits of the action"; third, it must "be effectively unreviewable on appeal from a final judgment." *Id.* (internal quotations omitted).

Because of the compelling interest in prompt trials, the Court has interpreted the requirements of the collateral order exception to the final judgment rule with "the utmost strictness in criminal cases." *Id.* The Court has recognized only four types of pretrial orders in criminal prosecutions to meet these requirements: (1) an order denying bail, *Stack v. Boyle*, 342 U.S. 1 (1951); (2) an order denying dismissal based on double jeopardy, *Abney v. United States*, 431 U.S. 651 (1977); (3) an order denying dismissal for immunity under the Speech or Debate Clause, *Helstoski v. Meanor*, 442 U.S. 500 (1979); and (4) an order for the administration of psychotropic medication to render a defendant competent for trial, *Sell v. United States*, 539 U.S. 166 (2003).

**B. *Cloud* is a narrow decision informed by the "unique posture" of the appeal, and not a "carte blanche to lodge an interlocutory appeal from any district court *Brady* order"**

In *Cloud*, in the midst of a homicide trial, the district court learned that the government failed to turn over exculpatory evidence regarding its star witness. 102 F.4th at 971. The district court found a *Brady* violation and excluded the witness. *Id*. at 973. A week later, the same day that the jury entered a verdict convicting Cloud on thirteen counts, the district court issued a sanctions order, directing the government to pay almost $5,000 in monetary sanctions as reimbursement for the time spent getting to the bottom of the nondisclosure. *Id*. The government filed a timely notice of appeal of the sanctions order. *Id*. By the time the Ninth Circuit heard the government's appeal, the district court had entered final judgment against Cloud. *Id*. at 975.

The Ninth Circuit held that it had appellate jurisdiction over the government's appeal of the

sanctions order under the collateral order doctrine. *Id*. at 973–74.[2] It held that the sanctions order in that case satisfied all three elements of the collateral order doctrine. First, the sanctions order "conclusively determined the issue of the *Brady* violation." *Id*. at 974. Second, the order "resolved an important issue—the consequences of the Government's withholding of impeachment information from defense counsel—separate from the ultimate merits of the underlying action, which in this case is Cloud's criminal conviction." *Id*. And third, the sanctions order was not "merged" into the final judgment against Cloud, so "[i]n this posture, the order is effectively unreviewable on appeal from a final judgment." *Id*.

The Ninth Circuit acknowledged "the Supreme Court's repeated admonitions that the 'class of collaterally appealable orders must remain 'narrow and selective in its membership,'" and that it has interpreted the doctrine with "utmost strictness" in criminal cases. *Id*. at 974 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) (quoting *Will v. Hallock*, 546 U.S. 345, 350 (2006)). But it explained that it has "long taken a 'pragmatic approach to finality in situations where events subsequent to a nonfinal order fulfill the purposes of the final judgment rule.'" *Id*. (quoting *Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1075 (9th Cir. 1994)). In *Cloud*, "the district court entered final judgment against Cloud in the underlying criminal case *before [the Ninth Circuit] heard this appeal*." *Id*. (emphasis added). And because the final judgment had issued and "'nothing else remains in the federal courts,'" the Ninth Circuit was "'*not confronted with any risk of "piecemeal appeals and concomitant delays*"' of the sort that "'the final judgment rule was designed to prevent.'" *Id*. (quoting *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 681 (9th Cir. 1980); *Cunningham v. Hamilton County*, 527 U.S. 198, 209 (1999)) (emphasis added).

The Ninth Circuit stressed that its decision was narrow, informed by the unique procedural posture of the case, and not to be read as blessing interlocutory appeals of routine *Brady* orders: "Given the unique posture of this appeal, our jurisdictional analysis should not be read to give litigants carte blanche to lodge an interlocutory appeal from any district court *Brady* order. Rather,

---

[2] Puzzlingly, the defendant-appellee did not contest that the collateral order doctrine applied and addressed solely on the government's merits arguments. *See United States v. Cloud*, C.A.9 No. 22-30044, Dkt. 24 (Defendant's Answering Brief, filed Feb. 3, 2023).

under different circumstances, 'appealability [might] present a different question.'" *Id.* at 974 n.5 (quoting *Cohen*, 337 U.S. at 547).[3]

**C. The orders here are routine trial management orders that do not fall under the collateral order doctrine**

Ranney's case presents different circumstances, and appealability presents a different question. Critical to *Cloud*'s analysis was the fact that the sanctions order survived and did not merge into the final judgment against the defendant, and that the appeal itself was heard after the final judgment issued, and therefore did not implicate the concerns against piecemeal litigation and delays that the final judgment rule was designed to prevent. Neither is true here.

Magistrate Judge Hixson' orders found *pre-trial* that the government committed *Brady* violations, continued the trial date and granted an adverse-inference jury instruction. And this appeal is being brought on the eve of Ranney's trial, which was continued to October 5, 2026, over his objections. These distinctions compel a different analysis of the three requirements of the collateral order doctrine.

First, the orders do not conclusively determine the disputed question. While Magistrate Judge Hixson conclusively found that the government violated *Brady*, the order granting the adverse-inference jury instruction is, like any other jury instruction, essentially tentative and provisional until and unless the court instructs the jury at the end of the case. "So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." *Cohen*, 337 U.S. at 546. Indeed, a trial judge retains plenary authority throughout the trial to add, modify, or withdraw proposed instructions as the evidence and the case unfolds. Nothing prevents the government, for instance, from requesting jury instructions that stress the jury's responsibility to render a verdict solely based on the facts as they find them and on the court's instructions, and that the adverse-inference instruction does not compel them to reach any particular verdict. By contrast, the monetary sanctions order in *Cloud* was issued after the jury reached a verdict, and was in addition to the court's order excluding the witness as a separate *Brady* sanction—an order that the government did *not*

[3] Upon reaching the merits of the government's appeal, the Ninth Circuit affirmed the district court's finding of a *Brady* violation and its monetary sanctions. *See id.* at 975–82.

interlocutorily appeal.

Second, the orders here do not resolve an issue completely separate from the merits of the action, let alone an "important" issue. *See United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (holding that the separability prong includes two "separate inquir[ies]").

The finding of a *Brady* violation was itself intertwined with the facts of the case, the defense theory, the strength of the government's evidence, and how the withheld evidence "is benchmarked against the relative value of the evidence in light of the proceedings to date." *Cloud*, 102 F.4th at 980. Furthermore, the adverse-inference instruction is inextricably intertwined with the trial: it explicitly tells the jury how it may evaluate the evidence and, therefore, bears on the ultimate issue of guilt or innocence. That distinguishes it from the sanctions order in *Cloud* in a critical way. A jury instruction is an integral part of the trial and thus, an integral part of the merits of the action that cannot be separated from the trial itself. Like any other jury instruction, the adverse-inference instruction ordered by Magistrate Judge Hixson guides the jury in its assessment and weighing of the trial evidence as well as its determination of a verdict. The ordering of monetary sanctions, by contrast, has nothing to do with the trial evidence and has absolutely no bearing on the jury's determination of guilt or innocence. By the government's logic, any and all jury instructions (or orders bearing on jury instructions) would be immediately appealable pre- or mid-trial, by either party. This would open the floodgates to interlocutory appeals of jury instructions, derailing trials, interfering with the defendants' speedy trial rights, and undermining the efficient administration of justice. *See, e.g.*, *United States v. MacDonald*, 435 U.S. 850, 861 (1978) ("[T]his Court has emphasized that one of the principal reasons for its strict adherence to the doctrine of finality in criminal cases is that "[t]he Sixth Amendment guarantees a speedy trial." *Di Bella v. United States*, 369 U.S. [121, 126 (1962)]. Fulfillment of this guarantee would be impossible if every pretrial order were appealable.").

Ranney's position is further supported by Supreme Court precedent. In *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198 (1999), an attorney for the plaintiff filed an interlocutory appeal of a sanctions order that had been issued pursuant to Federal Rule of Civil Procedure 37(a) for various discovery violations. 572 U.S. at 200–01. The Supreme Court held that such an appeal did not fall within the collateral order doctrine in part because a sanctions order "often will be

inextricably intertwined with the merits of the action." *Id.* at 205 (further explaining that, "We do not think, however, that appellate review of a sanctions order can remain completely separate from the merits . . . An evaluation of the appropriateness of sanctions may require the reviewing court to inquire into the importance of the information sought or the adequacy or truthfulness of a response . . . Such an inquiry would differ only marginally from an inquiry into the merits and counsels against application of the collateral order doctrine."). So too here. To review Magistrate Judge Hixson's finding of *Brady* violations and determination of the corresponding appropriate remedy would require this Court to delve deep into the details of the evidence to be presented at trial and the materials that the government suppressed in order to determine their importance to the case. The government's appeal brief confirms as much.

As importantly, the issue is not "'important in *Cohen*'s sense, as being weightier than the societal interests advanced by the ordinary operation of final judgment principles.'" *Austin*, 416 F.3d at 1021. Whether the government has complied with its discovery obligations (whether under the Due Process Clause/*Brady*, Federal Rule of Criminal Procedure 16, or *Jenks*) and what is the appropriate remedy for the government's violations—while serious concerns implicating a defendant's rights—are not issues remotely comparable in importance to a defendant's right to be free of excessive bail, right not to be twice placed in jeopardy, not to prosecuted where they have immunity, or involuntarily medicated. In fact, discovery orders, including imposing sanctions such as exclusion of evidence, granting continuances, foreclosing certain lines of argument, or granting jury instructions, are routine trial management issues. That in this case it is the government seeking to appeal, and not the defendant, does not make the issue "weightier than the societal interests advanced by the ordinary operation of final judgment principles." *Austin*, 416 F.3d at 1021.

The third *Cohen* factor asks "whether a right is 'adequately vindicable' or 'effectively reviewable,'" a question that "simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Mohawk Indus.*, , 558 U.S. at 107 quoting *Digital Equip. Corp. v. Desktop Direct*, *Inc*., 511 U.S. 863, 878 (1994)). In making this determination, the Supreme Court emphasized that courts "do not engage in an 'individualized jurisdictional inquiry'"; rather, the "focus is on 'the entire category to which a

claim belongs.'" *Id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473 (1978); *Digital Equip. Corp.*, 511 U.S. at 868).

Neither discovery orders (including *Brady* orders) nor jury instructions orders as a class are not unreviewable and "unvindicable" without an immediate appeal. If a defendant is convicted, the government's interests have been vindicated by the conviction, whereas the defendant may pursue an appeal. And if the defendant is acquitted, his interests have been vindicated.

It is true that, if a defendant is acquitted, the government may not appeal due to Double Jeopardy protections. But if unappealable acquittal satisfied *Cohen*'s third requirement, then almost every adverse pretrial ruling would become immediately appealable by the government, eviscerating the limitations that Congress imposed on interlocutory appeal in 18 U.S.C. § 3731. *United States v. McVeigh*, 106 F.3d 325, 331 (10th Cir. 1997). "Indeed, the Supreme Court has specifically noted that the considerations disfavoring such appeals are 'made no less compelling ... by the fact that the Government has no later right to appeal.'" *Id.* (quoting *Di Bella*, 369 U.S. at 130); *see also Will v. United States*, 389 U.S. 90, 97 n.5 (1967) ("Congress clearly contemplated when it placed drastic limits upon the Government's right of review in criminal cases that it would be completely unable to secure review of some orders having a substantial effect on its ability to secure criminal convictions. This Court cannot and will not grant the Government a right of review which Congress has chosen to withhold.")

In sum, the orders in this case do not meet the *Cohen* requirements and do not fall within the "narrow exception" of the collateral order doctrine. The government's disagreement with Magistrate Judge Hixson's orders does not outweigh the very weighty interests that the final judgment rule embodies and counsels against adding these orders to the very limited class of pre-trial orders that the Supreme Court has recognized as immediately appealable.

## II. The government's appeal of the July 26, 2026, order is untimely

The government had 14 days from entry of the magistrate's initial July 26, 2026, order finding a Brady violation to notice its appeal. *See* Fed. R. Crim. P. 58(g)(2)(A). The government noticed its appeal far beyond that 14-day deadline. *See* Dkt. 111, 181. Thus, its purported interlocutory appeal of that order is untimely unless the 14-day period was tolled. It was not.

The Supreme Court has held that a timely filed motion for reconsideration in a criminal case tolls the time to appeal until the motion is decided. *United States v. Ibarra*, 502 U.S. 1, 4–6 (1991); *United States v. Dieter*, 429 U.S. 6, 8 (1976); *United States v. Healy*, 376 U.S. 75, 77–80 (1964). But the government here never actually *filed* such a motion.

Under this Court's local rules, a party seeking reconsideration of an interlocutory order must first move for leave to file a motion for reconsideration, and "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." N.D. Cal. Civil L.R. 7-9(a); *see* N.D. Cal. Crim. L.R. 2-1 (applying Civil Local Rules to criminal cases). The rule thus separates a request for permission to file a motion from the motion for reconsideration itself. The leave motion is a threshold filing on which, by default, no response is required and no hearing is held. *See* N.D. Cal. Civil L.R. 7-9(d). And leave by the Court is a threshold requirement for filing.

Here, the government *filed only a motion for leave*, *which was denied* because Magistrate Judge Hixson found that the government was simply relitigating its arguments in opposition to Ranney's initial motion, which the Local Rules explicitly prohibits. Dkt. 129, 161. Thus, the government never *filed* a motion for reconsideration from the July 26, 2026, order finding a *Brady* violation.

A party's compliance with a local procedural rule does not excuse the failure to timely file an appeal. In *Malek v. Feigenbaum*, 116 F.4th 118, 121–22 (2d Cir. 2024), the appellant moved for reconsideration under Local Civil Rule 6.3 of the Southern and Eastern Districts of New York. That rule required that a notice of motion for reconsideration be served within 14 days after entry of the challenged order or judgment. *See* S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3. The appellant did exactly that; he served the motion within the local rule's deadline. He did not file it on the docket until later, however, because the district judge's individual practice rules asked parties to hold off filing motion papers until a motion was fully briefed, so the motion, opposition, and reply would be filed together. *Malek*, 116 F.4th at 121–22. The Second Circuit refers to this as a "bundling" rule. *Id.* at 122–23. By the time the fully briefed motion was filed as a bundle, the reconsideration deadline had passed. *Id.* at 121.

The Second Circuit held that the motion did not toll the time to appeal, because the applicable federal rule required a timely filed motion, and the appellant's motion, albeit in compliance with

local rules, did not satisfy that requirement. *Id.* at 121, 123, 127–28. The court explained that "[t]he local rules do not supersede the requirements of the federal rules." *Id.* at 128 (citing Fed. R. Civ. P. 83(a)(1)). It also reaffirmed its earlier holding that compliance with a district court's bundling rule does not excuse noncompliance with federal appellate deadlines, "even where the bundling rule is a mandatory requirement rather than a courtesy to the district court." *Id.* at 123 (citing *Weitzner v. Cynosure, Inc.*, 802 F.3d 307, 312–13 (2d Cir. 2015)).

The same principles control here. The tolling doctrine requires a pending motion for reconsideration to have been filed within the time to appeal. *See*, *e.g.*, *United States v. Belgarde*, 300 F.3d 1177, 1180 (9th Cir. 2002) ("A motion for reconsideration is timely if it is filed within the time for appeal, and an appeal is timely if it is filed within the time to appeal after the denial of the motion for reconsideration.") (citing *Ibarra*, 502 U.S. at 4 n.2; *Dieter*, 429 U.S. at 8); *United States v. Lefler*, 880 F.2d 233, 234 (9th Cir. 1989) ("All of our cases construing Dieter similarly hold that for a motion for reconsideration to extend the time for appeal, (1) the motion for reconsideration must be filed within the period during which an appeal could have been noticed from the original order, and (2) the notice of appeal must be filed within the required period following the order on the motion for reconsideration." (emphasis added)). The government's filing of the motion for leave, consistent with Local Rule 7-9's leave procedure, and to attach its proposed motion to that request, cannot substitute for filing the motion itself, any more than the appellant's compliance with Local Rule 6.3 could substitute for timely filing in *Malek*. *Malek* and *Weitzner* squarely reject the notion that a local procedure excuses a party from complying with an appeal deadline. *See Malek*, 116 F.4th at 123; *Weitzner*, 802 F.3d at 308–10, 313 (no tolling where appellants served their reconsideration motion within the deadline but did not file it because the judge's individual bundling rule prohibited filing until the motion was fully briefed). Accordingly, the government's interlocutory appeal of the July 26, 2026, order finding the initial *Brady* violation is untimely.

The import of the government's failing to timely appeal the July 26, 2026 order is that even if this Court had jurisdiction to hear the government's interlocutory appeal—which it does not—the only order that could be properly appealed would be Magistrate Judge Hixson's September 9, 2026, order. The July 26, 2026 order and the findings therein would stand as is; as such, his finding of a

*Brady* violation and ordering a continuance as a remedy would remain undisturbed. The scope of the government's appeal would thus be limited to contesting the September 9, 2026, finding of additional *Brady* violations and the remedy of an adverse-inference jury instruction.

**CONCLUSION**

For these reasons, Ranney respectfully requests that the Court dismiss the government's interlocutory appeal for lack of jurisdiction.

September 24, 2026
Dated

JODI LINKER
Federal Public Defender
Northern District of California

/S
ANGELA CHUANG
SAMANTHA JAFFE
Assistant Federal Public Defenders